JOHN W. TOWER, ESQ. #106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570
Towerlawsd@gmail.com

Matthew M. Lavin, Esq. (*pro hac vice forthcoming*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603
MLavin@Napolilaw.com

Attorneys for Plaintiff
Bristol SL Holdings

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., | ) Case No.: 20-cv-07804 |
| Plaintiff, | ) |
| | ) Hon. William H. Orrick |
| vs. | ) |
| | ) **REQUEST FOR JUDICIAL NOTICE IN** |
| UNITED BEHAVIORAL HEALTH, and | ) **SUPPORT OF PLAINTIFF'S MOTION** |
| DOES 1 through 25, | ) **FOR REMAND AND REQUEST FOR** |
| | ) **EXPENSES AND FEES; DECLARATION** |
| Defendants. | ) **OF JOHN W. TOWER** |
| | ) |
| | ) Date: 12/23/2020 |
| | ) Time: 2:00 PM |
| | ) Courtroom: Courtroom 2, 17th Floor |

Pursuant to Federal Rule of Evidence 201, Plaintiff BRISTOL SL HOLDINGS INC. ("Plaintiff"), by and through its attorneys, hereby requests that the Court take judicial notice of the following attached documents in support of Plaintiff's motion for remand.

Exhibits "A" through "F" are true and correct copies of Judicial Orders for Remand following the removal of State Court actions by Defendants UNITED BEHAVIORAL HEALTH, its affiliated companies DOES 1-25 (collectively "Defendants"), or other health insurance companies who removed cases that were later remanded under parallel circumstances, based on the Courts' determination that state law causes of action for payment brought by health care providers against Defendants are not completely preempted by the Employee Retirement Income Security Act of 1974, as amended by 29 U.S.C. 1001 et seq., or were not timely under the requirements of Fed. R. Civ. Pro. 1446. Specifically, Plaintiff requests judicial notice of the following Judicial Orders for Remand contained in Exhibits "A" through "F."

Exhibits "G" through "H" are true and correct copies of recent motions in this matter before its removal to this Court during its pendency in State Court. Specifically, Plaintiffs request judicial notice of the Motions in Exhibits "G" and "H".

Exhibit "I" is a true and correct copy of a United States District Court for the Central District of California order regarding this dispute. Specifically, Plaintiff requests judicial notice of the order in Exhibit "I".

Exhibit "J" is a true and correct copy of a stipulated judgment in United States Bankruptcy Court for the Central District of California relating to Plaintiff's

1

acquisition of accounts receivable at issue in the instant suit. Specifically, Plaintiff requests judicial notice of the stipulated judgment in Exhibit "J".

1. August 6, 2012 Order Granting Plaintiff's Motion to Remand issued by United States District Judge Hon. Susan Illston in *Bay Area Surgical Management, LLC v. United Healthcare Insurance Company*, Northern District of California Case No. 3:12-cv-01421-SI.

2. December 16, 2013 Order Granting Plaintiff's Motion to Remand issued by United States District Judge Hon. Edward J. Davila in *Bay Area Surgical Management, LLC v. United Healthcare Insurance Company*, Northern District of California Case No. 5:13-CV-02512-EJD.

3. September 24, 2012 Order (1) Remanding Action to the San Diego County Superior Court and (2) Denying Plaintiff's Request for Attorneys' Fees and Costs issued by United States District Judge Hon. Roger T. Benitez in *The Regents for the University of California v. UnitedHealthCare Insurance Company*, et al., Southern District of California Case No. 3:12-cv-00588-BEN-BGS.

4. October 22, 2014 Order Granting Plaintiff Complete Infusion Care, CIC Inc.'s Motion for Remand issued by United States District Judge Hon. Manuel T. Real in *Complete Infusion Care, Cic Inc., v. UHC Of Cal.* Central District of California Case No. CV-146577-R 2014 U.S. Dist. LEXIS 197245.

5. October 2, 2012 Order Remanding Case to State Court issued by United States District Judge Hon. Jeffrey T. Miller in *Ghosh v. Aetna Health of California, Inc.*, Southern District of California Case No. 3:12-CV-1558-JM (BGS)., 2012 BL 266149. See Order at 2:22-23, FN.3 (United

Healthcare of California, though not identified in the caption, was a named Defendant and joined in the Opposition to the Motion for Remand.

6. March 11, 2014 Order Remanding Case for Lack of Subject-Matter Jurisdiction issued by United States District Judge Hon. Otis D. Wright, II in *Temple Hospital Corporation, Inc. v. Oralia Gomez; United Healthcare Services, Inc.*, Central District of California Case No. 2:14-cv-01342-ODWJEM.

7. November 4, 2020 Notice of Motion and Motion to Compel Discovery – Production of Documents and Depositions, filed in Superior Court of the state of California for the County of San Francisco before Hon. Ethan P. Schulman, including Notice of Motion and Motion to Compel Discovery, Memorandum of Points and Authorities supporting Motion, Plaintiff Bristol SL Holdings Inc.'s Separate Statement in Support of Motion, Declarations of John W. Tower and Matthew M. Lavin in Support of Motion to Compel, and Proof of Service.

8. November 4, 2020 Notice of Plaintiffs Motion and Motion for Discovery Protective order filed in Superior Court of the state of California for the County of San Francisco before Hon. Ethan P. Schulman, including Notice of Motion and Motion to Compel Discovery, Memorandum of Points and Authorities supporting Motion, Plaintiff Bristol SL Holdings Inc.'s Separate Statement in Support of Motion, Declarations of Tanisha Porreca and John W. Tower in Support of Motion to Compel, and Proof of Service.

9. October 7, 2019 Order Granting Defendant United Healthcare Services Inc.'s Motion to Dismiss Claims filed under 29 U.S.C. § 1132(a)(1)(b) and Declining to Exercise Supplemental Jurisdiction over Plaintiff Bristol SL

3

Holdings Inc.'s State Law Causes of Action in United States District Court for the Central District of California before Hon. David O. Carter in *Bristol SL Holdings, Inc. v. United HealthCare Services, Inc. et. al*, Case No. CV-19-0710-DOC.

10. October 29, 2020 Stipulation for Judgment between Bristol SL Holdings and the Bankruptcy Trustee resolving the terms and implications of an asset purchase and sale order whereby Bristol SL Holdings acquired the accounts receivable and powers to collect such accounts from the debtor's estate in United States Bankruptcy Court for the Central District of California, California Division, *In Re: Solid Landings Behavioral Health Inc. Et. Al.*, Case 8:20-ap-01151-ES.

Pursuant to FRE 201(b), the Court may take judicial notice of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, including "undisputed facts of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 fn.1 (9th Cir. 2004). Public records subject to judicial notice include the records and decisions from other cases, but not the truth of facts cited therein. *See Perez v. Kroger Co.*, 336 F.Supp. 3d 1137, 1141 (C.D. Cal., 2018) (Court would take judicial notice of decision in another case, but would not take notice of the facts contained in such documents). *See Lee v. City of Las Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (A court may take judicial notice of the existence of matters of public record, such as a prior order or decision, but not the truth of the facts cited therein).

Plaintiff is not seeking to introduce as evidence any specific facts from the Judicial Orders for Remand or relevant pleading papers in this matter. Rather, Plaintiffs ask that the Court take judicial notice of the orders and papers themselves.

4

## <u>DECLARATION OF JOHN W. TOWER</u>

I, John W. Tower, hereby declare and state as follows:

1.  I am an attorney licensed in San Diego, California and admitted to practice before this Court. I have knowledge of the following facts and would testify to them if called as a witness.

2.  Attached hereto as Exhibit A is a true and correct transcript of the August 6, 2012 Order Granting Plaintiff's Motion to Remand issued by United States District Judge Hon. Susan Illston in *Bay Area Surgical Management, LLC v. United Healthcare Insurance Company*, Northern District of California Case No. 3:12-cv-01421-SI.

3.  Attached hereto as Exhibit B is a true and correct transcript of the December 16, 2013 Order Granting Plaintiff's Motion to Remand issued by United States District Judge Hon. Edward J. Davila in *Bay Area Surgical Management, LLC v. United Healthcare Insurance Company*, Northern District of California Case No. 5:13-CV-02512-EJD.

4.  Attached hereto as Exhibit C is a true and correct transcript of the September 24, 2012 Order (1) Remanding Action to the San Diego County Superior Court and (2) Denying Plaintiff's Request for Attorneys' Fees and Costs issued by United States District Judge Hon. Roger T. Benitez in *The Regents for the University of California v. UnitedHealthCare Insurance Company*, et al., Southern District of California Case No. 3:12-cv-00588-BEN-BGS.

5.  Attached hereto as Exhibit D is a true and correct transcript of the October 22, 2014 Order Granting Plaintiff Complete Infusion Care, CIC Inc.'s

5

Request for Judicial Notice In Support of Plaintiff's Motion for Remand and Request for Expenses; Declaration of Matthew M. Lavin
Bristol SL Holdings, Inc. v. United Behavioral Health, Inc. Case No.: 20-cv-07804

Motion for Remand issued by United States District Judge Hon. Manuel T. Real in *Complete Infusion Care, Cic Inc., v. UHC Of Cal.* Central District of California Case No. CV-146577-R 2014 U.S. Dist. LEXIS 197245.

6. Attached hereto as Exhibit E is a true and correct transcript of the October 2, 2012 Order Remanding Case to State Court issued by United States District Judge Hon. Jeffrey T. Miller in *Ghosh v. Aetna Health of California, Inc.,* Southern District of California Case No. 3:12-CV-1558-JM (BGS)., 2012 BL 266149. See Order at 2:22-23, FN.3 (United Healthcare of California, though not identified in the caption, was a named Defendant and joined in the Opposition to the Motion for Remand.

7. Attached hereto as Exhibit F is a true and correct transcript of the March 11, 2014 Order Remanding Case for Lack of Subject-Matter Jurisdiction issued by United States District Judge Hon. Otis D. Wright, II in *Temple Hospital Corporation, Inc. v. Oralia Gomez; United Healthcare Services, Inc.*, Central District of California Case No. 2:14-cv-01342-ODWJEM.

8. Attached hereto as Exhibit G is a true and correct copy of November 4, 2020 Notice of Motion and Motion to Compel Discovery – Production of Documents and Depositions, filed in Superior Court of the state of California for the County of San Francisco before Hon. Ethan P. Schulman, including Notice of Motion and Motion to Compel Discovery, Memorandum of Points and Authorities supporting Motion, Plaintiff Bristol SL Holdings Inc.'s Separate Statement in Support of Motion, Declarations of John W. Tower and Matthew M. Lavin in Support of Motion to Compel, and Proof of Service.

9. Attached Hereto as Exhibit H is a true and correct copy of November 4, 2020 Notice of Plaintiffs Motion and Motion for Discovery Protective order filed in Superior Court of the state of California for the County of San Francisco before Hon. Ethan P. Schulman, including Notice of Motion and Motion to Compel Discovery, Memorandum of Points and Authorities supporting Motion, Plaintiff Bristol SL Holdings Inc.'s Separate Statement in Support of Motion, Declarations of Tanisha Porreca and John W. Tower in Support of Motion to Compel, and Proof of Service.

10. Attached hereto as Exhibit I is a true and correct copy of October 7, 2020 Order Granting Defendant United Healthcare Services Inc.'s Motion to Dismiss Claims filed under 29 U.S.C. § 1132(a)(1)(b) and Declining to Exercise Supplemental Jurisdiction over Plaintiff Bristol SL Holdings Inc.'s State Law Causes of Action in United States District Court for the Central District of California before Hon. David O. Carter in *Bristol SL Holdings, Inc. v. United HealthCare Services, Inc.*, Case No. CV-19-0710-DOC.

11. Attached hereto as Exhibit J is a true and correct copy of  October 29, 2020 Stipulation for Judgment between Bristol SL Holdings and the Bankruptcy Trustee resolving the terms and implications of an asset purchase and sale order whereby Bristol SL Holdings acquired the accounts receivable and powers to collect such accounts from the debtor's estate in United States Bankruptcy Court for the Central District of California, California Division, *In Re: Solid Landings Behavioral Health Inc. Et. Al.*, Case 8:20-ap-01151-ES.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

7

Executed on this 19th day of November, 2020, at McLean, Virginia

/s/ John W. Tower
John W. Tower

# EXHIBIT A

1
2
3
4                      IN THE UNITED STATES DISTRICT COURT
5                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7
8    BAY AREA SURGICAL MANAGEMENT,        No. C 12-01421 SI
     LLC.,
                                          **ORDER GRANTING PLAINTIFF'S**
9                   Plaintiff,            **MOTION TO REMAND**
10        v.
11   UNITED HEALTHCARE INSURANCE
     COMPANY, DOES 1-25, inclusive,
12
                    Defendants.
13   _____/
14
15           Plaintiff's motion to remand this case to Santa Clara County Superior Court, where it was filed,
16   and defendant's motion to dismiss are scheduled for hearing on August 10, 2012.  Pursuant to Civil
17   Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral
18   argument and VACATES the hearing.  For the reasons set forth below, the Court GRANTS the motion
19   to remand, and accordingly, need not address defendant's motion to dismiss.
20
21                                    **BACKGROUND**
22           On February 10, 2012, plaintiff Bay Area Surgical Management, LLC. ("BASM") filed this
23   action in the Superior Court of the State of California, County of Santa Clara, against United Healthcare
24   Insurance Company ("United").  Plaintiff asserted five causes of action for (1) breach of contract, (2)
25   violation of California Business & Professions Code § 17200 *et seq.*, (3) negligent misrepresentation,
26   (4) promissory estoppel, and (5) equitable  estoppel.  FAC ¶3.  These claims stem from an April 20,
27   2011 telephone conversation between a BASM employee and a United employee, during which United
28   allegedly authorized and orally agreed to compensate BASM for 70% of the approved surgical
     procedures to be performed by BASM on a patient (the "patient") insured by United.  *Id.* ¶20.  After
     BASM verified authorization and compensation for the surgery, Dr. Cameran Nezhat performed the

patient's surgery. *Id. ¶21.* BASM alleges that despite its numerous attempts to obtain payment from United, United paid only $9,216.61 or approximately 8% of the billed amount of $129,681. *Id. ¶¶7, 22-27, 33.* BASM asserts that United owes $81,560.51 under the oral contract, but BASM seeks only $74,500. *Id. ¶33.*

On March 21, 2012, United removed this action to federal court on the basis of federal question jurisdiction, asserting that BASM's claims were completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101 *et seq.* On May 4, 2012, BASM filed a first amended complaint ("FAC") which, *inter alia,* removed any reference to the assignment of benefits that BASM obtained from the patient to eliminate any cause of action arising under federal law. On May 21, 2012, United filed a motion to dismiss. On June 15, 2012, BASM filed a motion to remand this case to state court on the basis that this Court lacks subject matter jurisdiction.

## LEGAL STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court. 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A district court has diversity jurisdiction where the matter in controversy exceeds the sum of $75,000, and is between, *inter alia*, citizens of different States, or citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332.

Upon a defendant's removal of a case to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If the district court has subject matter jurisdiction, the court "shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy." 28 U.S.C. § 1367(a). However, if the court chooses, it may in its discretion "remand all matters in which State law predominates." 28 U.S.C. § 1441(c). Moreover, a district court has the discretion to remand a properly removed case to state court when no federal claim remains, "upon a proper determination that retaining

jurisdiction over the case would be inappropriate." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357 (1988); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 2001). In deciding whether to remand, courts should "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon*, 484 U.S. at 350. The Supreme Court in *Carnegie-Mellon* noted that a district court has "a powerful reason to choose not to continue to exercise jurisdiction" when all federal claims have been eliminated at an early stage of the litigation. *Carnegie-Mellon*, 484 U.S. at 350-51.

## DISCUSSION

BASM moves this Court to remand this case to state court on the basis that BASM's FAC does not include federal claims, and therefore this Court now lacks subject matter jurisdiction. The Court finds that the removal of this case was proper, as state law claims in the original complaint were subject to complete preemption under ERISA. However, in light of the amended complaint, the Court finds that the existing state law claims are not subject to ERISA preemption. Therefore, the Court does not have subject matter jurisdiction over the amended complaint and, given the early stage of litigation, declines to exercise supplemental jurisdiction over the remaining state law claims and remands this action to state court.[1]

### I.       Removal of Original Complaint was Proper

United removed this case to federal court because the heart of BASM's original complaint was that United wrongfully refused to pay benefits that were due under an ERISA-governed benefit plan.[2] Under *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), a state law claim is completely preempted by section 1132(a) of ERISA – and, therefore, subject to removal – if the state law claim meets a two-prong test: (1) the plan participant or beneficiary could have brought the claim under section 1132(a) of

---

[1] This result is consistent with the recent decision of Judge Koh in *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minn., Inc.,* 12-CV-0848-LHK, 2012 WL 2919388 (Koh, L.) (N.D. Cal July 17, 2012). The procedural posture and allegations asserted in that case are substantively identical to the posture and allegations in the case before this Court. Judge Koh found removal of the original claims appropriate as some of the state law claims were preempted under ERISA, but declined to exercise supplemental jurisdiction over the amended, non-preempted, claims.

[2] The parties do not dispute that the patient's health care plan with United is an ERISA-governed benefit plan.

1   ERISA[3]; and (2) no other legal duty, independent of ERISA, is implicated by a defendant's actions.[4]

2   A state law cause of action is completely preempted by ERISA only if both prongs of the *Davila* test

3   are satisfied. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009).

4   In the original removed complaint, BASM's first and second state law causes of action met the

5   first and second prongs of the *Davila* test, and were thus completely preempted by ERISA §1132(a).

6   BASM's first cause of action was for breach of contract, and BASM alleged that, "[a]s a result of the

7   breach of Defendant UNITED, in the obligations pursuant to the written contract with the patient, who

8   has assigned her rights to BASM . . . $81,560.51 is now due, owing and unpaid." Compl. ¶35. BASM's

9   second cause of action was for violation of California Business & Professions Code § 17200 *et seq.*

10  based on United's failure to honor its oral contract and bad faith attempt at settlement. BASM alleged

11  that United "unlawfully refused to honor the terms of its written contract with the patient . . . giving rise

12  to BASM's claim to damages . . ." *Id.* ¶41.

13  Both causes of action in the original complaint met the first prong of the *Davila* test because

14  BASM brought those claims pursuant to the patient's assignment of her ERISA plan rights to BASM.

15  According to BASM, the patient and United "entered into a written contract whereby UNITED agreed

16  to tender payment in the amount of 70% of the authorized, billed price for qualified surgical

17  procedures." *Id.* ¶35. BASM alleged that prior to surgery United authorized the surgery, and that the

18  patient "assigned all of her rights to any payment due to her from UNITED to BASM . . ." *Id.* ¶19.

19  Thus, the original complaint clearly stated that BASM was suing pursuant to the patient's assignment

20  of rights to BASM to recover payments owed for her surgery. The patient could have brought suit under

21  section 1132(a) of ERISA. Accordingly, both causes of action met the first prong of the *Davila* test.

22  The first and second causes of action of the original complaint also met the second prong of the

23  *Davila* test. As Judge Koh found in *Bay Area Surgical Mgmt., LLC/Blue Cross*, "these causes of action

24  . . . arise from [defendant's] legal duty to comply with the terms of its ERISA plan agreement with the

---

26  [3]  Section 1132(a)(1)(B) provides that a civil action may be brought by a participant or
beneficiary to recover benefits due under an ERISA plan. 29 U.S.C. § 1132.

28  [4]  For example, a contract between a medical service provider and a medical insurer creates legal
duties independent of ERISA. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941,
948 (9th Cir. 2009).

United States District Court
For the Northern District of California

1  patient, and do not implicate any ERISA-independent legal duty."  12-CV-0848-LHK, 2012 WL

2  2919388, at *6.  Although BASM expressly reserved the right to sue on its own behalf, BASM's

3  original complaint asserted claims that were dependent on ERISA.

4          Because BASM's first and second state law causes of action in its original complaint met both

5  prongs of the *Davila* test, these claims were completed preempted by ERISA, and thus removal of the

6  case from state to federal court was proper.

7          Although the Court finds removal of this case proper, this does not end the Court's inquiry.

8  While jurisdiction for purposes of removal is determined based on the allegations of the original

9  complaint, the Court may consider whether subsequent amendments to the operative claims eliminate

10  jurisdiction.  *Sparta Surgical Corp. v. National Ass'n of Securities Dealer, Inc.,* 159 F.3d 1209, 1213

11  (9th Cir. 1998) (finding removal jurisdiction based on the original complaint); *see, e.g., Baddie v.*

12  *Berkeley Farms, Inc.* 64 F.3d 487, 490-91 (9th Cir. 1995) (finding it proper for a plaintiff to eliminate

13  federal claims and move for remand after removal); *Bay Area Surgical Mgmt.*, LLC, 12-CV-0848-LHK,

14  2012 WL 2919388, at *8.  If federal question jurisdiction no longer exists, the court must decide

15  whether to exercise jurisdiction over the state law claims.

16

17  **II.      Claims in the FAC are not preempted by ERISA**

18          Although BASM's FAC includes five state law causes of action that are identical to the causes

19  of action in the original complaint,  the allegations supporting the amended claims are different and fail

20  the two-prong *Davila* test for complete preemption under ERISA.  BASM's FAC, *inter alia,* does not

21  include any reference to the patient's assignment of ERISA rights to BASM.  Rather than asserting

22  claims on behalf of the patient, as it did in its original complaint, BASM's amended causes of action

23  arise from the alleged oral contract between BASM and United, in which United allegedly agreed to pay

24  70% of the patient's surgery costs.[5]

25          Even though providers receive an assignment of a patient's medical rights and could have

26  brought suit under ERISA, there is no "basis to conclude that the mere fact of assignment converts the

27  _____

28          [5] Plaintiff's negligent misrepresentation, promissory estoppel, and equitable estoppel claims are similarly based on United's alleged representation that it would pay BASM 70% of the cost of the surgery.

Providers' claims . . . into claims to recover benefits under the terms of an ERISA plan." *Marin Gen. Hosp.*, 581 F.3d at 949 (quoting *Blue Cross of Cal. v. Anesthesia Care Associates Medical Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir.1999)). Here, BASM no longer brings claims on behalf of the patient, rather its claims stem from an alleged oral contract directly between United and BASM. Like the plaintiffs of *Marin Gen. Hosp.* and *Blue Cross of Cal.,* BASM's amended state law claims are based on its alleged oral contract with and promises made by defendant to BASM. These claims were not brought, and could not have been brought, under ERISA. As such, BASM's amended state law claims fail the first prong of the *Davila* test. *See also Bay Area Surgical Mgmt., LLC,* 12-CV-0848-LHK, 2012 WL 2919388, at *10.

Similarly, BASM's amended state law claims fail the second prong of the *Davila* test. The second prong of *Davila* asks whether "there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210. State claims that are based on an independent legal duty do not satisfy the second prong of *Davila*. *Marin Gen. Hosp.,* 581 F.3d at 950. As stated above, BASM's amended state law causes of action arise from an alleged oral contract and promises between BASM and United. BASM is suing on its own right pursuant to an independent obligation, and its claims would exist regardless of an ERISA plan. In other words, BASM's "claims do not rely on, and are independent of, any duty under an ERISA plan." *Id.* at 949. As such, BASM's state law claims also fail the second prong of the *Davila* test.

Because BASM's amended state law causes of action fail both prongs of the *Davila* test, these claims are not completely preempted by ERISA, and the complaint is devoid of any federal claims. *See also Bay Area Surgical Mgmt., LLC,* 12-CV-0848-LHK, 2012 WL 2919388, at *8.

## III.    Continued jurisdiction over state claims

Relying on *Sparta Surgical Corp.*, United contends that federal jurisdiction should be determined on the basis of the pleadings filed at the time of removal without reference to subsequent amendments. 159 F.3d at 1213. The Ninth Circuit in *Sparta Surgical Corp.* held that a plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based. *Id.* The Ninth Circuit found that the "district court correctly concluded that subject matter jurisdiction

1    existed at the time of removal, and denied Sparta's remand motion." *Id.* However, this Court agrees

2    that although *"Sparta* held that no right to remand existed," the Ninth Circuit "did not address whether

3    the court could have remanded by exercising its discretion to decline supplemental jurisdiction over the

4    remaining state court claims." *Bay Area Surgical Mgmt.,* 12-CV-0848-LHK, 2012 WL 2919388, at *8.

5          A district court has the discretion to remand a properly removed case to state court when no

6    federal claim remains. *See Carnegie-Mellon University,* 484 U.S. at 357; *Harrell,* 934 F.2d at 205.

7    When "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward

8    declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University*,

9    484 U.S. at 350; *Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir.1997). As discussed above, this

10   case was properly removed, but the amended complaint is now devoid of federal claims. Accordingly,

11   the Court lacks federal question jurisdiction over the FAC. The other ground for federal subject matter

12   jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a). A federal district court has diversity

13   jurisdiction where the matter in controversy exceeds $75,000 and is, *inter alia,* between citizens of

14   different states. 28 U.S.C. § 1332(a). Here, plaintiff seeks damages of $74,500, below the requisite

15   $75,000 for diversity jurisdiction. Accordingly, the Court lacks diversity jurisdiction over the FAC.

16         The Court lacks both federal question and diversity jurisdiction over the FAC, and it is within

17   this Court's discretion to exercise supplemental jurisdiction over the remaining claims. *Carlsbad Tech.,*

18   *Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009); 28 U.S.C. § 1367(c). In deciding whether to remand,

19   courts should "consider and weigh . . . the values of judicial economy, convenience, fairness, and

20   comity[.]" *Carnegie-Mellon*, 484 U.S. at 350. A district court has "a powerful reason to choose not to

21   continue to exercise jurisdiction" when all federal claims have been eliminated at an early stage of the

22   litigation. *Id.* at 350-51. Here, the federal claims were eliminated at the pleading phase, and in the

23   interests of judicial economy, convenience, fairness, and comity, the Court declines to exercise

24   supplemental jurisdiction and remands the remaining claims to state court.

25

26

27   ///

28

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand this complaint to the Superior Court of the State of California, County of Santa Clara.  Docket No. 9 and 16.

**IT IS SO ORDERED.**

Dated: August 6, 2012

_____
SUSAN ILLSTON
United States District Judge

# EXHIBIT B

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BAY AREA SURGICAL MANAGEMENT LLC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, ET AL., <br><br> Defendants. | Case No. 5:13-CV-02512-EJD <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** <br><br><br> **[Re: Docket No. 7]** |

Presently before the Court is Plaintiff Bay Area Surgical Management's ("BASM") motion to remand this case to Santa Clara County Superior Court, where it was filed. <u>See</u> Docket Item No. 7. Having reviewed all the parties' submissions, the Court has determined that the matter is appropriate for decision without oral argument pursuant to Civil L.R. 7-1(b).

BASM is an ambulatory management group that provides healthcare management services. Defendant United Healthcare Insurance Company ("United") is an insurance provider. The claims stem from an April 20, 2011 telephone conversation between a BASM employee and a United employee, during which United allegedly authorized and orally agreed to compensate BASM for 70% of the approved surgical procedures to be performed by BASM on a patient (the "patient") insured by United. <u>See</u> Second Amended Complaint ("SAC"), Docket Item No. 2-4 ¶ 17-18. After BASM verified authorization and compensation for the surgery, Dr. Cameran Nezhat performed

1

the patient's surgery. Id. ¶ 19. BASM alleges that despite its numerous attempts to obtain payment from United, United paid only $9,216.61 or approximately 8% of the billed amount of $129,681. Id. ¶¶ 5, 23-25, 30. BASM asserts that United owes $81,560.51 under the oral contract, but BASM seeks only $74,500. Id. ¶ 30.

On February 10, 2012, BASM filed this action in the Superior Court of the State of California, County of Santa Clara, against United. BASM asserted five causes of action for (1) breach of contract, (2) violation of California Business & Professions Code § 17200 et seq., (3) negligent misrepresentation, (4) promissory estoppel, and (5) equitable estoppel. See Complaint, Docket Item No. 2-1, 11. On March 21, 2012, United removed this action to federal court on the basis of federal question jurisdiction, asserting that BASM's claims were completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101 et seq. On May 4, 2012, BASM filed a first amended complaint ("FAC") which, inter alia, removed any reference to the assignment of benefits that BASM obtained from the patient to eliminate any cause of action arising under federal law. On May 21, 2012, United filed a motion to dismiss. On June 15, 2012, BASM filed a motion to remand the case to state court on the basis that the federal court lacks subject matter jurisdiction. On August 6, 2012, the Northern District of California entered an order granting BASM's motion to remand, finding that "the existing state law claims are not subject to ERISA preemption." See Case No. 3:12-CV-01421-SI, Docket Item No. 25. BASM then filed a second amended complaint ("SAC") in the Superior Court on May 14, 2013 in which it asserted six causes of action for (1) breach of contract, (2) violation of California Business & Professions Code § 17200 et seq., (3) negligent misrepresentation, (4) promissory estoppel, (5) equitable estoppel, and (6) quantum meruit. See Dkt. No. 2-4. United again removed the case to federal court on June 4, 2013, based on federal question jurisdiction, asserting that BASM's quantum meruit claim is preempted by ERISA. See Notice of Remand, Docket Item No. 1. On July 3, 2013, BASM filed this present motion to remand the case on the basis that this Court lacks subject matter jurisdiction.

Removal jurisdiction is a creation of statute. See Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). When a case "of which the district courts of the

2

United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court. 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.

Upon a defendant's removal of a case to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If the district court has subject matter jurisdiction, the court "shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy." 28 U.S.C. § 1367(a). However, if the court chooses, it may in its discretion "remand all matters in which State law predominates." 28 U.S.C. § 1441(c). Moreover, a district court has the discretion to remand a properly removed case to state court when no federal claim remains, "upon a proper determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 357 (1988); Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th Cir. 2001). In deciding whether to remand, courts should "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity[.]" Carnegie-Mellon, 484 U.S. at 350. The Supreme Court in Carnegie-Mellon noted that a district court has "a powerful reason to choose not to continue to exercise jurisdiction" when all federal claims have been eliminated at an early stage of the litigation. Id. at 350-51.

United removed BASM's state court action to federal court based on federal question jurisdiction. BASM moves to remand on the grounds of lack of subject matter jurisdiction. The only new cause of action presented in BASM's SAC is a claim for quantum meruit. All other causes of action were already ruled upon in Judge Illston's order of August 6, 2012, which determined that the other five claims were not subject to ERISA preemption, so that the only question here is whether BASM's quantum meruit claim is subject to ERISA preemption. Judge Illston found that removal of the original complaint was proper because it included state law claims preempted by ERISA, but that in light of the FAC, the existing state law claims were not subject to ERISA preemption because they arose from the alleged oral contract between BASM and United, rather than the patient's assignment of ERISA rights to BASM. The court declined to exercise

3

1    supplemental jurisdiction over the remaining state court claims because the federal claims were

2    eliminated at the pleading phase.

3         Under the Supreme Court's decision in <u>Aetna Health Inc. v. Davila</u>, a state claim is

4    completely preempted under ERISA if (1) "an individual, at some point in time, could have

5    brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent

6    legal duty that is implicated by a defendant's actions." <u>Marin General Hospital v. Modesto &</u>

7    <u>Empire Traction Co.</u>, 581 F.3d 941, 946 (9th Cir. 2009) (quoting <u>Aetna Health Inc. v. Davila</u>, 542

8    U.S. 200, 210 (2004)).

9         Relying on the Ninth Circuit's decision in <u>Marin General Hospital v. Modesto</u>, the Court

10   finds that ERISA does not preempt Plaintiff's quantum meruit claim. <u>Marin</u>, 581 F.3d 941. In

11   <u>Marin</u>, the Ninth Circuit considered similar circumstances whereby Marin General Hospital called

12   a health insurance administrator to confirm that a prospective patient had health insurance through

13   an ERISA plan provided by his employer. The administrator orally verified the patient's coverage,

14   authorized treatment, and agreed to cover 90% of expenses. The hospital performed the surgery,

15   but was underpaid by the health insurance plan. The hospital filed a claim in state court for breach

16   of implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and

17   estoppel. Defendants removed to federal court based on ERISA preemption. The Ninth Circuit

18   ruled that the case should have been remanded because the state law claims did not meet either

19   prong of the <u>Davila</u> test for ERISA preemption.

20        Under the first prong, the court reasoned that the hospital's claims arose from its phone

21   conversation with the administrator, not the rights assigned to the patient through the plan. The

22   hospital had already been paid part of the patient's charges in its capacity as an assignee of the

23   patient's rights under his ERISA plan. Now, the hospital was seeking additional payment arising

24   from the agreement made over the phone. The hospital did not contend that it was owed this

25   amount because it was owed under the patient's ERISA plan. Instead, it contended that the

26   additional amount was owed based on the alleged oral contract with the administrator. Thus, the

27   hospital's state law claims could not have been brought under § 502(a)(1)(B).

28

4

The second prong was also not met as the hospital's claims were based on independent legal duties. The hospital based its state-law claims on an independent oral agreement with the health insurance administrator, not denial of coverage under the terms of an ERISA plan. Because the state law claims were not based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, the court determined they were based on "other independent legal dut[ies]" as envisioned by the Davila test. Marin, 581 F.3d at 950. Therefore, the Ninth Circuit held that the hospital's state law claims, including the quantum meruit claim, were not completely preempted by ERISA and there was no federal question removal jurisdiction.

Notwithstanding decisions by other circuit courts and district courts relied upon by United, this Court is bound by the decisions of the Ninth Circuit. BASM, like the plaintiff in Marin, bases its state law claims on an alleged oral promise made by United, rather than the patient's ERISA plan. BASM is seeking an additional payment amount above what United already paid under the scope of the ERISA plan, based on a quasi-contract beyond the scope of the plan. This Court finds that the claims are not completely preempted by ERISA § 502(a)(1)(B) as they do not meet the Davila two-prong test. As such, there is no federal question removal jurisdiction under 28 U.S.C. § 4441(a).

Based on the foregoing, Plaintiff's Motion to Remand is GRANTED. The clerk shall remand this action to Santa Clara County Superior Court and close this file.

**IT IS SO ORDERED**

Dated: Dec. 16, 2013

EDWARD J. DAVILA
United States District Judge

Case No. 5:13-CV-02512-EJD
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

# EXHIBIT C

```
1
2
3
4
5
6
7
```

FILED

12 SEP 25 AM 10: 14

CLERK, U.S. DIST... T COURT
SOUTHERN DISTRICT ... CALIFORNIA

BY:                     DEPUT'

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS FOR THE UNIVERSITY OF CALIFORNIA on behalf of its SAN DIEGO MEDICAL CENTER, | CASE NO. 12-CV-0588 BEN (BGS) |
| Plaintiff, | **ORDER:** |
| vs. | **(1) REMANDING ACTION TO THE SAN DIEGO COUNTY SUPERIOR COURT** |
| UNITEDHEALTHCARE INSURANCE COMPANY, UHC OF CALIFORNIA, UNITED HEALTHCARE SERVICES, INC., and DOES 1 through 8,400, inclusive, | **(2) DENYING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS** |
| Defendants. | [Docket No. 7] |

Presently before the Court is Plaintiff's Motion to Remand. (Docket No. 7) For the reasons stated below, the Motion to Remand is **GRANTED IN PART AND DENIED IN PART**. This action is **REMANDED** to the San Diego County Superior Court. Plaintiff's request for an award of attorneys' fees and costs is **DENIED**.

## BACKGROUND

On January 24, 2012 Plaintiff Regents of the University of California, on behalf of its San Diego Medical Center ("UCSDMC") filed a complaint in the San Diego County Superior Court, naming United Healthcare Insurance Company, UHC of California, and United Healthcare Services, Inc. (collectively, "United") as Defendants. Plaintiff, a hospital, entered into a contract with United, an insurance company, where the insurance company promised to direct or authorize its enrollees to

receive hospital services at the hospital and, in exchange, the hospital agreed that the insurance company could pay discounted rates for the services. (Mot. at 4.) When patients are covered under more than one insurance plan, coordination of payments between the plans must take place in order to assure that the hospital is not paid more than what it is entitled to receive. Plaintiff alleges that United did not pay Plaintiff for amounts due in situations where Medicare is the primary payer and United is the secondary payer. (*Id.* at 1.) Plaintiff's complaint asserts ten causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of implied-in-fact contract; (4) unjust enrichment; (5) intentional interference with contract; (6) negligent interference with contract; (7) intentional interference with prospective economic advantage; (8) negligent interference with prospective economic advantage; (9) declaratory relief; and (10) injunctive relief.

On March 8, 2012, United removed the action under 28 U.S.C. § 1441, contending that this Court has jurisdiction under 28 U.S.C. § 1331. On April 9, 2012, Plaintiff filed the present Motion to Remand Action to State Court Pursuant to 28 U.S.C. § 1447.

## DISCUSSION

Congress has authorized a defendant to remove a civil action from state court to federal court. 28 U.S.C. § 1441. However, the removing party "always has the burden of establishing that removal was proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The district court must remand any case previously removed from a state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Moreover, there is a strong presumption against removal jurisdiction; doubts as to whether the federal court has subject matter jurisdiction must be resolved in favor of remand. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). A defense based on federal law is not sufficient to remove an action to federal court. *Berg v. Leason*, 32 F.3d 422, 426 (9th Cir. 1994) ("[N]either an affirmative defense based on federal law nor one based on federal preemption renders an action brought in state court removable." (internal citations omitted)).

United removed the action under 28 U.S.C. § 1441, contending that this Court has federal question jurisdiction because Plaintiff's complaint asserts claims that raise a substantial and disputed

1 federal issue, namely that an issue regarding Medicare must be resolved. Additionally, United

2 contends that the court has federal question jurisdiction under ERISA's complete preemption doctrine.

## I. MEDICARE

4 Federal courts have "jurisdiction to hear, originally or by removal from a state court, only those

5 cases in which a well-pleaded complaint establishes either that federal law creates the cause of action

6 or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of

7 federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). Under

8 the well pleaded complaint rule, the court must determine whether "a right or immunity created by the

9 Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's

10 cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). Even if it is "very likely, in the

11 course of the litigation, a question under the Constitution would arise," this is not enough to show that

12 the plaintiff's original cause of action arises under the Constitution. *Louisville & N. R. Co. v. Mottley*,

13 211 U.S. 149, 152 (1908).

14 In this case, Plaintiff's complaint does not establish that the case "arises under" federal law.

15 Plaintiff correctly asserts that its claims are all state law causes of action, and although Medicare is

16 mentioned in the complaint, resolution of Medicare issues is not required by the claims in the

17 complaint. Plaintiff seeks recovery under an agreement triggered by use of Medicare as the primary

18 payer. United asserts that Medicare law prevents Plaintiff from prevailing on its state law claims, so

19 Medicare issues must be resolved, creating federal question jurisdiction. However, this is a defense

20 to a claim, and potential defenses are not enough to satisfy the well-pleaded complaint rule.

21 Further, there is no substantial question of federal law that requires resolution. Federal

22 jurisdiction may arise when a court determines that "a state-law claim necessarily raise[s] a stated

23 federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing

24 any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*

25 *Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). However, the "mere presence

26 of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."

27 *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

28 In *Nevada v. Bank of America Corp.*, the "gravamen of the Complaint [was] that [defendant]

1  violated Nevada's [Deceptive Trade Practices Act] through numerous misrepresentations, some about

2  the [Home Affordable Mortgage Program], and some which also violate the [Fair Debt Collection

3  Practices Act ('FDCPA')]." 672 F.3d 661, 675 (9th Cir. 2012). The defendants in *Nevada* asserted

4  that the case posed "substantial questions about the scope and applicability of the

5  FDCPA—specifically, whether the FDCPA applies at all to mortgage loan servicers," and should give

6  rise to federal question jurisdiction. *Id.* However, the court in *Nevada* rejected this argument, citing

7  *Merrell Dow* for the proposition that federal question jurisdiction cannot be established on the ground

8  that a case presents a novel issue of federal law. *Id.* (citing *Merrell Dow*, 478 U.S. at 817).

9         Further, courts have found that when it is unnecessary to resolve a disputed provision of a

10  federal statute in order to resolve a state law claim, federal courts have no jurisdiction. *See Williston*

11  *Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold*, 524 F.3d 1090, 1102 (9th Cir.

12  2008). In *Williston Basin*, a gas pipeline company brought action against natural gas producers

13  claiming state law claims of conversion and negligence, and seeking to condemn the gas producers'

14  wells under a federal statute. *Id.* at 1092. The court found that there was not a "substantial question

15  of federal law" because "no provision of the [federal statute] constitutes an essential element" of the

16  state law claims. *Id.* at 1102 (internal alteration omitted).

17         Similar to the issue in *Nevada*, this issue seems to be a novel one in this circuit, but that reason

18  alone does not establish federal question jurisdiction. In addition, in applying *Williston Basin* to the

19  present action, federal question jurisdiction cannot be found because no provision of Medicare

20  constitutes an essential element of the state law claims asserted by the Plaintiff.

21         Defendant relies on *New York City Health & Hospitals Corp. v. Wellcare of New York, Inc.*,

22  769 F. Supp. 2d 250 (S.D.N.Y. 2011) ("*NYC Health*"), in support of its contention that there is a

23  substantial question of federal law that requires resolution. In *NYC Health*, the plaintiff asserted state

24  law claims for breach of contract and unjust enrichment. *Id.* at 252. The plaintiff's complaint in *NYC*

25  *Health* alleged that the defendant violated an obligation between the defendant and Centers for

26  Medicare & Medicaid Services ("CMS") that required the defendant to conform to Medicare law and

27  regulations. *Id.* at 256. Although the court in *NYC Health* found that there was federal question

28  jurisdiction, *NYC Health* can be distinguished from the case at hand. In the present action, the

1  complaint does not assert possible issues of Medicare law that require resolution, whereas in *NYC*

2  *Health*, this was a central part of the plaintiff's complaint. That is, the plaintiff in *NYC Health* first

3  needed to establish the obligation of the defendant under Medicare law in order to proceed with its

4  case. *Id.* This crucial distinction renders *NYC Health* inapplicable here.

5      For these reasons, Plaintiff's claims do not raise a substantial federal question.

6  **II.    ERISA**

7      Additionally, United contends that this Court has federal question jurisdiction under ERISA's

8  complete preemption doctrine. Although federal preemption is normally a defense to enforcement of

9  state law, where state law claims fall within the scope of ERISA's civil enforcement provisions

10  (§ 502(a)), federal preemption is complete. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54-55

11  (1987). A cause of action is completely preempted by ERISA if "an individual, at some point in time,

12  could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent

13  legal duty that is implicated by the defendant's actions." *Aetna Health Inc. v. Davila*, 542 U.S. 200,

14  210 (2004). In the present action, neither of the two required prongs under *Davila* are satisfied;

15  therefore, there is no preemption under ERISA.

16      **A.    Plaintiff's claim could not have been brought under ERISA § 502(a)(1)(B)**

17      Courts have held that where the cause of action is between a provider and insurance company

18  for payment for services, a plaintiff is unable to bring the claim under ERISA § 502(a)(1)(B). *See*

19  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009); *Blue Cross*

20  *of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1050 (9th Cir. 1999). In both

21  *Marin* and *Blue Cross*, medical providers brought suit against insurance companies for an alleged

22  breach of contract of payment obligations. *Marin*, 581 F.3d at 943-44; *Blue Cross*, 187 F.3d at 1049.

23  In both cases, the court determined that the claims could not have been brought under ERISA

24  § 502(a)(1)(B) because the medical providers were asserting rights related to the alleged payment

25  plans, and not as assignees or beneficiaries of an ERISA plan participant. *Marin*, 581 F.3d at 949;

26  *Blue Cross,* 187 F.3d at 1050. The insurance company in *Blue Cross* made the same argument United

27  makes here: that ERISA's complete preemption doctrine applies because the health care provider is

28

attempting to recover for the treatment of patients, some of which are covered by ERISA. *Blue Cross*, 187 F.3d at 1050. In rejecting that argument, the court in *Blue Cross* stated that the claims, "which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of the ERISA plans, and hence do not fall within § 502(a)(1)(B)." *Id.*

Similar to the claims in *Blue Cross*, the claims in this case arose from the terms of the agreement between Plaintiff and United and are not claims for benefits under the terms of the ERISA plans. The patient-assignors in this case could not have asserted the claims made by Plaintiff, as the patient-assignors have no interest in the matter at hand. As held by the court in *Blue Cross*, the mere fact that some of the patient-assignors treated by Plaintiff are covered by ERISA does not mean that the claims could have been brought under § 502(a)(1)(B).

**B.    There is another independent legal duty implicated by defendant's actions**

"If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Marin*, 581 F.3d at 949. The medical provider seeking recovery from an insurance company in *Marin* contended that an oral contract was made during a phone call and all state-law claims asserted arose from that call. *Id.* at 950. The court in *Marin* reasoned that since the "state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on 'other independent legal duties.'" *Id.* (alteration omitted). Similarly, in this case, since United's alleged obligation to Plaintiff is not based on an obligation under an ERISA plan and would exist whether or not an ERISA plan existed, the state-law claims are based on other independent legal duties. Here, the other independent legal duty is the duty claimed under the contract between both parties. Because of this duty, the claims are not subject to complete preemption under ERISA § 502(a)(1)(B).

Accordingly, because Plaintiff's complaint does not raise federal issues, this Court does not have jurisdiction under § 1331. This action is **REMANDED** to the San Diego County Superior Court.

///

**III.   REQUEST FOR ATTORNEYS' FEES**

Plaintiff requests that the Court order United to pay Plaintiff's attorneys' fees and costs incurred in preparing the Motion to Remand. Under 28 U.S.C. § 1447(c), "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Such an award of attorneys' fees is discretionary. *Id.* at 136. Here, although this Court has found that there is no federal subject matter jurisdiction, United nonetheless had an objectively reasonable basis for removal. Plaintiff's request for attorneys' fees and costs is **DENIED**.

**CONCLUSION**

For the reasons stated above, the Motion to Remand is **GRANTED IN PART AND DENIED IN PART**. This action is **REMANDED** to the San Diego County Superior Court. Plaintiff's request for attorneys' fees and costs is **DENIED**.

**IT IS SO ORDERED.**

DATED: September __, 2012

HON. ROGER T. BENITEZ
United States District Judge

# EXHIBIT D

1                                                                                    JS-6

2

3

4

5

6

7

8

9

10                        UNITED STATES DISTRICT COURT

11                       CENTRAL DISTRICT OF CALIFORNIA

12

13   COMPLETE INFUSION CARE, CIC INC., a      )   CASE NO.  CV 14-6577-R
     California corporation,                   )
14                                             )   ORDER GRANTING PLAINTIFF
                                               )   COMPLETE INFUSION CARE, CIC
15                    Plaintiff,               )   INC.'S MOTION FOR REMAND
                                               )
16        v.                                   )
                                               )
17   UHC OF CALIFORNIA, f.k.a.                  )
     PACIFICARE, a California corporation;      )
18   UNITED HEALTHCARE SERVICES, INC.,          )
     a Minnesota corporation; and DOES 1       )
19   through 50, inclusive,                     )
                                               )
20                    Defendants.              )
                                               )
21                                             )
                                               )
22   ─────────────────────────────────────────

23        Before the Court is Plaintiff's Motion for Remand, which was filed on September 19,

24   2014. Having been thoroughly briefed by both parties, this Court took the matter under submission

25   on September 29, 2014.

26        Plaintiff served Defendants with the summons and Complaint on May 22, 2014.

27   Defendants filed a Notice of Removal on August 21, 2014.  Therefore, the issue is whether this

28   action should be remanded for failure to file a timely Notice of Removal.

Pursuant to § 1446(b)(1), a notice of removal must be filed within 30 days after the defendant receives a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.  Grounds for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b)(1) to begin.  *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013).   If grounds for removal are not ascertainable from the initial pleading, section 1446(b)(3) provides that a defendant may file a notice of removal within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.

Here, grounds for removal were ascertainable on the face of Plaintiff's Complaint. Plaintiff's initial Complaint alleges that the patients at issue are members of an employee plan administered by Defendants.  Specifically page 3, paragraph 8 of the Complaint states:

> At various times **from 2011 to the present**, CIC received requests for medication and home infusion services by patients who were **affiliated with or were members of United** responsible for the processing and payment of medical claims for treatment, care and services provided to **participants in those employee plans** – in that United was at all relevant times and is responsible for the processing and payment of medical claims for treatment, care and services provided to the members at issue – and, as such, said members will be referred to herein as United's members.  Pursuant to the requests by United's members, CIC provided medically necessary medication and accompanying in-home infusion services to treat the members'' serious health conditions.

The Complaint specifies the time period and patients at issue in this action.  Furthermore, it alleges that these patients were affiliated with Defendants, and were participants in employee health plans.  Accordingly, the information alleged in the Complaint was sufficient to ascertain that Plaintiff's claims are based on ERISA plans, which gives rise to federal question jurisdiction. Given the fact that Defendants are in the business of administering health plans for employer/employees, the fact that they know this is a case about payment for medical services provided to the participants of those health plans, and the fact that they had access to the same

1 patient information as Plaintiff, Defendants had the necessary information from the face of the

2 Complaint to ascertain grounds for removal based on a federal question or diversity.  Therefore,

3 Defendants' Notice of Removal, which was filed on August 21, 2014, was untimely.

4 **IT IS HEREBY ORDERED** that Plaintiff's Motion for Remand is GRANTED. (Doc. #9)

5 Dated: October 22,  2014.

8                                                   MANUEL L. REAL
                                              UNITED STATES DISTRICT JUDGE

# EXHIBIT E

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    SANJAY GHOSH, M.D.,                          CASE NO.: 3:12-CV-1558-JM (BGS)

12                                Plaintiff,       **ORDER REMANDING CASE TO**
                                                   **STATE COURT**
13            v.

14    AETNA HEALTH OF CALIFORNIA, INC.;
      CIGNA HEALTHCARE OF CALIFORNIA,
15    INC.; LABORERS NATIONAL HEALTH
      WELFARE FUND; DELTA HEALTH
16    SYSTEMS; MULTIPLAN SERVICES
      CORPORATION; INTEGRATED HEALTH
17    PLAN, INC.; and DOES 1 through 20,
      inclusive,
18
                                   Defendants.
19

20          On May 17, 2012, Plaintiff Dr. Sanjay Ghosh filed a complaint in the Superior Court of the

21    State of California, County of San Diego, raising state law claims including the unauthorized use of

22    his name for commercial benefit, interference with contractual and economic relationships between

23    Plaintiff and his patients, and fraudulent and unfair business practices. (Dkt. 1, Ex. 3.) On June 25,

24    2012, Defendant Aetna Health of California ("Aetna") removed this action to federal court on the basis

25    of federal question jurisdiction, 28 U.S.C. § 1331, claiming that Plaintiff's claims are completely

26    preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001

27    *et seq.* because Plaintiff is actually seeking benefit payments as an assignee of ERISA-governed health

28    plans. (Dkt. 1.) On July 25, 2012, Plaintiff filed a motion to remand, explaining that his claims were

wholly based on state law and did not relate to plan terms between patient and insurers. Rather, Plaintiff asserts that his claims are based on Defendants' duty to him and that he could not have raised these claims under ERISA § 502(a)(1)(B) (Dkt. 13 at 7-14). Plaintiff also argues that Defendant Aetna Health of California, Inc.'s ("Aetna") motion for removal is defective because Aetna failed to obtain the consent of all defendants. (Dkt. 13 at 5.)

On August 15, 2012, Aetna filed an amendment to its notice of removal, claiming that Aetna had recently learned facts leading it to believe that complete diversity existed and that this court therefore had subject matter jurisdiction under 28 U.S.C. § 1332.[1] But on September 10, 2012, Defendant filed another amendment to its notice of removal withdrawing its assertion of complete diversity because it believed that Plaintiff had incorrectly asserted a claim against Defendant Delta Health Systems. Aetna instead believes that Plaintiff should have asserted a claim against Wm. Michael Stemler Incorporated (d/b/a Delta Health Systems), which is a California corporation.

For the reasons stated below, the motion for remand is GRANTED.

## I. BACKGROUND

Plaintiff is a California licensed physician and certified neurosurgeon who serves patients in San Diego County. Compl. ¶ 1. Plaintiff serves as both a shareholder and director for both Senta Clinic, Inc., a medical practice specializing in skull base surgery and neurological medical care, and SDNT San Diego Neurotrama Associates, Inc. ("SDNT"), which operates a medical practice specializing in providing emergency department and trauma coverage in skull base surgery and neurological medical care for hospital and health systems in San Diego County. (Dkt. 1, Compl. ¶ 25, 26.)

Defendants Aetna, Cigna Healthcare of California, Inc. ("CIGNA"), United Healthcare of California ("UHC"), Laborers National Health & Welfare Fund ("Laborers"), and Delta Health Systems ("Delta") (collectively "Insurers") provided medical insurance to one or more patients whose medical bills are presently at issue. Plaintiff has no current contractual relationship with any of the Insurers, but previously had contractual relationships with Aetna, Cigna, and UHC.

---

[1]     Aetna also stated that this amendment to the notice of removal was timely pursuant to 28 U.S.C. § 1446(b)(3).

1    Plaintiff terminated these contractual relationships on November 11, 2010, January 4, 2011, and

2    December 3, 2010 respectively. (Dkt. 1, Exs. 3B, 3C, 3D.)

3         Defendants Integrated Health Plan, Inc. ("IHP") and Defendant Multiplan Services

4    Corporation ("Multiplan") maintain a network of contracted physicians (often referred to as

5    "contracted providers") and "acquire the right to sell, lease, or transfer access to discount rates for

6    those physicians to insurers and other payors which are responsible for medical bill payments but

7    do not have a direct contractual relationship with the doctors or provider of medical services that

8    would allow them to take such a discount." (Dkt. 1, Ex. 3 at ¶ 10.) IHP is wholly owned by

9    Multiplan. (Dkt. 1, Ex. 3 at ¶ 9.) "IHP and Multiplan are the networks through which Aetna,

10   UHC, CIGNA, Laborers, and Delta claim to have a right to obtain a discount on the rates charged

11   by Dr. Ghosh for the medical services he provided to the patients whose medical bills are at issue

12   in this case." (Dkt. 1, Ex. 3 at ¶ 11.)

13        Plaintiff has never had a direct contractual relationship with Multiplan or IHP. (Dkt. 1,

14   Compl. ¶ 33.) Even though he never entered into a contract with Multiplan, Plaintiff also sent a

15   termination letter to Multiplan on November 3, 2008 because he became aware that Multiplan was

16   holding him out as a contracted provider. (Dkt. 1, Ex. 3 at ¶ 35;Dkt. 1, Ex. 3E.) After discovering

17   that Multiplan was still holding out Plaintiff as a contracted provider, Plaintiff sent Multiplan a

18   cease-and-desist letter on March 12, 2010. (Dkt. 1, Ex. 3F.) Plaintiff believes that Multiplan and

19   IHP are still holding Plaintiff out as a contracted provider. (Dkt. 1, Ex. 3 at ¶ 36.)

20        From late 2010 through early 2012, Plaintiff cared for various patients covered by the

21   Insurers. (Dkt. 1, Ex. 3A.) These patients each provided their medical insurance information and

22   acknowledged responsibility for paying any portion of their bill not covered by medical insurance.

23   (Dkt. 1, Ex. 3 at ¶ 28.) Following Plaintiff's provision of services to these patients, SDNT billed

24   the Insurers according to its usual and customary rates. (Dkt. 1, Ex. 3 at ¶ 29.) The Insurers,

25   however, only paid Plaintiff at discounted rates and refuse to pay the full amount due to Plaintiff

26   for the medical services he provided to his patients. The Insurers also informed Plaintiff's patients

27   that they owed Plaintiff nothing further for his service as he is a contracted provider. (Dkt. 1, Ex. 3

28   at ¶ 44.)

Plaintiff claims to have appealed the underpayment of these claims, repeatedly telling Insurers that he has no contractual relationship with them, Multiplan, or IHP.  However, these appeals and explanations have fallen on deaf ears.  (Dkt. 1, Ex. 3 at ¶ 43.)  Plaintiff also sought payment for the difference from his patients, who similarly refuse to pay the outstanding sums. (Dkt. 1, Ex. 3 at ¶ 45.)

Accordingly, Plaintiff has brought nine causes of action: (1) use of name or likeness (Cal. Civ. Code § 3344) against Defendants; (2) commercial appropriation (Cal. Civ. Code § 3294) against Aetna, Cigna, UHC, Laborers, Multiplan, and IHP; (3) inducing breach of contract against Defendants; (4) intentional interference with contractual relationships against Defendants; (5) intentional interference with prospective economic relations against Defendants; (6) negligent interference with prospective economic relations; (7) unfair business practices (Cal. Bus. & Prof. Code § 17200 *et seq.*) against Defendants; (8) declaratory relief regarding use of name and discounted services; and (9) tort of another (Cal. Bus. & Prof. Code § 17200 *et seq.*) against Multiplan and IHP.

## II.  ERISA PREEMPTION

### A.  Legal Standard

Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Supreme Court has long recognized that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues."  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citing Hopkins v. Walker, 244 U.S. 486, 490-491 (1917).  When a federal statute like ERISA completely preempts "the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)); Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944 (9th Cir. 2009) ("A party seeking removal based on federal question jurisdiction must show either that the state-law claims are completely preempted by § 502(a) of ERISA, or that some other basis exists for federal question jurisdiction.").  Section 502(a)(1)(B) claims are completely

preempted only if the state-law claim could have been brought "at some point in time" under § 502(a)(1)(B) and "there is no other independent legal duty that is implicated by the defendant's actions." Davila, 542 U.S. at 210. The Davila test is conjunctive, so both prongs must be met to constitute a finding of complete preemption. Id.

**B. Discussion**

Plaintiff seeks to remand his case to state court because his claims turn on the legal duties defendants owed to him rather than a dispute regarding plan terms between his patients and Insurers. Plaintiff states that he could not have brought his claim under ERISA § 502 (a)(1)(B), which permits civil actions to be brought by "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Plaintiff asserts that his claims are not completely preempted as he is not a participant or beneficiary of ERISA-governed health plans and is not asserting claims directly relating to those terms of those plans. (Dkt. 13 at 6-7).

Plaintiff relies on Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp. Inc., 187 F.3d 1045 (9th Cir. 1999), a case in which various medical providers who participated in the Blue Cross Prudent Buyer Plan accused Blue Cross of violating the agreed-upon fee schedule. The Ninth Circuit held that the medical providers' claims were not preempted by either ERISA § 502(a)(1)(B) because the dispute was "not over the *right* to payment, which might be said to depend on the patients' assignments to Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements." Id. at 1051.[2] Plaintiff contends that this case is about his relationship, or lack thereof, with the agreement provider, who should not be permitted to impose a provider agreement upon him unilaterally by misappropriating his name and misrepresenting that he is a contracted provider. Dkt. 13 at 9. Plaintiff's compensation should have been based on him

---

[2]    The Ninth Circuit also distinguished Blue Cross of Cal. from Misic v. Bldg. Serv. Emp. Health & Welfare Trust, 789 F.2d 1374 (9th Cir. 1986). In Misic, a dentist brought suit after insurance companies refused to pay 80 percent of his bill after rendering services and having his patients assign him their rights to reimbursement for those services. The court held that the dentist was preempted by § 502 (a) because he was the assignee of the beneficiary who sought recovery under the terms of his patients' benefit plans.

being an out-of-network provider rather than a contracted provider. As a result of these misappropriations and misrepresentations, Plaintiff asserts that he cannot recover from the agreement that his patients signed to pay the difference between his standard fees and the amount covered by the Insurers.

Plaintiff further notes that his civil suit resembles Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941 (9th Cir. 2009). In that case, Marin General Hospital ("Marin") sued Medical Benefits Administrators of MD, Inc. ("MBAMD") for breach of contract, negligent misrepresentation, quantum meruit, and estoppel for failing to cover 90 percent of a patient's medical expenses at Marin after MBAMD orally verified patient's coverage and authorized treatment. The Ninth Circuit held that Marin's claims were not completely preempted by ERISA § 502(a)(1)(B) under Davila's two prongs. Id. at 947, 949 (citing to Aetna Health Inc. v. Davila, 542 U.S. 200, 2010 (2004)). Although the original payment was made to Marin in "its capacity as an assignee of patient's rights under his ERISA plan . . . ," Marin was "seeking additional payment, in an amount necessary to bring the total payment up to 90% of its charges." Id. at 947. This legal duty for additional payment stemmed from an independent oral contract between Marin and MBAMD. Id. At 949-950. A defense of conflict preemption under ERISA §§ 502(a)(1)(B) and 514(a) is insufficient to grant a district court with subject matter jurisdiction. Id. at 945, 950.

Here, as in Marin, Plaintiff sought payment in addition to payment provided under the patients' ERISA plans, but Plaintiff asserts that he was prevented from recovering these funds because of Defendants' misappropriation of his name by holding him out as a contracted provider for the Insurers and Defendants' misrepresentations to his patients that he was a contracted provider who was only entitled to reimbursement according to those terms. Plaintiff is not acting as an assignee because he is not seeking to recover what he would have been entitled to under the relevant ERISA plans. Plaintiff instead seeks damages for Defendants' misappropriations, misrepresentations, and interference in his contractual relationship with his patients for claiming that he was a contracted provider rather than an out-of-network provider.

///

///

Defendants[3] allege that Plaintiff's claims, though "artfully" pled as state law claims, are actually preempted by ERISA. Defendants insist that Plaintiff meets the first <u>Davila</u> prong because he is an assignee of the ERISA plans' participants or beneficiaries and could therefore bring suit under § 502(a)(1)(B). Under ERISA, a "participant" is an "employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). An ERISA "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder" (e.g., a participant's spouse). 29 U.S.C. § 1002(8). An assignee of benefits due an ERISA participant or beneficiary has standing under § 502(a)(1)(B). <u>Misic</u>, 789 F.2d at 1379.

To support their claim that Plaintiff should have filed a § 502(a)(1)(B) claim, Defendants cite several cases allegedly demonstrating that "[c]ourts consistently hold state law tort, contract and statutory claims by participants or beneficiaries seeking benefits or to enforce rights under ERISA preempted by ERISA § 502(a)."[4] Aetna Opp. at 10. However, these cases concern direct beneficiaries seeking coverage under their ERISA plans who asserted other claims directly related to the ERISA plans. None of the non-ERISA claims are analogous to Defendants' alleged misappropriation of the Plaintiff's name, misrepresentations regarding Plaintiff's status as a contracted provider.

Defendants also insist that Plaintiff's "status as a provider does not change this result because [he] has standing to bring his claims under ERISA § 502(a)." Aetna Opp. at 10.

---

[3] Defendants Cigna, UHC, Laborers, Multiplan, and IHP have joined Aetna's opposition to Plaintiff's motion for remand. Accordingly, Aetna's arguments have been attributed to all Defendants in this order. Nevertheless, these statements should not be attributable to Delta, which has not filed any response to Plaintiff's motion to remand.

[4] <u>See, e.g.</u>, <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 64-67 (1987) (participant's state law tort and contract claims preempted by ERISA § 502(a)(1)(B)); <u>Elliot v. Fortis Benefits Ins. Co.</u>, 337 F.3d 1138, 1147 (9th Cir. 2003) (participant's cause of action under Montana's Unfair Trade Practices Act "which seeks non-ERISA damages for what are essentially claim processing causes of action . . . clearly falls under the Section 1132 preemption exemplified by <u>Pilot Life</u>."); <u>Kanne v. Conn. Gen. Life Ins. Co.</u>, 867 F.2d 489, 493-94 (9th Cir. 1988) (participant's claims for compensatory and punitive damages under California statutory laws prohibiting unfair insurance practices preempted by ERISA § 502).

Defendants are correct that Plaintiff's status as a provider does not necessarily change his standing under ERISA § 502(a)(1)(B). But this does not excuse the Defendants' failure to explain how these claims could have been asserted under ERISA § 502(a)(1)(B). A tangential relationship between Plaintiff's claims and patients' ERISA plans is insufficient to completely preempt Plaintiff's claims.

Defendants claim that Plaintiff's reliance on <u>Marin</u> and <u>Blue Cross</u> is misplaced because he had no express contract with the Defendants, as was the case in <u>Marin</u>, and he does not allege any express promises made by Defendants, as was the case in <u>Blue Cross</u>. But these small differences are immaterial. These claims are about Defendants' misappropriation of Plaintiff's name, misrepresentations regarding the Plaintiff's status as a contracted provider, how these misappropriations and misrepresentations negatively impacted his contractual and economic relationships with his patients, and his ability to recover the additional amount owed under his contract with his patients. These claims do not directly concern the patients' benefits under their respective plans, the enforcement of those plans' terms, or clarification of future benefits under those plans.

As the first <u>Davila</u> prong requiring that Plaintiff be able to assert his claims under ERISA was not met, Defendants have failed to show that Plaintiff's claims are completely preempted under ERISA. This court therefore does not have subject matter jurisdiction over this matter, so this case must be remanded to state court. This court need not address the second <u>Davila</u> prong.

**II. Removal Procedurally Defective**

A civil suit asserting federal claims may be removed to federal court under 28 U.S. § 1441(b). <u>Beneficial Nat'l Bank</u>, 539 U.S. at 8. When a civil suit is removed to federal court under 28 U.S.C. § 1441(b), "all defendants must join in a removal petition with the exception of nominal parties." <u>Hewitt v. Stanton</u>, 798 F.2d 1230, 1232 (9th Cir. 1986) (citing 28 U.S.C. § 1441(b) ("[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action.")). A removing defendant bears the burden of explaining the absence of any other defendants. <u>Prize Frize, Inc. v. Matrix (U.S.) Inc.</u>, 167 F.3d 1261, 1266 (9th Cir.1999)

Order Granting Motion to Remand, 3:12-CV-1558-JM (BGS)

("Section 1446 requires all proper defendants to join or consent to the removal notice.") (citing Parrino v. FHP, Inc., 146 F.3d 699, 703 (9th Cir. 1998).

Plaintiff argues that Aetna's removal is defective because "Delta was timely served under state law prior to the removal of this case to federal court . . . [but] has not joined in the removal of this action to federal court." (Dkt. 13 at 5.) Delta has filed nothing with this court, including any opposition to this motion to remand or statement joining Aetna's opposition to this motion. Aetna, however, has asserted in its second amendment to its notice of removal that Plaintiff incorrectly filed a claim against Defendant Delta Health Systems when he should have asserted a claim against Wm. Michael Stemler Incorporated (d/b/a Delta Health Systems). (Dkt. 29 at 1.) Defendants have therefore explained the lack of response, and removal is not defective under 28 U.S.C. § 1441(b)

## IV. CONCLUSION

Accordingly, the matter is hereby **REMANDED** to state court for lack of subject matter jurisdiction. The Clerk of Court is instructed to close the case file.

**IT IS SO ORDERED.**

DATED: October 2, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge

# EXHIBIT F

**O**
**JS-6**

cc: order, docket and remand letter
to LASC

# United States District Court
# Central District of California

| | |
|---|---|
| TEMPLE HOSPITAL CORPORATION, INC., | Case No. 2:14-cv-01342-ODW(JEMx) |
| Plaintiff, | **ORDER REMANDING CASE FOR LACK OF SUBJECT-MATTER JURISDICTION** |
| v. | |
| ORALIA GOMEZ; UNITED HEALTHCARE SERVICES, INC.; DOES 1–50, | |
| Defendants. | |

On February 21, 2014, Defendant United HealthCare Services, Inc. removed this action to this Court, ostensibly invoking federal subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1441(a). Plaintiff Temple Hospital Corporation, Inc. brings only state-law, breach-of-contract claims against Defendants. But United argues that this action really arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") via the complete-preemption doctrine. The Court ordered United to show cause why it should not remand the case for lack of subject-matter jurisdiction, as this action is virtually identical to the Ninth Circuit's decision in *Marin General Hospital v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009). After reviewing the case law cited by United in its response, the Court finds

1    that it lacks jurisdiction and consequently **REMANDS** this action to Los Angeles
2    County Superior Court, case number BC533761.

3         Federal courts are courts of limited jurisdiction, having subject-matter
4    jurisdiction only over matters authorized by the Constitution and Congress.   U.S.
5    Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.
6    375, 377 (1994).  A defendant may remove a suit filed in state court only if the federal
7    court would have had original jurisdiction over the case.  28 U.S.C. § 1441(a).  But
8    courts strictly construe the removal statute against removal jurisdiction, and federal
9    jurisdiction "must be rejected if there is any doubt as to the right of removal in the
10   first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The party
11   seeking removal bears the burden of establishing federal jurisdiction.  *Durham v.*
12   *Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus*, 980 F.2d at
13   566).   A party may bring a remand motion whenever it appears a matter is not
14   properly before a federal court.  28 U.S.C. § 1447(c).

15        Generally, the well-pleaded-complaint rule governs whether a case is
16   removable.  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for*
17   *S. Cal.*, 463 U.S. 1, 27–28 (1983).  Under this rule, "it is now settled law that a case
18   may *not* be removed to federal court on the basis of a federal defense, including the
19   defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint,
20   and even if both parties concede that the federal defense is the only question truly at
21   issue."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

22        A narrow exception to the well-pleaded-complaint rule exists: the complete-
23   preemption doctrine.   *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003);
24   *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993).  This doctrine only
25   applies in a narrow class of cases in which the preemptive force of federal law is so
26   "extraordinary" that federal law transmutes state common-law claims into federal
27   ones.   *Id.*   The United States Supreme Court expounded the test for complete
28   preemption: "Does the [federal provision] provide the exclusive cause of action

for . . . claims against [defendants]?  If so, then the cause of action necessarily arises under federal law and the case is removable.  If not, then the complaint does not arise under federal law and is not removable."  *Beneficial Nat'l Bank*, 539 U.S. at 9.

The United States Supreme Court has held that the complete-preemption doctrine applies in some ERISA contexts.  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67 (1987) (holding for the first time that the doctrine applies to suits brought under ERISA § 501(a), 29 U.S.C. § 1132(a)).  The Supreme Court subsequently expounded a two-pronged test to determine when ERISA complete preemption applies: "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

The Ninth Circuit applied the *Davila* test to a case virtually identical to this action.  In *Marin General*, a hospital, seeking to confirm a patient's health-insurance coverage, received oral confirmation of coverage from a benefits administrator.  581 F.3d at 943.  The hospital then performed lumbar surgery on the patient.  *Id.*  But the benefits administrator only paid for a portion of the surgery, contending that the hospital was not entitled to any additional amount.  *Id.*  The hospital consequently filed suit against, among others, the benefits administrator, alleging breach of oral contract and related claims.  *Id.* at 944.

Reviewing the district court's dismissal, the Ninth Circuit applied the *Davila* test to determine whether complete preemption applied.  The court concluded that it did not.  First, the Ninth Circuit held that the hospital was not suing as an assignee of an ERISA plan participant or beneficiary, because any obligation to pay additional money stemmed from the alleged oral contract.  *Id.* at 948.  Second, state contract law provided the duty at issue—not ERISA.  *Id.* at 949–50.  That duty was therefore independent of ERISA and did not provide a basis for complete preemption.  *Id.*

This action is nearly identical to *Marin General*.  Temple Hospital alleges that United authorized Defendant Oralia Gomez's lumbar surgery.  (Compl. ¶ 9.)  United allegedly told Temple Hospital that it would cover the surgery as long as the hospital confirmed the surgery five business days in advance.  (*Id.* ¶ 11.)  Temple Hospital verified the authorization twice.  (*Id.*)  Several weeks later, United refused to pay any portion of Gomez's surgery because Gomez's health insurance had been terminated.  (*Id.* ¶ 16.)  Temple Hospital subsequently filed this action against United for breach of contract, promissory estoppel, and implied equitable indemnity.  (Not. of Removal Ex. A.)

There is no indication in Temple Hospital's Complaint that United was an assignee of Gomez's ERISA plan benefits.  Rather, Plaintiff alleges that United either breached an oral contract with Temple Hospital or it should be estopped from denying that it promised to pay for the surgery.  These duties do not arise out of ERISA; instead, they sound wholly in state law.

In its response to the Court's Order to Show Cause, United relies heavily on the *Turnbow v. Tall Tree Administrators LLC*, No. 2:09-cv-02288-MCE-EFB (E.D. Cal. 2009).  But that reliance is misplaced.  In *Turnbow*, the court confronted a situation factually similar to Temple Hospital's action: a plan administrator refused to pay for a patient's surgery after orally approving it.  *Id.* at *1.  The plaintiff—the patient who received the surgery—filed suit against the administrator seeking to force payment for the benefit of the hospital.  *Id.*  The plan administrator filed a motion to dismiss for failure to state a claim.  *Id.* at *1–2.  The court applied the *Davila* test and found that the patient failed to adequately plead the existence of an oral contract and that she lacked standing as a putative third-party beneficiary to enforce the alleged administrator-hospital contract and circumvent ERISA preemption.  *Id.* at *3–4.

But this case is legally distinguishable.  Here, Temple Hospital seeks to enforce the alleged oral contract between itself and the plan administrator, which the patient is not suing herself.  That postural difference bears directly upon the first *Davila* prong,

namely, whether the plaintiff could have brought its claim under ERISA § 501(a) to enforce its plan benefits.  Temple Hospital is not a beneficiary under Gomez's ERISA plan; rather, the hospital at most benefited from an oral contract with United.

It is also premature for the Court to opine on the adequacy of Plaintiff's Complaint.  In *Turnbow*, the plan administrator filed a Rule 12(b)(6) motion, thus necessitating that the court address the sufficiency of the plaintiff's complaint.  But here, the Court is assessing subject-matter jurisdiction—a matter separate, though related, to the sufficiency of Temple Hospital's factual allegations.  Whether Plaintiff has fully articulated each element of its claims does not change the fact that Temple Hospital is suing United for breach of contract.  The duty to perform under a contract is a matter entirely distinct from the ERISA morass.

The Court finds that ERISA does not completely preempt Temple Hospital's claims such that the Court would have subject-matter jurisdiction over them.  The Court consequently finds that it lacks jurisdiction and **REMANDS** this case to Los Angeles County Superior Court, case number BC533761.  The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

March 11, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT G

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al.,<br><br>       Plaintiff,<br><br>vs.<br><br>UNITED BEHAVIORAL HEALTH, a California corporation, et al.,<br><br>       Defendants. | **Case No.: CGC-19-580534**<br><br>**NOTICE OF PLAINTIFF BRISTOL SL HOLDINGS MOTION TO COMPEL DISCOVERY- PRODUCTION OF DOCUMENTS AND DEPOSITIONS**<br><br>Date:   December 3, 2020<br>Time:  9:00 a.m.<br>Judge: Hon. Ethan P. Schulman<br>Dept:  301 |

**TO DEFENDANT UNITED BEHAVIORAL HEALTH AND ITS ATTORNEYS OF RECORD HEREIN:**

YOU ARE HEREBY NOTIFIED THAT on December 3, 2020 at 9:00 a.m., or as soon thereafter as the matter can be heard, in Department 301 of this Court, located at 400 McAllister Street , San Francisco, CA 94102, Plaintiff Bristol SL Holdings will bring a motion pursuant to Code

of Civil Procedure sections 2031.310 and 2025.450 to compel production of documents and depositions of most qualified employees/agents of Defendant United.

This motion is made pursuant to Code of Civil Procedure sections 2031.310 and 2025.450, and related provisions, and will be based upon this Notice, the Points and Authorities submitted herewith, the Declarations of Matthew Lavin and John Tower in support submitted herewith, the separate statement of discovery requests in dispute submitted herewith, any matters of which the Court may take judicial notice and upon the Court's file and any other matters that may be presented at oral argument.

Dated:  November 4, 2020

NAPOLI SHKOLNIK PLLC

_____
MATTHEW M. LAVIN

LAW OFFICE OF JOHN W. TOWER

_____
JOHN W. TOWER

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

1  Matthew M. Lavin, Esq. (*pro hac vice*)
2  NAPOLI SHKOLNIK PLLC
   5757 W. Century Boulevard, Suite 680
3  Los Angeles, CA 90045
   (212) 397-1000 / Fax (646) 843-7603
4
5  John W. Tower, Esq. (SBN 106425)
   LAW OFFICE OF JOHN W. TOWER
6  2211 Encinitas Blvd., 2nd Floor
   Encinitas, CA 92024
7  (760) 436-5589 / Fax (760) 479-0570
8  Attorneys for Plaintiff
9  Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
**BY: EDNALEEN ALEGRE**
Deputy Clerk

10

11        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12            **FOR THE COUNTY OF SAN FRANCISCO**

13

14  BRISTOL SL HOLDINGS, INC., et al.,      ) **Case No.: CGC-19-580534**
                                            )
15              Plaintiff,                  ) **MEMORANDUM OF POINTS AND**
                                            ) **AUTHORITIES OF PLAINTIFF BRISTOL**
16        vs.                               ) **SL HOLDINGS IN SUPPORT OF**
                                            ) **MOTION TO COMPEL PRODUCTION**
17  UNITED BEHAVIORAL HEALTH, a             ) **OF DOCUMENTS AND DEPOSITIONS**
    California corporation, et al.,         )
18                                          )
                Defendants.                 )
19                                          ) Date:   December 3, 2020
                                            ) Time:   9:00 a.m.
20                                          ) Judge:  Hon. Ethan P. Schulman
                                            ) Dept:   301
21                                          )
                                            )
22  _____)

23

24

25

26

27

28

## **INTRODUCTORY STATEMENT.**

This is an action is to hold United Behavioral Health ("United") accountable for 3,339 days of unreimbursed healthcare services that it promised to pay for but has not. As a result of United's failure to pay, the addiction treatment providers who rendered these healthcare services were forced to close their doors – amid a national addiction and mental health crisis. This lawsuit is about United's repeated promises to pay for services and its failure to do so, 3,339 times in a row. Plaintiff, Bristol SL Holdings, Inc. ("Bristol") is the successor in interest to a network of now-bankrupt substance abuse treatment centers (the "Providers"). The Providers filed for Chapter 11 bankruptcy protection in 2017 (*In Re: Solid Landings Behavioral Health, Inc.*, Case No.: 8:17-bk-12213-CB, the "Bankruptcy"). The stipulated judgment in that matter adjudges that Bristol is the rightful owner of these claims.

Bristol brings this lawsuit against United for failing to pay more than $7 million dollars for services which were agreed to and authorized. Bristol was created by agreement of the parties to the Bankruptcy for the purpose of bringing these claims and collecting payment for the 3,339 days of unreimbursed treatment rendered to 124 patients with United insurance. Bristol acquired all rights to collection, including the right to bring suit, for the benefit of the creditors and the trustee of the Bankruptcy estate, and adjudged as such in the Bankruptcy proceeding.

United has not paid the claims at issue in this litigation and has not provided an explanation for the nonpayment. This refusal predates and is largely responsible for the *Solid Landings* insolvency and bankruptcy. Instead of paying valid, medically necessary and authorized claims, United put the claims into an "audit" status and requested additional information from the Providers. The Providers dutifully provided the information to United in connection with the audit. Then, after a significant time frame in which United had not paid or provided an explanation for nonpayment, it became apparent that United was not going to make payment or give an explanation. This lawsuit followed.

The patients and claims at issue in this case are specifically identified in the complaint. These claims arise from services performed by the substance use disorder treatment Providers who were out of network providers to United. The parties are in the discovery phase of this case. Plaintiff has

produced thousands of pages of documents for the patients/claims at issue in this lawsuit which include notes by the Providers regarding the verification of benefit and authorization phone calls to United and the documentation provided in response to United's pre-suit audit requests.

On March 17, 2020 Plaintiff served their first set of requests for production of documents document requesting documents from United relating to procedures, documentation, notation, and recordings of the verification of benefit, authorization and other calls/communications between the Providers and United, but United has refused to provide such documents despite promising to do so for months.

Plaintiff also served a person most qualified deposition notice on United on March 17, 2020 on subjects including United's basis for not paying the claims and is internal investigation into the Providers and claims at issue in this case. Despite being appropriate and relevant requests, United objected to most of the subjects in the notice indicating that they refused to produce witnesses for them. As to a few other requests, United represented that it would provide witnesses for deposition; however, after months of repeated inquiries and requests for the unobjected to depositions, United has still not produced one witness or provided any valid reason for its failure to do so.

## SUMMARY OF ARGUMENT

As out-of-network facilities, the Providers were careful to take appropriate steps to ensure they, and their patients, had accurate information regarding insurance coverage status, payment rates, and proper authorizations for the treatment services that were performed and are at issue in this lawsuit. The first step is the verification of benefit process (VOB) where the Providers called United at phone numbers provided by United to confirm that insurance coverage was in place for each patient and to confirm the payment rate for each plan/patient. For each claim at issue, United did so. The next step in the process is to obtain authorization form United to perform the specific treatment services requested. Authorizations were obtained for all of the claims at issue. Once that was done the services at were performed.

The contract, fraud and other operative causes of action of the complaint allege and are predicated on these VOB and authorization communications. United disputes that these VOB and authorization communications create contracts, constitute actionable misrepresentations, or give rise

to any other cause of action. Bristol's position is that these communications do support and give rise to the causes of action asserted. There is no doubt these communications are discoverable and central to this case.

All relevant benefits and coverage were verified, and all services and rates of payment were directly authorized and confirmed by United during this rigorous intake process. During the intake process, the parties agreed to a specific rate of payment with the Provider. As out-of-network Providers, they justifiably relied on United's representations, promises to pay, and prior course of dealing when they rendered services in good faith to patients. The Providers would not have admitted these patients or continued to provide treatment to them had this not been the case.

The facts are straightforward. United verified coverage and benefits, stated the rate of payment, and authorized treatment. The Providers agreed to the rate of payment and treated the patients. They expended considerable resources doing so in reliance upon United's promises made to them.

United admits that it records and otherwise documents the VOB and authorization calls. Nevertheless, it has not produced recordings, transcripts, notes, or any other documentation of these calls. In United's responses, they do not deny that they have access to all of this material; however, they have only offered to produce a representative sample, something they have yet to do. By contrast, when United put the claims at issue under an audit, the Providers' did not offer and were not given the option to produce a 'representative sample' of the material requested; instead, the produced documents for the individual claims.

Bristol is entitled to all of the call recordings and any other related documents, not just a sampling, as each and every claim is at issue. United also suggests it produced notes of VOB recordings in documents it has produced; however, Bristol cannot find them in anything produced by United and United has not identified which of the records it produced it is referring to.

United's obstruction in discovery is simply a continuation of the same pattern of improper behavior that they have engaged in over the past several years as to these claims. The difference being that now that litigation has commenced this Court has the ability to put a stop to United's continued stonewalling and Bristol respectfully requests that it do so.

# ARGUMENT

**A    Good Cause Exists for the Court to Compel Production of Documents**

As to the document requests that United has not complied with, this motion is made pursuant to California Code of Civil Procedure section 2031.310 which provides in relevant part:

> (a)    On receipt of a response to a demand for inspection, copying, testing, or sampling, the demanding party may move for an order compelling further response to the demand if the demanding party deems that any of the following apply:
> (1)    A statement of compliance with the demand is incomplete.
> (2)    A representation of inability to comply is inadequate, incomplete, or evasive.
> (3)    An objection in the response is without merit or too general.
>
> (b)    A motion under subdivision (a) shall comply with each of the following:
> (1)    The motion shall set forth specific facts showing good cause justifying the discovery sought by the demand…

The VOB and authorization calls and communications between the Providers and United form the basis for breach of contract, fraud and related operative causes of action in this action. There are triable issues of fact with regard to these causes of action. This was clearly stated when the Court overruled United's demurrer to the contract causes of action in the complaint, stating, in relevant part:

> The demurrers to the breach of contract claims are overruled. Defendant argues that an insurer's verification of coverage cannot constitute a contract. (See *Regents of University of California v. Principal Financial Group* (N.D. Cal. 2006) 412 F.Supp.2d 1037; *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co. Inc.* (C.D. Cal. 2007) 520 F.Supp.2d 1184.) <u>However, defendant relies on summary judgment cases and factual issues remain regarding whether a contract was formed.</u> (See *Regents of University of California v. Principal Financial Group* (N.D. Cal. 2006) 412 F.Supp.2d 1037, 1044 [triable issue of fact whether insurer's verification and other conduct created agreement]; see also *California Spine and Neurosurgery Institute v. United Healthcare Services, Inc.*, 2018 WL 6074567 (C.D. Cal. June 28, 2018), at *4-*5 [denying motion to dismiss breach of contract and promissory estoppel claims by out-of-network health care provider against managed health care corporation where, as here, "[t]he facts alleged include specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's [Max

Out Of Pocket] expense was met, and 100% of the UCR rate afterwards."].) (Emphasis Added)

United has admitted that it recorded the calls as well as documenting them in its internal systems. Authorization calls even include an authorization number that specifically links the treatment authorized to the claims that were submitted and remain unpaid.

United's own response indicates that it has recordings Bristol seeks but it only offers to produce "administrative records for a selected sample of the claims, which would contain documents responsive to this Request."

Bristol is not sure what the administrative record means in this context or even why the administrative record should be relevant as these claims are brought pursuant to state law claims, not ERISA. *See, for example, M v. United Behavioral Health*, No. 218CV00808HCNDAO, 2020 WL 5107634, at *2 (D. Utah Aug. 31, 2020) (Finding Parity Act claim distinct from ERISA claim and discovery not limited to administrative record and necessary under the Parity Act). Further, when plan terms are not at issue, as is the case here, even in ERISA cases discovery is permissible that goes beyond the administrative record. *See Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 435 (N.D. Cal. 2014).

United has not even provided any records of the verification benefit calls or authorization calls in the documents they produced. Bristol is entitled to the recordings of these calls as they are relevant and reasonably calculated to lead to admissible evidence as to the formation of a contract and the promises made by United to the Providers.

Bristol has provided United with the information it needs to retrieve those calls, including the numbers called by the Providers, the dates of the call, and the authorization numbers. United has produced call recordings in other cases (Please see declaration of John W. Tower in support of motion to compel, paragraph), so it clearly has the ability to do so.

Bristol has produced volumes of documents including the medical records file for each of the patients with claims at issue in this case. Those records include notes summarizing authorization calls for each patient which typically provide the date of the call, authorization number and/or name of the United representative (to the extent given) Similarly, the records produced by Bristol for each patient

include notes from the verification of benefit calls which include the date, phone numbers and other information. This information, contained in the documents produced by Bristol long ago, equip United with the information in needs to retrieve those call recordings, something it has not done to date.

**B.    Good cause exists for the Court to Compel Deposition(s)**

As to the deposition notice that United has ignored, this motion is made pursuant to California Code of Civil Procedure section 2025.450 which provides in relevant part:

(a)    If, after service of a deposition notice, a party to the action or an officer, director, managing agent, or employee of a party, or a person designated by an organization that is a party under Section 2025.230, without having served a valid objection under Section 2025.410, fails to appear for examination, or to proceed with it, or to produce for inspection any document, electronically stored information, or tangible thing described in the deposition notice, the party giving the notice may move for an order compelling the deponent's attendance and testimony, and the production for inspection of any document, electronically stored information, or tangible thing described in the deposition notice.

(b)    A motion under subdivision (a) shall comply with both of the following:

(1) The motion shall set forth specific facts showing good cause justifying the production for inspection of any document, electronically stored information, or tangible thing described in the deposition notice.

(2) The motion shall be accompanied by a meet and confer declaration under Section 2016.040, or, when the deponent fails to attend the deposition and produce the documents, electronically stored information, or things described in the deposition notice, by a declaration stating that the petitioner has contacted the deponent to inquire about the nonappearance…"

In this case the Providers were all out of network Providers to United.

Bristol  has made it clear it wants to take the depositions and, also, that under the circumstances remote, video depositions are preferable.

The Providers were out of network Providers to United. United has not paid any of the claims at issue in this litigation and has not provided an explanation for the nonpayment. Instead, it put the claims into an "audit" status and requested additional information which the Providers sent to United in connection with the audit. Then, after a significant time frame in which United had not paid or provided an explanation for nonpayment, it became apparent that United was not going to make payment or give an explanation. This lawsuit followed.

As to the subjects that United agreed to produce a witness for, subject 11 asks for the most qualified witness for United's investigations into the claims or Providers, 15 for United's Network Integrity and/or in house legal role/activities regarding the claims and 10, 17 and 22 ask witnesses most qualified as procedures regarding verification of benefit, authorization and claim processing procedures. Although these are clearly relevant material areas of inquiry to which United agreed to produce witnesses, it has refused to produce any witnesses to date.

The refusal to agree to produce a witness on subject 29 is particularly disturbing as that item requests witness most qualified to testify regarding United's affirmative defenses. In this regard, United has denied liability and asserted numerous affirmative defenses, including a setoff claim in its first affirmative defense, predicated on allegations of fraudulent claims and other malfeasance by the Providers. As the Third District Court of appeal put it, "[a] party cannot intelligently defend itself against affirmative defenses or damage claims when the other side's discovery responses consist of legal double-talk and provide no useful information." *Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1105.

## CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests this court enter an order compelling United to respond to the document requests and produce witnesses for deposition.

Dated: November 4, 2020

**NAPOLI SHKOLNIK, PLLC**

Matthew M. Lavin

**LAW OFFICE OF JOHN W. TOWER**

John W. Tower

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al.,<br><br>    Plaintiff,<br> vs.<br><br>UNITED BEHAVIORAL HEALTH, a California corporation, et al.,<br><br>    Defendants. | Case No.: CGC-19-580534<br><br>**PLAINTIFF BRISTOL SL HOLDINGS INC'S SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITIONS**<br><br>Date: December 3, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. Ethan P. Schulman<br>Dept: 301 |

   Plaintiff Bristol SL Holdings submits the following Separate Statement of discovery requests in dispute in Support of its Motion to Compel Production of Documents and Depositions:

**STATEMENT REGARDING DOCUMENT REQUESTS IN DISPUTE:**

**REQUEST NO. 5**

   Any and all manuals and/or guidelines in effect from January 2015 to the present that in any way relate to the administration and/or management of the subject plans and/or policies and

procedures for claims for substance abuse treatment including but not limited to plan formation, plan administration, plan management, verification of benefit procedures, pre-authorization procedures, telephone conversation procedures, telephone conversation recording procedures, telephone conversation transcription procedures, telephone conversation notation/documentation procedures, telephone conversation recording/transcript retention procedures, utilization review, claim payments, claim payment calculations, claim handling, appeals and any other writings and/or recordings as defined in California Evidence Code section 250 regarding or referring to any such procedures and/or guidelines.

## RESPONSE TO REQUEST NO. 5

*Vague and Ambiguous Terms:* United objects that the terms "manuals," "guidelines," "policies," and "procedure" are vague, ambiguous, and open to broad interpretation.

*Seeks Documents Regarding ERISA Claim for Benefits.* United objects to this Request as not reasonably calculated to lead to the discovery of admissible evidence, overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking documents or information not relevant to the claims in the this case because it seeks information to support a claim for benefits and Bristol has expressly decided to pursue claims that are not reliant upon the patient's health care plans. Bristol is not asserting a claim for recovery of benefits, has argued that the claims are not governed by ERISA, and therefore does not need the requested documents to support a claim for benefits. Instead, the scope of Bristol's discovery should be limited to evidence to support the allegations in Bristol's Complaint.

*Overbroad and Unduly Burdensome – Seeks Irrelevant Documents.* United objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking documents or information not relevant to the claims or defenses in the this case because it seeks all "manuals and/or guidelines" and related documents relating to administration and/or management of the subject plans and/or policies and procedures for claims for substance abuse treatment. Discovery into each version of United's policies and procedures for a five-year period would be especially onerous, given that many of the policies at issue would be unrelated to the kinds of conduct that Bristol alleges in the Amended Complaint.

*Response.* Based on the foregoing objections, United does not agree to search for and produce documents in response to this Request as written. United invites a meet and confer conference with Bristol to discuss a reasonable narrowing of this Request that is proportionate to the needs of the case and limited to documents that are relevant to Bristol's claims.

## REASONS FOR PRODUCTION OF DOCUMENTS-REQUEST NO. 5

One of the key issues in this case is whether the verification of benefit and authorization calls formed contracts or constituted fraudulent misrepresentations. Any manuals or procedure guidelines regarding those, and other, communications between the providers and United are potentially relevant to those issues. For example, they may discuss the purpose meaning or significance of these types of calls as well as appropriate procedures for United Employees to follow. Certainly, United knows that out of network providers must rely on these calls to determine coverage, payment rate and authorization for services, all of which are important material issues in this case.

## REQUEST NO. 8

Any and all recordings of any telephone conversations between Sure Haven, Inc. and/or Cedar Creek Recovery, Inc. and Defendant regarding or referring to the patients/insureds whose claims are at issue herein including but not limited to verification of benefit calls, authorization calls and all conversations before, during and after treatment.

## RESPONSE TO REQUEST NO. 8

*Overbroad and Unduly Burdensome – Seeks Irrelevant Communications.* United objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking documents or information not relevant to the claims or defenses in the this case because it seeks "any and all" recordings of telephone conversations between United and Sure Haven or Cedar Creek regarding any patient identified in the complaint, without regard to whether those communications relate to the conduct alleged in the complaint. Moreover, United objects to this Request as it is unlimited in time.

*Overbroad and Unduly Burdensome – Oppressive Search.* United further objects that it would be particularly burdensome to search for recordings of telephone calls or other oral conversations relating to the claims at issue. Call recordings are not organized by member or provider, and there is no way to search the call recordings by member or provider. They are organized by customer service representative.

In order to locate a particular call in the call recordings, the particular customer service representative handling the call would need to be identified along with the date and time of the particular call and the phone number making the call. It is then a manual process to search through the call recordings for the particular call. For over 100 patients, there are likely thousands of calls that would each need to be identified and then need to be manually searched for, which would require hundreds of hours of work. Many of these calls likely would not relate to the claims or issues in dispute in this case. To determine if any call recordings relating to any of the members at issue in the claims at issue even exist, United has to take the following steps: (1) search the claim records for each member to generate a log of any calls received for such member; (2) review each entry, which largely consists of codes entered by the customer service representative who took the call, to determine the identity of the caller; and (3) if the caller was either Bristol or the member, then determine if the call relates to any of the claims at issue, which may not always be clear based on the records. If a search of these records indicates the existence of any calls relevant to the claims at issue, United would then have to manually search its systems to locate and obtain any call recordings. This process would be unduly burdensome and oppressive given the amount of time and expense required to complete it.

Further, the information to be obtained would be of limited probative value. During calls that a provider or representative make to verify patients' benefits, the patient's available benefits are discussed in general terms, but generally no authorization is provided for any specific services or tests, nor is any specific amount or type of payment discussed. United's customer service representatives do not quote a specific amount of benefits to be paid, but may quote plan language regarding reimbursement for out-of-network services under the terms of a member's plan. Thus the potential probative value of any telephone call recordings is outweighed by the burden of obtaining them.

***Bristol Has Equal Access to Information.*** United further objects to this Request to the extent Bristol has equal or greater access to this information, and requiring United to conduct an expensive and time-consuming document collection and review would be needlessly burdensome given Bristol's access.

***Response.*** Subject to the foregoing objections, United responds as follows: United agrees to meet and confer with Bristol regarding the production of administrative records for a selected sample of the

claims, which would contain documents responsive to this Request. For instance, the administrative record would include BH Case Notes for the patient for the pertinent dates of service, and contain notations regarding provider communications and requests for authorization of treatment or verification of benefits. In addition, United is willing to meet and confer with Bristol regarding the potential production of recordings for the selected sample of claims.

## REASONS FOR PRODUCTION OF DOCUMENTS- REQUEST NO. 8

United records the verification of benefit calls. It also documents authorization calls and typically provides an authorization number. United's response indicates it has recordings, but it only offers to produce "administrative records for a selected sample of the claims, which would contain documents responsive to this Request." Bristol is not sure what the administrative record means in this context. There are not any records of the verification benefit calls in the documents United has produced. Bristol has made it clear that it wants the recordings of the verification benefit calls and has provided United with the information it needs to retrieve those calls. United has produced verification of benefit call recordings in other cases (Please see declaration of John W. Tower in support of motion to compel, paragraph), so it clearly has the ability to do so.

Bristol has produced volumes of documents including the medical records file for each of the patients with claims at issue in this case. Those records include notes summarizing authorization calls for each patient which typically provide the date of the call, authorization number and/or name of the United representative (to the extent given) Similarly, the records produced by Bristol for each patient include notes from the verification of benefit calls which include the date, phone numbers and other information. This information, contained in the documents produced by Bristol long ago, equip United with the information in needs to retrieve those call recordings, something it has not done to date.

## REQUEST NO. 9

Any and all transcripts of any telephone conversations between Sure Haven, Inc. and/or Cedar Creek Recovery, Inc. and Defendant regarding or referring to the patients/insureds whose claims are at issue herein including but not limited to verification of benefit calls, authorization calls and all conversations before, during and after treatment.

## RESPONSE TO REQUEST NO. 9

*Duplicative.* United objects to this Request as duplicative of Document Request No. 8. Document Request No. 8 requests "recordings of any telephone conversation between Sure Haven, Inc. and/or Cedar Creek Recovery, Inc. and Defendant," while this Request seeks "transcripts" of the same telephone conversations. Any transcripts of these telephone conversations would be the functional equivalent of any recordings.

*Overbroad and Unduly Burdensome – Seeks Irrelevant Information.* United reincorporates its "*Overbroad and Unduly Burdensome – Seeks Irrelevant Information*" objection set forth in its Response to Document Request No. 8. That objection applies with equal force to transcripts of telephone conversations.

*Overbroad and Unduly Burdensome – Oppressive Search.* United reincorporates its "*Overbroad and Unduly Burdensome – Oppressive Search*" objection set forth in its Response to Document Request No. 8. That objection applies with equal force to transcripts of telephone conversations.

*Response.* Subject to the foregoing objections, United responds as follows: Based on a reasonable and good faith search, United is unaware of the existence of any transcripts of telephone conversations responsive to this Request. However, United agrees to meet and confer with Bristol regarding the potential production of recordings for the selection of sample patients as outlined above in its Response to Document Request No. 8.

## REASONS FOR PRODUCTION OF DOCUMENTS- REQUEST NO. 9

Please see discussion regarding request 8 directly above. This response is interesting because although it denies the existence of transcripts related to verification of benefit calls, it confirms that recordings of such calls exist. Even though such recordings exist, United has refused to produce any.

## REQUEST NO. 10

Any and all notes regarding any telephone conversations between Sure Haven, Inc. and/or Cedar Creek Recovery, Inc. and Defendant regarding or referring to the patients/insureds whose claims are at issue herein including but not limited to verification of benefit calls, authorization calls and all conversations before, during and after treatment.

**RESPONSE TO REQUEST NO. 10**

*Overbroad and Unduly Burdensome – Seeks Irrelevant Information.* United reincorporates its "*Overbroad and Unduly Burdensome – Seeks Irrelevant Information*" objection set forth in its Response to Document Request No. 8. That objection applies with equal force to notes of telephone conversations.

*Overbroad and Unduly Burdensome – Oppressive Search.* United reincorporates its "*Overbroad and Unduly Burdensome – Oppressive Search*" objection set forth in its Response to Document Request No. 8. That objection applies with equal force to notes of telephone conversations.

*Response.* Subject to and without waiving the foregoing objections, United agrees to meet and confer with Bristol regarding production of administrative records for a selected sample of claims. The administrative record would include BH Case Notes for the patient for the pertinent dates of service, and contain notations regarding provider communications and requests for authorization of treatment or verification of benefits.

**REASONS FOR PRODUCTION OF DOCUMENTS- REQUEST NO. 10**

Please see discussion regarding request 8 above. This response suggests notes related to verification of benefit calls are in records it has produced; however, it has not identified where those documents are.

**REQUEST NO. 7**

Any and all writings and/or recordings as defined in California Evidence Code section 250 regarding or referring to oral communications between Defendant and/or any of its agents or employees on the one hand and Sure Haven, Inc. and/or Cedar Creek Recovery, Inc. on the other hand regarding or referring to any of the patients/insureds whose claims are at issue herein.

**RESPONSE TO REQUEST NO. 7**

*Vague and Ambiguous Terms.* United objects to the phrase "Sure Haven, Inc. and/or Cedar Creek Recovery, Inc." as vague and ambiguous, since United does not know the identity of all of Sure Haven, Inc.'s ("Sure Haven") or Cedar Creek Recovery, Inc.'s ("Cedar Creek") representatives.

*Overbroad and Unduly Burdensome – Seeks Irrelevant Documents and Communications.* United objects to this Request as overly broad, unduly burdensome, disproportionate to the needs of the

case, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks "all writings and/or recordings" reflecting "all oral communications" between United and Sure Haven or Cedar Creek regarding the patients at issue, many of which will not be relevant to any claims at issue in this case. Moreover, this Request does not include any time limitation.

***Overbroad and Unduly Burdensome – Oppressive Search.*** United reincorporates its "*Overbroad and Unduly Burdensome – Oppressive Search*" objection set forth in its Response to Document Request No. 1.

***Bristol Has Equal Access to This Information.*** United further objects to this Request as Bristol has equal or greater access to this information, and requiring United to conduct an expensive and time-consuming collection and review of all communications with *anyone* at United would be needlessly burdensome given Bristol's access.

***Response.*** Subject to the foregoing objections, United responds as follows: United agrees to meet and confer with Bristol regarding the production of administrative records for a selected sample of the claims, which would contain documents responsive to this Request. For instance, the administrative record would include BH Case Notes for the patient for the pertinent dates of service, and contain notations regarding provider communications and requests for authorization of treatment or verification of benefits.

## REASONS FOR PRODUCTION OF DOCUMENTS- REQUEST NO. 7

Document request 7 is somewhat of a catch all in case requests 8,9 and 10 discussed above could be construed to have missed any subjects/non written communications, such as communications related to the audit or investigations conducted by United. For the same reasons discussed above, any documents responsive to this category are relevant.

## STATEMENT REGARDING DEPOSITION REQUST(S) IN DISPUTE:

## DEPOSITION NOTICE:

On March 17, 2020, Plaintiff served a deposition notice for the United person(s) most qualified pursuant to Code of Civil Procedure section 2025.230 for May 4, 2020 regarding the following topics:

1.     United's search for documents responsive to Plaintiff's Requests for Production of Documents served herein, including the locations searched, whether they be physical, electronic or otherwise.

2.     The identities of all United employees involved in United's search for records responsive to Plaintiff's Requests for Production of Documents served herein.

3.     United's review of all records found responsive to Plaintiff's Requests for Production of Documents served herein.

4.     All reasons why the individual plan member/patient claims underlying this litigation have not been paid.

5.     The identities of all individuals responsible for or involved in or with knowledge of the decision not to pay or reimburse the individual plan member/patient claims underlying this litigation.

6.     The claims processing of the individual plan member/patient claims underlying this litigation.

7.     The individuals responsible for the processing of the individual plan member/patient claims underlying this litigation.

8.     The identities of all United employees with information regarding the individual plan member/patient claims underlying this litigation.

9.     The location of all documents or electronic records related to the individual plan member/patient claims underlying this litigation.

10.     United's procedures and/or standards applicable to processing individual plan member/patient behavioral health claims both now and from 2015-2017.

11.     All investigation(s) performed by United with respect to Sure Haven, Cedar Creek Recovery, Hope's Landing and/or Long Beach Recovery or to the individual plan member/patient claims underlying this litigation.

12.     The identities of all United employees responsible for the issuance of electronic remittance advices (ERA) and explanation of benefits (EOB) notices for behavioral healthcare member claims from 2015-2017, including for the individual plan member/patient claims underlying this litigation.

13.     United's policies and procedures for issuing electronic remittance advices (ERA) and explanation of benefits (EOB) notices related to member benefits for behavioral healthcare now and from 2015-2017.

14.     The location of all electronic remittance advices (ERA) and explanation of benefits (EOB) notices related to member benefits for behavioral healthcare, including for the individual plan member/patient claims underlying this litigation.

15.     The role/activities of United's Program and Network Integrity (PNI) department and/or United's in-house legal department as it relates to Sure Haven, Cedar Creek Recovery, Hope's Landing and/or Long Beach Recovery or the individual patient claims underlying this lawsuit and the identities of the decisionmakers from those departments involved in in making decisions related to Sure Haven, Cedar Creek Recovery, Hope's Landing and/or Long Beach Recovery, or regarding the individual plan member/patient claims underlying this litigation

16.     The identities of all individuals or employees of United's PNI department and/or legal department with knowledge or information related to any investigation, undertaken for any reason, of Sure Haven, Cedar Creek Recovery, Hope's Landing and/or Long Beach Recovery.

17.     All United procedures and/or standards applicable to the verification of benefits for the claims and services at issue in this litigation.

18.     All United Level of Care Guidelines applicable to behavioral health claims from 2012-2017.

19.     The identities of all United employees with knowledge or information regarding procedures and/or standards for verification of benefits calls related to behavioral healthcare services.

20.     The identities of all United employees responsible for the verification of benefits calls made with respect to the individual plan member/patient claims underlying this litigation.

21.     The location of all records related to the verification of benefits calls made with respect to the individual plan member/patient claims underlying this litigation as specified in the Complaint.

22.     The United procedures and/or standards applicable to any prior authorizations of services for the individual plan member/patient claims underlying this litigation, as specified in the Complaint.

23.     The identities of all United employees responsible for the granting prior authorization of behavioral healthcare provider services from 2015-2017, including for the individual plan member/patient claims underlying this litigation.

24.     The location of all records related to any prior authorizations granted with respect to the individual plan member/patient claims underlying this litigation as specified in the Complaint.

25.     The identities of all United employees with knowledge or information regarding the individual plan member/patient claims underlying this litigation.

26.     The location of all documents or electronic records related to the individual plan member/patient claims underlying this litigation.

27.     The identities of all United employees with knowledge or information regarding the allegations contained in the Complaint.

28.     The location of all electronic records, documents and call logs related to the allegations contained in the Complaint.

29.     The identities of all United employees with knowledge or information regarding the allegations contained in United's Affirmative Defenses.

30.     The location of all electronic records, documents and call logs related to the allegations contained in United's Affirmative Defenses."

**UNITED RESPONSE/OBJECTIONS TO DEPOSITION NOTICE:**

United's objections/response to the deposition notice is 25 pages. In summary, United objected and refused to produce a deponent for subjects 1-9, 12-14, 16, 18-21, and 23-30 identified in the notice.

United "agreed" to produce deponents in response to subjects 10, 11, 15, 17 and 22 but to date has refused to do so.

United refused to produce a witness on subject 29 which requests a witness most qualified to testify regarding United's affirmative defenses. Because the objections are lengthy, the objection to

item 29 is set forth below for purposes of illustration as there are significant similarities to all the objections:

> **"RESPONSE:**
> ***Overbroad and Unduly Burdensome***. United objects to this Topic as overly broad and unduly burdensome. As written, the Topic demands that United prepare a corporate representative to testify to the identity of every single person in the United organization with any knowledge of the disputed claims in this case, no matter how minor that individual's role in the process and no matter how remote that individual's connection to the claims at issue in this case may be. A limited number of individuals at United have personal knowledge or substantive information relevant to this case; other individuals who simply assisted with the process through technical or administrative means are not relevant and there is no need to hold a deposition in order to identify them. As such, the Topic is disproportionate to the needs of this case.
> ***Calls for Privileged Information.*** United further objects to this Topic to the extent it seeks information subject to the attorney-client privilege, attorney-work product doctrine, or any other applicable privilege, protection, or immunity afforded by applicable law.
> ***Response***. Subject to and without waiving these objections, United refers Bristol to its Response to Special Interrogatory No. 25, which identifies the primary United employees with knowledge of United's affirmative defenses. United will not provide testimony on this Topic."

## REASONS FOR COMPELLING DEPOSITIONS

Plaintiff has made it clear it wants to take the depositions and also the under the circumstances video depositions are preferable.

It is important to note that United has not paid the claims at issue in this litigation and has not provided an explanation for the nonpayment. Instead, it put the claims into an "audit" status and requested additional information which the Providers sent to United in connection with the audit. Then, after a significant time frame in which United had not paid or provided an explanation for nonpayment, it became apparent that United was not going to make payment or give an explanation. This lawsuit followed.

As to the subjects that United agreed to produce a witness for, subject 11 asks for the most qualified witness for United's investigations into the claims or Providers, 15 for United's Network Integrity and/or in house legal role/activities regarding the claims and 10, 17 and 22 ask witnesses most qualified as procedures regarding verification of benefit, authorization and claim processing procedures. Although these are clearly relevant material areas of inquiry to which United agreed to

- 12 -

produce witnesses, it has refused to produce any witnesses to date.

The refusal to agree to produce a witness on subject 29 is particularly disturbing as that item requests witness most qualified to testify regarding United's affirmative defenses. In this regard, United has denied liability and asserted numerous affirmative defenses, including a setoff claim in its first affirmative defense, predicated on allegations of fraudulent claims and other malfeasance by the Providers. How could this not be relevant and discoverable?

Dated: November 4, 2020

NAPOLI SHKOLNIK PLLC

By: _____
MATTHEW M. LAVIN
Co-counsel for Plaintiff
Bristol SL Holdings, Inc.

LAW OFFICE OF JOHN W. TOWER

By: _____
JOHN W. TOWER
Co-counsel for Plaintiff
Bristol SL Holdings, Inc.

1   MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
2   NAPOLI SHKOLNIK PLLC
    5757 W. Century Boulevard, Suite 680
3   Los Angeles, CA 90045
    (212) 397-1000 / Fax (646) 843-7603
4
5   JOHN W. TOWER, ESQ. SBN 106425
    LAW OFFICE OF JOHN W. TOWER
6   2211 Encinitas Blvd., 2nd Floor
    Encinitas, CA 92024
7   (760) 436-5589 / Fax (760) 479-0570
8
    Attorneys for Plaintiff
9   Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

10

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **FOR THE COUNTY OF SAN FRANCISCO**

13

14   BRISTOL SL HOLDINGS, INC., et al.,        )   **Case No.: CGC-19-580534**
                                               )
15                      Plaintiff,             )   **DECLARATION OF JOHN W. TOWER**
                                               )   **REGARDING MEET AND CONFER**
16           vs.                               )   **PROCESS AND IN SUPPORT OF MOTION**
                                               )   **TO COMPEL PRODUCTION OF**
17   UNITED BEHAVIORAL HEALTH, a               )   **DOCUMENTS AND DEPOSITIONS**
     California corporation, et al.,           )
18                                             )
                        Defendants.            )   Date:   December 3, 2020
19                                             )   Time:   9:00 a.m.
                                               )   Judge:  Hon. Ethan P. Schulman
20                                             )   Dept:   301
                                               )
21   _____

22          I, JOHN W. TOWER, declare under penalty of perjury as follows:

23          1.      I am co-counsel for Plaintiff Bristol SL Holdings in this action and have personal

24   knowledge of each of the facts set forth in this declaration, and can testify competently thereto,

25   except as to the matters stated on information and belief, and as to such matters I believe them to be

26   true.

27          2.      On March 17, 2020 Plaintiff served its first set of requests for production of

28   documents on Defendants. Plaintiff requested production of any notes, other documents, transcripts

                                                  - 1 -

and/or recordings of the verification of benefit and authorization to perform services calls for the claims at issue in this litigation. Plaintiff also requested other documents regarding communications with Defendants and Defendant's investigations into the Providers and/or claims at issue in this case

3.    Defendants asserted various objections to these requests and did not, and has not to date, produced any of these documents. I made numerous attempts to obtain these documents through the meet and confer process, but Defendants have made produced nothing with regard to the requested documents at issue.

4.    On August 5, 2020 I sent a meet and confer letter to counsel for United regarding the documents in dispute, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference as if set forth in full at this place.

5.    In addition to the meet and confer letter, I and co-counsel for Plaintiff, Matthew Lavin, have had multiple lengthy telephone discussions with counsel for United regarding the documents (especially the verification of benefit call recordings) and also the person most qualified depositions that we had noticed for May 4, 2020 pursuant to a deposition notice served on March 17, 2020. We have been inquiring about witnesses and dates on numerous occasions, including most recently, on October 13 and 21, 2020. We have spent more than an hour of time discussing discovery issues, including Plaintiff's deposition notice and document requests.

6.    I have another case pending in which I represent a Provider against United in which based on the verification of benefit call date and related information, and originating telephone number, United has located and produced recordings of verification of benefit telephone calls.

7.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 4, 2020 at Encinitas, California.

Dated:  November 4, 2020                    LAW OFFICE OF JOHN W. TOWER


_____
JOHN W. TOWER
Co-counsel for Plaintiff
Bristol SL Holdings, Inc.

# EXHIBIT A

**Law Office of**

# JOHN W. TOWER

**2211 Encinitas Blvd., Second Floor**
**Encinitas, CA 92024**
**(760) 436-5589 / Fax (760) 479-0570**

*Via Email*

August 5, 2020

Meghan DesLauriers, Esq.
Dorsey & Whitney LLP
50 South Street, Suite 1500
Minneapolis, MN 55402

**RE:    Bristol SL Holdings v. United Behavioral Health**
**San Francisco Superior Court Case No. CGC-19-580534**

Dear Meghan:

I am corresponding with you regarding deficiencies in United's responses to Plaintiff's discovery requests.

## **Deficiencies in United's Responses to Special Interrogatories.**

In the response to interrogatory 3 asking for the reasons for nonpayment of the claims in this case, United simply refers Plaintiff to the documents it has produced. We do not think the documents United has produced provide any basis for nonpayment. To the contrary, the documents lead us to conclude the claims should have been paid. We do not expect to agree on this, but the point is that directing us to documents is not an appropriate response. If you have any basis for nonpayment you intend to rely on, we are entitled to know.

In the response to interrogatory 8 regarding investigations of the claims, United refers Plaintiff to a "retrospective report" it agrees to produce. Despite my numerous requests for that report, it has not been produced. Additionally, we are entitled to a response to this interrogatory, not just a reference to documents which United claims it has or will produce.

In the response to interrogatory 14 regarding VOB procedures, United again refers Plaintiff to documents it may produce. We are unaware of any responsive documents United has produced in this regard. We find it hard to believe there are no written procedures. Moreover, whether or not there are

any documents, we are entitled to a response that answers the question by providing a descriptive statement of how United conducts the VOB process.

Interrogatory 18 is the same as 14, except it refers to the authorization process instead of the VOB process. In the response to interrogatory 18 regarding authorization procedures, United again refers Plaintiff to documents United may produce. We are unaware of any responsive documents United has produced in this regard. We find it hard to believe there are no written procedures. Moreover, whether or not there are any documents, we are entitled to a response that answers the question by providing a descriptive statement of how United conducts the authorization process.

## Deficiencies in United's Responses to Form Interrogatories.

In the response to interrogatory 1.1 United identifies your firm but does not identify any United employees or representatives who assisted in preparing the responses. We are entitled to the identities of these individuals.

In the response to interrogatory 15.1 regarding the factual basis for denials and affirmative defenses, United refers to its unverified counterclaim in the previous district court case. This is not an appropriate response. We are entitled to and need the facts United is relying on in asserting its defenses. For example, in the first affirmative defense, United alleges it is entitled to recoupment "for wrongful claims previously submitted by the Facilities and paid by United or the health plans in question." We need all of those supposedly "wrongful claims" to be identified and the facts United claims support the allegation that they were somehow "wrongful".

## Deficiencies in United's Responses to Document Requests.

In response to request 1 regarding administrative records for the claims at issue, United objects to producing records for all claims at issue and states "United agrees to meet and confer with Bristol regarding the production of administrative records for a selected sampling of the disputed claims. "Unless United is willing to stipulate as to the validity of the claims at issue, we are entitled to documents relating to all of the claims. United also indicates that it will produce "ODAR Reports and retrospective documents." I do not believe we have received these documents. If I am incorrect, please let me know.

In response to request 2 regarding third party administration agreements, United objects and refuses to produce the agreements. We believe United may have acted outside the scope of or violated these agreements which would be relevant to our fraud causes of action.

In response to request 3 regarding the applicable insurance plans/policies United objects and then states: "United agrees to meet and confer with Bristol regarding the production of administrative records for a selected sampling of the disputed claims. The administrative record will include the applicable summary plan descriptions (SPDs) for the selected sample of the claims." This is unacceptable. United contends that it refused to pay the claims based on the terms and conditions of the plans. We need to have those plans, not just a random sampling.

In response to request 4 regarding communications between United and Plaintiff,  United objects and then states: "United agrees to meet and confer with Bristol regarding the production of administrative records for a selected sample of the claims, which would contain documents responsive to this Request."
This is unacceptable. United refused to pay the claims at issue. We need to have documents relating to all those claims, not just a random sampling.

In response to request 5 regarding manuals or guidelines, United objects and refuses to produce the agreements. We believe United may have acted outside the scope of which would be relevant to our fraud causes of action.

In response to requests 7 and 10 regarding documentation of telephone/oral communications, United objects and refuses to produce any documents, once again suggesting a meet and confer regarding production of documents regarding a limited sample of claims. Unless the validity of any claims not part of the "sample" is admitted, this is unacceptable.

In response to requests 11-14 and 16, United objects and again suggests a meet and confer regarding production of documents regarding a limited sample of claims. Unless the validity of any claims not part of the "sample" is admitted, this is unacceptable.

In response to request 15 regarding SIU documents, United objects and refuses to produce documents, suggesting it is willing to meet and confer. Considering the defenses United has raised in this action, we need and are clearly entitled to all SIU documents

In response to requests 17-22 regarding generally lawsuits and/or administrative complaints against United, United objects and refuses to produce any documents. We believe this information would be relevant to our fraud causes of action.

We look forward to discussing these issues during our meet and confer telephone call this Friday.

Very truly yours,

JOHN W. TOWER

JWT: djt

Cc: Mathew Lavin, Esq.

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED BEHAVIORAL HEALTH, a California corporation, et al., <br><br> Defendants. | **Case No.: CGC-19-580534** <br><br> **DECLARATION OF MATTHEW M. LAVIN REGARDING MEET AND CONFER PROCESS AND IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITIONS** <br><br> Date:    December 3, 2020 <br> Time:   9:00 a.m. <br> Judge:  Hon. Ethan P. Schulman <br> Dept:   301 |

I, MATTHEW M. LAVIN, declare under penalty of perjury as follows:

1.      I am co-counsel for Plaintiff Bristol SL Holdings in this action and have personal knowledge of each of the facts set forth in this declaration, and can testify competently thereto, except as to the matters stated on information and belief, and as to such matters I believe them to be true.

2.      On March 17, 2020 Plaintiff served its first set of requests for production of documents on Defendants. Plaintiff requested production of any notes, other documents, transcripts

- 1 -

and/or recordings of the verification of benefit and authorization to perform services calls for the claims at issue in this litigation. Plaintiff also requested other documents regarding communications with Defendants and Defendant's investigations into the Providers and/or claims at issue in this case

3.      Defendants asserted various objections to these requests and did not, and has not to date, produced any of these documents. I made numerous attempts to obtain these documents through the meet and confer process, but Defendants have made produced nothing with regard to the requested documents at issue.

4.      On August 5, 2020, my co-counsel sent a meet and confer letter to counsel for United regarding the documents in dispute, a true and correct copy of which is attached to the declaration of John W. Tower in support of this motion as Exhibit A.

5.      In addition to the meet and confer letter, I and co-counsel for Plaintiff, John W. Tower, have had multiple lengthy telephone discussions with counsel for United regarding the documents (especially the verification of benefit call recordings) and also the person most qualified depositions that we had noticed for May 4, 2020 pursuant to a deposition notice served on March 17, 2020. We have been inquiring about witnesses and dates on numerous occasions, including most recently, on October 13 and 21, 2020. We have spent more than an hour of time discussing discovery issues, including Plaintiff's deposition notice and document requests.

6.      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 4, 2020 at McLean, VA.

Dated:  November 4, 2020                    NAPOLI SHKOLNIK PLLC

_____
MATTHEW M. LAVIN
Co-counsel for Plaintiff
Bristol SL Holdings, Inc.

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., ) <br><br> Plaintiff, ) <br> vs. ) <br><br> UNITED BEHAVIORAL HEALTH, a ) California corporation, et al., ) <br><br> Defendants. ) <br> _____ ) | **Case No.: CGC-19-580534** <br><br> **PROOF OF SEVICE** <br><br> Date:　December 3, 2020 <br> Time:　9:00 a.m. <br> Judge:　Hon. Ethan P. Schulman <br> Dept:　301 |

I, the undersigned, declare as follows:

I am employed with the LAW OFFICE OF JOHN W, TOWER 2211 Encinitas Blvd., 2nd Floor, Encinitas, CA 92024.  I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen and I am not a party to this action.

On November 4, 2020, I served the following document(s) described as:

**1.  PLAINTIFF'S NOTICE OF MOTION FOR PROTECTIVE ORDER**

**2.  PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**3. PLAINTIFF'S SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**4. DECLARATION OF MATTHEW M. LAVIN IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**5. DECLARATION OF JOHN W TOWER IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**6. PROPOSED ORDER GRANTING MOTION TO COMPEL DISCOVERY**

on counsel for Defendants in this action as follows:

Kent J. Schmidt, Esq.
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Schmidt.kent@dorsey.com

Andrew Holly, Esq.
Michelle S. Grant, Esq.
DORSEY & WHITNEY LLP
50 S. 6th Street, #150
Minneapolis, MN 55402
Holly.andrew@dorsey.com
*Grant.michelle@dorsey.com*

[X]     by placing [ ] the original [X] a true copy thereof addressed as follows: See Above.

[ ]     (BY **MAIL SERVICE**) I placed such envelopes for collection and to be mailed on this date following ordinary business practices.

[X]     (BY **E- MAIL**) I sent a true copy of the above-entitled document(s) to the individual identified at the email address referenced above.

[X]     (BY **E-SERVICE**) The document stated herein was submitted to be transmitted electronically via the courts authorized e-filing and e-service provider.

[X]     (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 4, 2020, at Encinitas, California.

By: _____
    John W. Tower

# EXHIBIT H

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,
County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., | Case No.: CGC-19-580534 |
| Plaintiff, | **NOTICE OF PLAINTIFF BRISTOL SL HOLDINGS MOTION FOR DISCOVERY PROTECTIVE ORDER** |
| vs. | |
| UNITED BEHAVIORAL HEALTH, a California corporation, et al., | Date: December 3, 2020 Time: 9:00 a.m. |
| Defendants. | Judge: Hon. Ethan P. Schulman Dept: 301 |

**TO DEFENDANT UNITED BEHAVIORAL HEALTH AND ITS ATTORNEYS OF RECORD HEREIN:**

YOU ARE HEREBY NOTIFIED THAT on December 3, 2020 at 9:30 a.m., or as soon thereafter as the matter can be heard, in Department 302 of this Court, located at 400 McAllister Street , San Francisco, CA 94102, Plaintiff Bristol SL Holdings will bring a motion pursuant to California Code of Civil Procedure section 2017.020(a) and related authorities.

- 1 -

This motion is made pursuant to California Code of Civil Procedure section 2017.020(a) and related provisions, and will be based upon this Notice, the Points and Authorities submitted herewith, the Declarations of Tanisha Porreca, Matthew Lavin and John Tower in support submitted herewith, the separate statement of representative discovery requests in dispute submitted herewith, any matters of which the Court may take judicial notice and upon the Court's file and any other matters that may be presented at oral argument.

Dated: November 4, 2020                    NAPOLI SHKOLNIK PLLC

                                           _____
                                           MATTHEW M. LAVIN


                                           LAW OFFICE OF JOHN W. TOWER

                                           _____
                                           JOHN W. TOWER

                                           Attorneys for Plaintiff
                                           Bristol SL Holdings, Inc.

Matthew M. Lavin, Esq. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

John W. Tower, Esq. (SBN 106425)
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED BEHAVIORAL HEALTH, a California corporation, et al., <br><br> Defendants. | **Case No.: CGC-19-580534** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF BRISTOL SL HOLDINGS IN SUPPORT OF MOTION TO FOR DISCOVERY PROTECTIVE ORDER** <br><br> Date:  December 3, 2020 <br> Time:  9:00 a.m. <br> Judge:  Hon. Ethan P. Schulman <br> Dept:   301 |

# I.

## **INTRODUCTORY STATEMENT.**

This is an action is to hold United Behavioral Health ("United") accountable for 3,339 days of unreimbursed healthcare services that it promised to pay for but has not. As a result of United's failure to pay, the addiction treatment providers who rendered these healthcare services were forced to close their doors – amid a national addiction and mental health crisis. This lawsuit is about United's repeated promises to pay for services and its failure to do so, 3,339 times in a row. Plaintiff, Bristol SL Holdings, Inc. ("Bristol") is the successor in interest to a network of now-bankrupt substance abuse treatment centers (the "Providers"). The Providers filed for Chapter 11 bankruptcy protection in 2017 (*In Re: Solid Landings Behavioral Health, Inc.*, Case No.: 8:17-bk-12213-CB, the "Bankruptcy"). The stipulated judgment in that matter adjudges that Bristol is the rightful owner of these claims.

Bristol brings this lawsuit against United for failing to pay more than $7 million dollars for services which were agreed to and authorized. Bristol was created by agreement of the parties to the Bankruptcy for the purpose of bringing these claims and collecting payment for the 3,339 days of unreimbursed treatment rendered to 124 patients with United insurance. Bristol acquired all rights to collection, including the right to bring suit, for the benefit of the creditors and the trustee of the Bankruptcy estate, and adjudged as such in the Bankruptcy proceeding.

The patients and claims at issue in this case are specifically identified in the complaint. These claims arise from services performed by the substance use disorder treatment Providers who were out of network providers to United. The parties are in the discovery phase of this case. Plaintiff has produced thousands of pages of documents for the patients/claims at issue in this lawsuit. However, Defendant wants to conduct discovery into other, unrelated prior claims for patients different than those identified in the complaint, ostensibly based on its first affirmative defense to the complaint.

Defendant attempts to justify its requests for discovery beyond claims at issue in this action based in large part on its first affirmative defense which seeks "recoupment" of payments United alleges it made for unrelated prior claims submitted by the treatment facilities. The first affirmative defense alleges as follows:

1.     "The bankrupt entities from whom Plaintiff purportedly purchased the causes of action in this matter *(e.g.,* Sure Haven and Cedar Creek Recovery, the "Facilities") each participated (along with their owners and other affiliated entities) in a scheme to defraud United and the group health plans it administers through fraudulent billing practices. Among other things, the Facilities participated in a fraudulent kickback scheme with certain toxicology laboratories and affiliates (named "Sky Toxicology"), through which these Facilities caused thousands of unnecessary lab tests to be sent to Sky Toxicology. United and the group health plans it administers would ultimately pay for these fraudulent tests.

2. Similarly, the Facilities submitted fraudulent billings to United, which United and the group health plans it administered would ultimately pay for. For example, although Sure Haven regularly represented that it was a women's only facility on its website, in other promotional materials, and in conversations with potential patients, it submitted thousands of claims to United on behalf of male patients. Upon information and belief, those bills were fraudulent.

3 Further, United received information from a former employee who worked at both Sure Haven and Cedar Creek that the Facilities had no medical doctors on staff, and that nurse practitioners and other non-physician staff would regularly provide medical services and submit claims to United representing themselves to be physicians. In addition, information received by United suggests that the Facilities engaged in other improper billing processes, including affirmatively waving copay amounts and altering medical records to qualify for higher payments from United and the group health plans it administers.

4. To the extent that Plaintiff has suffered damages, United is entitled to recoupment against Plaintiff, as a purported purchaser of Sure Haven's and Cedar Creek's claims, in an amount equal to what the Facilities owe United (or the plans for which United acts as agent or claims administrator) <u>for wrongful claims previously submitted by the Facilities and paid by United or the health plans in question.</u>" [Underlining Added]

## II.

## SUMMARY OF PLAINTIFFS POSITION WHY A PROTECTIVE ORDER IS APPRORIATE

The very language of the affirmative defense shows that it is not a recoupment claim, but rather a setoff claim based on "previously submitted" paid claims that United characterizes as "wrongful claims". The previous unrelated paid claims submitted by the Providers that United seeks to "recoup" do not arise from the same transaction as the claims asserted by Plaintiff herein and therefore would be characterized as setoff claims which Defendant is not authorized to make under the facts of this case, the plans or applicable law.

The number of previous claims that the Providers had with United is much larger than the number of specifically identified claims at issue in this case. To litigate and conduct discovery on the illegitimate cross-plan offset issue would essentially create a bigger case than the one Plaintiff filed. To the extent United is trying to rely on "Sky Toxicology" as a basis to pursue extraneous discovery, its rationale fails. None of the claims at issue in this lawsuit had lab/toxicology testing performed by Sky Toxicology and United has already obtained a consent judgment against Sky Toxicology in a separate, concluded proceeding.

For these, and other reasons discussed below, United's first affirmative defense does not support its effort to engage in the extensive and unduly burdensome discovery it seeks to conduct into extraneous unrelated claims and issues.

## III.

## LEGAL ARGUMENT

### III.A  Legal Standard for Motion for Protective Order

This motion is made pursuant to California Code of Civil Procedure section 2017.020(a) which provides that:

> "The court shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence. The court may make this determination pursuant to a motion for protective order by a party or other affected person. This motion shall be accompanied by a meet and confer declaration under Section 2016.040."

As the declaration of John Tower in support of this motion demonstrates, the moving parties attempted to resolve this issue, but insist on conducting discovery into unrelated claims.

### III.B.  United's first affirmative defense is actually a prohibited "Set-Off" claim and not a claim for "Recoupment".

The claims that Plaintiff is bringing are entirely separate transactions from those unrelated prior claims Defendant paid to the Providers as alleged in its first affirmative defense.

Set-Off and Recoupment are two related but distinct legal doctrines. Set-off "arises out of different and independent transactions between the debtor and the creditor" and is set forth in the

Bankruptcy Code. *See In re Angwin*, No. 15-11120-B-7, 2016 WL 1395378, at *3 (Bankr. E.D. Cal. Apr. 5, 2016). However, for the equitable doctrine of recoupment to apply, "the competing claims must arise out of the "same transaction" or occurrence." *Id. citing Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1399 (9th Cir. 1996).

In order to determine whether the claims arise from the same transaction, the Ninth Circuit has adopted a "logical relationship" test. *See In re Madigan* (B.A.P. 9th Cir. 2001) 270 B.R. 749, 755. Although the logical relationship test is "flexible" it has limits and in the commercial context, is should not be applied "so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." *Id.* at 757.

The logical relationship test was set forth clearly by the Ninth Circuit in *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1012 (9th Cir. 2000), where the Court concluded "that the distinctive Medicare system of estimated payments and later adjustments does qualify as a single transaction for purposes of recoupment." *Id.* The Court found that the specific statutory scheme for *Medicare* payments is what led to finding a single transaction. The Court cautioned that, although the logical relationship test is "flexible," it has limits and in the commercial context, should not be applied "so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction." *Id.* at 757. The relationship between the insolvent debtor treatment facilities and United is a commercial one where there were multiple occurrences, claims for treatment, in a continuous commercial relationship. Exactly the relationship that the Ninth Circuit held was *not* subject to recoupment.

In this case the Providers were out of network Providers to United. They had no in network provider contract that could be viewed as analogous to the Medicare statutory scheme which provides for otherwise unavailable setoff rights. Further, under the Medicare statutory scheme, claims are required to be paid within a relatively short statutorily prescribed time, unlike the present situation where United conducted an audit for years on the unpaid claims.

Without an overarching contract or statute covering the dealings between the Providers and United, as with in network provider contracts, or defining any offset rights, each patient admittance, including all associated communications verifying benefits and authorizing services, is a separate

- 5 -

contract and a separate transaction. Each individual claim submitted must be viewed as a separate commercial transaction.

While the recoupment in *TLC was* made pursuant to specific Federal Regulations providing offset rights, Federal courts have held that the very cross-plan offsets United looks to impose here are illegal. In *Peterson on behalf of E v. UnitedHealth Group Inc.,* 913 F.3d 769 (8th Cir. 2019) the court held United's interpretation that its plans authorized cross-plan offsetting was unreasonable, stating as follows at page 777:

> Similarly to how we consider "whether [an] interpretation conflicts with the substantive or procedural requirements of the ERISA statute" in evaluating whether a plan interpretation is reasonable, *Finley*, 957 F.2d at 621, we view interpretations that authorize practices that push the boundaries of what ERISA permits with some skepticism. Regardless of whether cross-plan offsetting necessarily violates ERISA, it is questionable at the very least. Considering this, alongside the fact that there is no plan language— only broad, generic grants of administrative authority— that would authorize the practice, leads us to conclude that United's interpretation is not reasonable.

Further separating the present situation from *TLC,* Bristol asserts state-law claims that do not even depend upon any individual plans or plan terms. The unpaid claims are unrelated to one another and are completely separate transactions. They involve different insureds, different claims and different health insurance plans. The only common thread is that United is the third-party claims administrator for all of the plans. The plans are completely separate and distinct.

The recoupment affirmative defense is in actuality an impermissible setoff claim which United is not entitled to make. It should be prohibited from conducting far reaching, broad discovery in into unrelated claims and issues in an attempt support of its illegitimate first affirmative defense. Bristol plans to bring a motion for summary adjudication that would include a challenge to the first affirmative defense, but that motion is on hold as there have been delays in obtaining discovery from United.

**III.C.  None of the patients with claims at issue herein had laboratory testing done by Sky Toxicology**

To the extent United is trying to rely on Sky Toxicology as a basis to pursue extraneous discovery, its rationale fails. None of the claims at issue in this lawsuit had lab/toxicology testing

performed by Sky Toxicology.

Both the verified response to request 7, and Tanisha Porreca's declaration under penalty of perjury establish that none of patients with claims at issue herein had toxicology labs performed by Sky Toxicology. Plaintiff has produced voluminous medical records that contain all of the toxicology lab test results which identify the labs that performed the testing, none of which were Sky Toxicology.

**III.D.  Discovery into unrelated claims serves no legitimate purpose and would be burdensome, inappropriate and not reasonably calculated to lead to discovery of admissible evidence**

If United is allowed to pursue discovery related to its first affirmative defense, there will be a second case of the same or similar magnitude as the case set forth in the complaint. Totally different, burdensome, expensive and unrelated discovery would be conducted. Moreover, United's first affirmative defense is in reality a claim for damages, not a true affirmative defense. It seeks damages for claims unrelated to the claims involved in this case.

To the extent United seeks discovery into the corporate structure of the Provider entities and information concerning the individuals involved in those entities, it is attempting to engage in an offensive expedition to obtain irrelevant personal, private, confidential and privileged information that is not related to any of the claims and issues involved in <u>this</u> case.

It is clear Plaintiff is not suing over lab claims. Plaintiff is a company that was created to hold and bring suit on these specific assets, unprocessed and unpaid clinical claims for residential treatment. Further, the Providers themselves were not labs and did not submit lab claims to Defendant[1].

Plaintiff's claims are the assets it acquired with no trailing liabilities. Sky Toxicology is a completely separate third-party that engaged submitted lab claims to United and was paid by United. Claims that Defendant paid to debtor treatment facilities were required to be raised in that court as set-off claims. The Sky Tox litigation is concluded and has a final judgment entered. None of these

---

[1] *See* Declaration of Tanisha Porreca.

transactions have the required "logical relationship" to the claims at issue here and pass the test used by the Ninth Circuit.

Every claim brought by Plaintiff is for residential treatment for mental health services that the bankrupt facilities provided and that Defendant has still illegally refused to pay. Defendant has no right to attempt to now bring these unrelated counterclaims and allegations into play in this litigation under the guise of conducting discovery into an inappropriate affirmative defense.

## V.

## CONCLUSION

For all the reasons stated herein, Plaintiff requests a protective order limiting United's discovery to the claims at issue and any issues reasonably related to those claims.

Dated: November 4, 2020

**NAPOLI SHKOLNIK, PLLC**

_____
Matthew M. Lavin

**LAW OFFICE OF JOHN W. TOWER**

_____
John W. Tower

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

- 8 -

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED BEHAVIORAL HEALTH, a California corporation, et al., <br><br> Defendants. | Case No.: CGC-19-580534 <br><br> **PLAINTIFF BRISTOL SL HOLDINGS INC'S SEPARATE STATEMENT IN SUPPORT OF MOTION FOR DISCOVERY PROTECTIVE ORDER** <br><br> Date: December 15, 2020 <br> Time: 9:00 a.m. <br> Judge: Hon. Ethan P. Schulman <br> Dept: 301 |

Plaintiff respectfully submits the following separate statement of representative discovery requests in support of its motion for a discovery protective order limiting the scope of discovery:

**Requests from United's first set of document requests**

**REQUEST FOR PRODUCTION NO. 7:**

Produce all DOCUMENTS regarding Sky Toxicology, including but not limited to:

    a.     CLAIMS submitted to United for reimbursement for any treatment provided or

services performed by Sky Toxicology;

b.     COMMUNICATIONS between PLAINITFF and Sky Toxicology concerning those CLAIMS;

c.     Records of any financial transactions or monies exchanged between PLAINTIFF and Sky Toxicology;

d.     Records concerning the relationship, contractual or otherwise, between PLAINTIFF and Sky Toxicology.

**RESPONSE:**

This request is objected to on the basis that it is vague, ambiguous, unintelligible, burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, seeks to violate the responding party's right of privacy, seeks proprietary, privileged and confidential documents and seeks documents protected from disclosure by the attorney-client and/or attorney work product privileges. Subject to said objections, and without waiving said objections, there are no such documents relating to the claims at issue in this lawsuit. For the dates of service relevant to this lawsuit, none of the patients whose claims are at issue had lab testing performed by Sky Toxicology, none of the charges for which payment is sought in this lawsuit are for laboratory testing, and charges for which payment is sought in this lawsuit are for authorized clinical treatment services only. Be advised that discovery and investigation in this regard are continuing.

**REASONS FOR PROTECTIVE ORDER REGARDING REQUEST NO. 7**

Both the verified response to request 7, and Tanisha Porreca's declaration under penalty of perjury establish that none of patients with claims at issue herein had toxicology labs performed by Sky Toxicology. Plaintiff has produced voluminous medical records that contain all of the toxicology lab test results which identify the labs that performed the testing, none of which were Sky Toxicology. Additionally, as Defendants first affirmative is an attempt to engage in improper cross plan offsetting, there is no basis for conducting any discovery related to that defense.

**Requests from United's second set of document requests**

**REQUEST FOR PRODUCTION NO. 30:**

Produce all DOCUMENTS reflecting any concern or complaint raised by anyone—including patients or YOUR employees, officers, service providers, or consultants—relating to any allegation in United's First Affirmative Defense, including but not limited to: improper billing practices, unnecessary lab testing, billing for male patients, inadequate medical doctors on staff, non-physician staff providing medical services or representing themselves to be physicians, waiving copay amounts, or altering medical records to qualify for higher payments.

**RESPONSE TO REQUEST 30:**

This request is objected to on the basis that it is vague, ambiguous, unintelligible, burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, seeks to violate the responding party's right of privacy, seeks proprietary, privileged and confidential documents and seeks documents protected from disclosure by the attorney-client and/or attorney work product privileges. Subject to said objections, and without waiving said objections, Plaintiff has produced and/or will produce any discoverable documents responsive to this request within a reasonable time. Be advised that discovery and investigation in this regard are continuing.

**REASONS FOR PROTECTIVE ORDER:**

This request is burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence. The parties have had numerous discussions regarding the first affirmative defense, Sky Toxicology and the scope of discovery. Any discovery related to the first affirmative defense should be limited to the claims at issue herein. United is not willing to agree to a scope of discovery including exclusively the claims at issue in this lawsuit.

**REQUEST FOR PRODUCTION NO. 31:**

Produce all DOCUMENTS reflecting or relating to any complaint, citation, subpoena, civil investigative demand, reprimand, fine, charge, or the like issued by any government entity (federal, state, or local) relating to Sure Haven, Inc. or Cedar Creek Recovery, Inc.

**RESPONSE TO REQUEST 31:**

This request is objected to on the basis that it is vague, ambiguous, unintelligible, burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, seeks to violate the responding party's right of privacy, seeks proprietary, privileged and confidential documents and seeks documents protected from disclosure by the attorney-client and/or attorney work product privileges. Subject to said objections, and without waiving said objections, Plaintiff has produced and/or will produce any discoverable documents responsive to this request within a reasonable time. Be advised that discovery and investigation in this regard are continuing.

**REASONS FOR PROTECTIVE ORDER:**

This request is burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence. The parties have had numerous discussions regarding the first affirmative defense, Sky Toxicology and the scope of discovery. Any discovery related to the first affirmative defense should be limited to the claims at issue herein. United is not willing to agree to a scope of discovery including exclusively the claims at issue in this lawsuit.

**REQUEST FOR PRODUCTION NO. 32:**

Produce all DOCUMENTS reflecting COMMUNICATIONS relating to Sure Haven, Inc. or Cedar Creek Recovery, Inc. between YOU and the California Department of Insurance, the California Department of Health Care Services, the Texas Department of Insurance, or the Texas Health and Human Services.

**RESPONSE TO REQUEST 32:**

This request is objected to on the basis that it is vague, ambiguous, unintelligible, burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, seeks to violate the responding party's right of privacy, seeks proprietary, privileged and confidential documents and seeks documents protected from disclosure by the attorney-client and/or attorney work product privileges. Subject to said objections,

- 4 -

and without waiving said objections, Plaintiff has produced and/or will produce any discoverable documents responsive to this request within a reasonable time. Be advised that discovery and investigation in this regard are continuing.

**REASONS FOR PROTECTIVE ORDER:**

This request is burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence. The parties have had numerous discussions regarding the first affirmative defense, Sky Toxicology and the scope of discovery. Any discovery related to the first affirmative defense should be limited to the claims at issue herein. United is not willing to agree to a scope of discovery including exclusively the claims at issue in this lawsuit.

Dated:  November 4, 2020                    NAPOLI SHKOLNIK PLLC


By: _____
        MATTHEW M. LAVIN
        Co-counsel for Plaintiff
        Bristol SL Holdings, Inc.


                                           LAW OFFICE OF JOHN W. TOWER


By: _____
        JOHN W. TOWER
        Co-counsel for Plaintiff
        Bristol SL Holdings, Inc.

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED BEHAVIORAL HEALTH, a California corporation, et al., <br><br> Defendants. | Case No.: CGC-19-580534 <br><br> **DECLARATION OF JOHN W. TOWER REGARDING MEET AND CONFER PROCESS AND IN SUPPORT OF MOTION FOR DISCOVERY PROTECTIVE ORDER** <br><br> Date: December 3, 2020 <br> Time: 9:00 a.m. <br> Judge: Hon. Ethan P. Schulman <br> Dept: 301 |

I, JOHN W. TOWER, declare under penalty of perjury as follows:

1.      I am co-counsel for Plaintiff Bristol SL Holdings in this action and have personal knowledge of each of the facts set forth in this declaration, and can testify competently thereto, except as to the matters stated on information and belief, and as to such matters I believe them to be true.

2.      When Defendant served its first document request on Plaintiff it requested documents regarding a toxicology testing laboratory known as Sky Toxicology which some of the Providers

- 1 -

who assigned claims to Plaintiff Bristol had used to perform lab toxicology testing prior to the claims at issue. None of the of the patients with claims at issue in this litigation had testing performed by Sky Toxicology. That was made clear in Plaintiffs response to the applicable document request.

3.     The applicable request as to Sky Toxicology, and the response, are as follows:

**"REQUEST FOR PRODUCTION NO. 7:**

Produce all DOCUMENTS regarding Sky Toxicology, including but not limited to:

a.     CLAIMS submitted to United for reimbursement for any treatment provided or services performed by Sky Toxicology;

b.     COMMUNICATIONS between PLAINITFF and Sky Toxicology concerning those CLAIMS;

c.     Records of any financial transactions or monies exchanged between PLAINTIFF and Sky Toxicology;

d.     Records concerning the relationship, contractual or otherwise, between PLAINTIFF and Sky Toxicology.

**RESPONSE:**

This request is objected to on the basis that it is vague, ambiguous, unintelligible, burdensome, oppressive, harassing, overly broad and remote, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, seeks to violate the responding party's right of privacy, seeks proprietary, privileged and confidential documents and seeks documents protected from disclosure by the attorney-client and/or attorney work product privileges. Subject to said objections, and without waiving said objections, there are no such documents relating to the claims at issue in this lawsuit. For the dates of service relevant to this lawsuit, none of the patients whose claims are at issue had lab testing performed by Sky Toxicology, none of the charges for which payment is sought in this lawsuit are for laboratory testing, and charges for which payment is sought in this lawsuit are for authorized clinical treatment services only. Be advised that discovery and investigation in this regard are continuing.

4.     In various meet and confer communications, Bristol has explained to United that none of the claims herein involved Sky Toxicology and also that any effort to offset payments for the

claims herein by other unrelated paid claims would be cross-plan offsetting, a prohibited practice. By way of example, we have provided a declaration from Bristol employee Tanisha Porreca confirming that the claims at issue do not involve Sky Toxicology.

5. A true and correct copy of Defendant United's first meet and confer letter dated July 29, 2020 is attached hereto as Exhibit A. A true and correct copy of Plaintiff Bristol's responsive meet and confer letter dated October 5, 2020 is attached hereto as Exhibit B. Between and after these letters, counsel for the parties have engaged in numerous lengthy meet and confer telephone conferences wherein these issues were discussed.

6. In addition to the meet and confer letters, I and co-counsel for Plaintiff, Matthew Lavin, have had multiple lengthy telephone discussions with counsel for United regarding the scope of discovery and United's attempts to conduct discovery into unrelated claims, including most recently, on October 13 and 21, 2020. We have spent more than an hour of time discussing discovery issues, including Plaintiff's Sky Toxicology and scope of discovery issues. During the October 21, 2020 meet and confer telephone conference counsel for the parties had another lengthy meet and confer call we discussed a number of pending discovery issues including United's attempts to obtain discovery regarding separate unrelated claims. We explained this was problematic for two reasons. First that it if United did withhold payment of proper claims in this care to offset other claim payments it thinks were wrongful, that would constitute cross-plan offsetting involving a myriad of serios consequences to plans and insureds. We also reiterated that none of the claims in this lawsuit had lab work performed by Sky Toxicology. Counsel for United indicated they understood our arguments and concerns, but disagreed with Plaintiff's position in this regard

7. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 4, 2020 at Encinitas, California.

Dated: November 4, 2020                    LAW OFFICE OF JOHN W. TOWER


                                           _____
                                           JOHN W. TOWER
                                           Co-counsel for Plaintiff
                                           Bristol SL Holdings, Inc.

# EXHIBIT A



**MEGHAN DESLAURIERS**
**Partner**
**(612) 492-6704**
**FAX (952) 516-5742**
**deslauriers.meghan@dorsey.com**

July 29, 2020

<u>**VIA E-MAIL**</u>

Matthew M. Lavin                                    John W. Tower
Aminata Ba                                          Law Office of John W. Tower
Samuel Blackmar                                     2211 Encinitas Blvd., 2nd Floor
Kaelyn Urrea                                        Encinitas, CA 92024
NAPOLI SHKOLNIK PLLC                                towerlawsd@gmail.com
5757 W. Century Blvd., Suite 680
Los Angeles, CA 90045
mlavin@napolilaw.com
aba@napolilaw.com
sblackmar@napolilaw.com
kurrea@napolilaw.com

Re:     **Meet and Confer on Bristol SL Holdings, Inc.'s ("Bristol") Responses to United Behavioral Health's ("United") First Set of Requests for Documents ("RFPs") and Special Interrogatories**

Counsel:

I write regarding certain deficiencies in Bristol's[1] responses to United's First Set of RFPs and Special Interrogatories. In the interests of working cooperatively to reach agreement without court intervention, United invites a meet and confer discussion regarding these deficiencies at Bristol's earliest convenience. In addition, United requests a written response regarding the various deficiencies identified below no later than August 10, 2020. This letter first addresses Bristol's responses to United's First Set of RFPs and then addresses United's First Set of Special Interrogatories.

**I.     DEFICIENCIES IN BRISTOL'S RESPONSES TO UNITED'S FIRST SET OF REQUESTS FOR DOCUMENTS**

**A.     Responses Where Bristol Has Produced Some Responsive Documents**

**RFP No. 1.** RFP No. 1 seeks various records regarding the Disputed Claims, including medical records; claim records; scheduling records; patient sign-in logs; requests for authorization or approval for services; patient assignment of benefits; authorizations for treatment;

---

[1] As defined in United's RFPs and Interrogatories, the term "Bristol" expressly includes Sure Haven, Inc. ("Sure Haven") and Cedar Creek Recovery, Inc. ("Cedar Creek Recovery"), which United refers to collectively in this letter as "the Providers."



correspondence with patients, biller, defendants, or other insurers/payers; call recordings, transcripts, and call notes; and settlement or compromise documents.  In response, Bristol stated that it "has produced and/or will produce any discoverable documents responsive to this request within a reasonable time."

To date, Bristol has produced medical records and claim forms regarding at least some of the Disputed Claims, but not all of the information sought in RFP No. 1.  It is unclear whether Bristol maintains additional responsive documents.  Therefore, for each category set forth in RFP No. 1, please confirm that Bristol had already produced all responsive documents or that no responsive documents exist.  In the alternative, please confirm that additional responsive documents exist and state when that production will occur.

## B.    Responses Where Bristol Has Not Yet Produced Any Documents

For each of the below requests, Bristol states that it "has produced and/or will produce any discoverable documents responsive to this request within a reasonable time."  United, however, has not been able to find any documents responsive to any of the below RFPs in the documents Bristol has produced to date.

- **RFP No. 2.**  RFP No. 2 seeks documents regarding all amounts paid relating to any disputed claim.

- **RFP No. 3.**  RFP No. 3 seeks communications between Bristol and United regarding any disputed claim.

- **RFP No. 4.**   RFP No. 4 seeks communications between Bristol and any patient regarding any disputed claim.

- **RFP No. 5.**  RFP No. 5 seeks documents and communications regarding the "audit status" of Bristol as alleged in Bristol's Complaint.

- **RFP No. 6.**  RFP No. 6 seeks each email and document referenced in or relied upon in drafting Bristol's Complaint.

- **RFP No. 8.**  RFP No. 8 seeks documents regarding claims for male patients by Sure Haven from 2014 to 2019.

- **RFP No. 14.**  RFP No. 14 seeks documents related to the Asset Purchase Agreement attached as Exhibit B to the Complaint, including its negotiation.

- **RFN No. 15.**  RFP No. 15 seeks documents related to the bankruptcy of Sure Haven and Cedar Creek Recovery.



- **RFP No. 17.**  RFP No. 17 seeks documents relating to Bristol's licenses, certifications, and authorizations to operate its business.

- **RFP No. 21.**  RFP No. 21 seeks Bristol's policies regarding verification of benefits and communications with insurers.

- **RFP No. 22.**  RFP No. 22 seeks Bristol's policies regarding assigning prices to services.

- **RFP No. 23.**  RFP No. 25 seeks all documents identified or relied upon in the course of answer United's Interrogatories.

For each request above, please confirm that Bristol will produce responsive documents and state when that production will occur.  In addition, if Bristol believes documents it has already produced are responsive to the above requests, please identify those documents by bates number.

### C.  Responses Where Bristol Refuses to Produce Any Documents.

**RFP No. 7.**  RFP No. 7 seeks documents regarding Sky Toxicology.  In response, Bristol states that "there are no such documents relating to the claims at issue in this lawsuit."  To the extent Bristol's qualifying language is attempting to narrow the scope of the request, United reiterates that the RFP seeks documents relating to any claims "submitted to United for reimbursement for any treatment provided or services performed by Sky Toxicology," as well as communications with Sky Toxicology concerning those claims, records of financial transactions with Sky Toxicology, and records concerning Bristol's relationship with Sky Toxicology.  These documents are relevant to United's first affirmative defense, which alleges that claims regarding Sky Toxicology were fraudulent and that United is entitled to recoup any amounts that it wrongfully overpaid on those claims.  Please confirm that Bristol will produce responsive documents and state when that production will occur.

**RFP Nos. 9, 10, and 11.**  RFP No. 9 seeks documents relating to treatment provided, services performed, or tests ordered by non-physicians or unlicensed physicians at Sure Haven or Cedar Creek Recovery.  RFP No. 10 seeks documents sufficient to show all alterations, modifications, amendments made, and access to the medical records related to claims submitted to United, including any relevant policies and procedures.  RFP No. 11 seeks records regarding the waiver of member responsibility amounts—*i.e.*, copays, coinsurance, and/or deductibles—regarding any patient at issue in this lawsuit.

In response to each of the above requests, Bristol asserts boilerplate objections and refuses to produce any documents.  The documents sought in these Requests are relevant to the allegations in Bristol's Complaint.  For example, if responsive documents showed that treatment was performed by a non-licensed physician or was rendered without collecting a copayment, it would contradict Bristol's allegations that United was required to pay for such services, or that the



treatment was "medically and clinically necessary." (FAC ¶ 19.) The same documents would also contradict Bristol's claim that it performed the terms of alleged oral and implied contracts and rendered only "authorized" services. (*Id.* ¶¶ 1801, 1821.)

In addition, the documents sought in the above requests are relevant to United's affirmative defenses, including recoupment; unclean hands; waiver, fraud, or estoppel; failure to perform; excuse of performance; and that Bristol's claims are unreasonable or not medically necessary. If responsive documents demonstrate that Sure Haven or Cedar Creek Recovery were manipulating medical records, for example, that would corroborate United's position that the disputed claims were properly denied. Please confirm that Bristol will produce responsive documents and state when that production will occur.

**RFP No. 12.** RFP No. 12 seeks documents regarding the organizational structure of Sure Haven and Cedar Creek Recovery. United seeks this information so that it can understand the hierarchy and roles of decision-makers at those two facilities, which is relevant, among other things, to United's affirmative defenses and the validity of particular claims. United also needs this information to determine which of Bristol's representatives to notice for deposition.

**RFP Nos. 13 and 16.** RFP No. 13 seeks documents reflecting the involvement of Sure Haven, Cedar Creek, Stephen Fennelly, or Elizabeth Perry in the creation of Bristol SL Holdings, Inc. RFP No. 16 seeks documents regarding Bristol and its attorneys and Sure Haven; Cedar Creek Recovery; Stephen Fennelly; or Elizabeth Perry, or their attorneys, relating to (a) the creation of Bristol SL Holdings, Inc.; (b) (the Asset Purchase Agreement, attached as Exhibit B to the Complaint; (c) the bankruptcy of Sure Haven and Cedar Creek Recovery; (d) the Disputed Claims. In response, Bristol refuses to produce any documents.

United is entitled to documents that bear on Bristol's alleged right to bring the causes of action it asserts in this lawsuit. It is entitled to documents showing what role the Providers, Stephen Fennelly, or Elizabeth Perry had in the creation of Bristol. It is also entitled to Bristol's communications with those parties and their attorneys regarding the APA, the Providers' bankruptcy, and the Disputed Claims. Those documents are relevant, among other things, to Bristol's claim that it owns the Disputed Claims free of any corresponding liabilities, as well as United's affirmative defenses, including recoupment; unclean hands; waiver, fraud, or estoppel; failure to perform; excuse of performance; and that Bristol's claims are unreasonable or not medically necessary. Please confirm that Bristol will produce responsive documents and state when that production will occur.

**RFP Nos. 18 and 19.** RFP No. 18 seeks the agreements or other records reflecting the terms of employment regarding medical professionals who rendered services related to the Disputed Claims. RFP 19 seeks the agreements or other records reflecting the terms of employment regarding any individuals identified in response to Interrogatory Nos. 6 and 7. United needs this information, among other reasons, to challenge Bristol's allegations that its representatives entered into contracts and reasonably relied on alleged promises and statements



by United. In addition, this information may be relevant to the validity of specific claim denials. United also needs this information to determine which of Bristol's representatives to notice for deposition.  Please confirm that Bristol will produce responsive documents and state when that production will occur.

**RFP No. 20.**   RFP No. 20 seeks Bristol's organizational guidelines, including any applicable policies and procedures, relating to its employees' communications with insurers, claims administration and billing, and provision of medical services.  In response, Bristol refuses to produce any documents.  United needs this information to challenge Bristol's allegations that its representatives entered into contracts and reasonably relied on alleged promises and statements by United.  It also needs this information to assess the validity of specific claim denials.  Finally, this information is relevant to United's affirmative defenses.  Please confirm that Bristol will produce responsive documents and state when that production will occur.

**RFP Nos. 23 and 24.**   RFP No. 23 seeks documents regarding Bristol's marketing or advertising strategy, budget, expenditures, and/or success or conversion rates.  RFP No. 24 seeks documents regarding Bristol's financial statements, tax returns, financial valuations, or descriptions of gross revenue, profit, and losses for 2015, 2016, 2017, 2018, 2019 and 2020.  In response, Bristol refuses to produce any documents.  United needs this information to challenge Bristol's allegation that Sure Haven and Cedar Creek Recovery "were forced into bankruptcy" as a result of United's conduct.  (FAC ¶ 1.)  Bristol expressly alleges that its damages are based on the Providers being "forced into bankruptcy."  (*Id.* ¶¶ 1803, 1823, 1848, 1861, 1874.)  In order to defend against those allegations, United is entitled to learn about the operations and finances of the Providers.[2]  Please confirm that Bristol will produce responsive documents and state when that production will occur.

---

[2] Courts routinely grant motions to compel the same information United seeks in these requests. *See, e.g.*, *Uni-Splendor Corp. v. Remington Designs*, LLC, 2017 U.S. Dist. LEXIS 223750, at *4, *8-*9 (C.D. Cal. Sep. 5, 2017) (granting motion to compel and ordering party to produce financial records reflecting sales and revenue and noting that "[i]t is beyond serious dispute that a party seeking damages has an obligation to produce financial data during discovery to support its damages calculation"); *Small v. Travelers Prop. Cas. Co. of Am.*, 2010 U.S. Dist. LEXIS 61308, at *6 (S.D. Cal. June 2, 2010) (granting defendant's motion to compel plaintiff to produce its state and federal tax returns for a six-year period where plaintiff sought lost profit damages); *Barrous v. BP P.L.C.*, 2011 U.S. Dist. LEXIS 42380, at *10-*13 (N.D. Cal. Apr. 14, 2011) (granting defendant's motion to compel, inter alia, tax and financial records, income and revenue statements, documentation of profits, and valuations because they bear on plaintiffs' damages claim); *Nat'l Grange of the Order of Patrons of Husbandry v. Cal. Guild*, 2018 U.S. Dist. LEXIS 67188, at *4 (E.D. Cal. Apr. 20, 2018) (granting defendant's motion to compel and ordering plaintiffs to produce bank records and where plaintiff sought lost profits).



**RFP No. 29.**  RFP No. 29 seeks total patient counts per month at the Providers' facilities from 2014 to 2019.  In response, Bristol refuses to produce any documents.  United needs this information to challenge Bristol's claimed damages and its allegation that the Providers were "forced into bankruptcy" as a result of United's conduct.  (FAC ¶¶ 1, 1803, 1823, 1848, 1861, 1874.)  This information is also relevant to United's affirmative defenses, including recoupment; unclean hands; waiver, fraud, or estoppel; failure to perform; excuse of performance; and that Bristol's claims are unreasonable or not medically necessary.  Please confirm that Bristol will produce responsive documents and state when that production will occur.

## II.  DEFICIENCIES IN BRISTOL'S RESPONSES TO UNITED'S SPECIAL INTERROGATORIES

### A.  Responses That Are Non-Responsive

**Interrogatory No. 1.**  Interrogatory No. 1 asks Bristol to identify "every person" with knowledge or discoverable information relevant to any claim or defense in this action and to explain the knowledge or information.  In response, Bristol states that "Tanisha Porreca has overall knowledge relating to the claims and would be the most knowledgeable person Plaintiff could designate."  United did not ask Bristol to identify the "most knowledgeable" individual, but "every person" with relevant knowledge or discoverable information.  Please confirm that Bristol will amend its responses to identify "every" person with knowledge or substantial involvement regarding the claims or defenses in this action.

### A.  Responses Where Bristol Improperly Refers to Unidentified "Documents"

**Interrogatory Nos. 2-10, 13, and 15.**  In response to Interrogatory Nos. 2–10, 13, and 15, Bristol states that "any discoverable information requested in this interrogatory is in documents which have been and/or will be produced herein."  That response does not pass master under California law.

Under the California Code of Civil Procedure, a party responding to interrogatories may "specify the writings from which the answer may be derived or ascertained."  CCP § 2030.230.  That specification, however, must "be in sufficient detail to permit the propounding party to locate and to identify, as readily as the responding party can, the documents from which the answer may be ascertained."  *Id.*  Bristol's response that the requested information is in "documents which have been and/or will be produced herein" entirely fails that requirement.  Please confirm that Bristol will amend its responses to state "the documents from which the answers may be ascertained" and state when that supplementation will occur.

### B.  Responses Where Bristol Refuses to Provide Any Information

**Interrogatory Nos. 11 and 12.**  Interrogatory Nos. 11 and 12 seek information regarding other lawsuits in which Bristol has been a party from 2015 to the present, and the disposition of



those lawsuits.  In response, Bristol refuses to provide any information.  California courts routinely grant motions to compel requests seeking information regarding other lawsuits relating to the same subject matter as the underlying action.  *See Perkins v. Superior Court*, 118 Cal. App. 3d 761, 763 (1981) (ordering trial court to issue order compelling party to answer interrogatories concerning "other lawsuits").  United is entitled to know the other lawsuits in which Bristol has been a party and their disposition, as such information may be relevant to this case.  Please confirm that Bristol will amend its response with information responsive to these Interrogatories.

**Interrogatory No. 14.**  Interrogatory No. 14 seeks information regarding all claims made by Sure Haven for male patients from 2014 to 2019.  In response, Bristol refuses to provide any information.  United may seek discovery regarding "any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . ."  CCP § 2017.010.  The information sought in this Interrogatory is relevant to United's recoupment affirmative defense, which alleges that, although Sure Haven represented itself as a women's only facility, it submitted thousands of claims to United on behalf of male patients.  In addition, Bristol already agreed to produce documents on this category (*see* Resp. to RFP No. 8).  Please confirm that Bristol will amend its response with information responsive to this Interrogatory.

**Interrogatory Nos. 16 and 17.**  Interrogatory No. 16 seeks information regarding instances in which Sure Haven or Cedar Creek Recovery altered or modified medical records in connection with claims submitted to United prior to the Disputed Claims.  Interrogatory No. 17 seeks information regarding instances in which Sure Haven or Cedar Creek Recovery waived member responsibility amounts.  In response, Bristol asserts boilerplate objections and responds, with no explanation, "not applicable."  This information is relevant to United's first affirmative defense as well as the validity of the Disputed Claims.  Please confirm that Bristol will amend its response with information responsive to these Interrogatories.

Sincerely,

Meghan DesLauriers

cc:     Andrew Holly
        Alan Iverson

# EXHIBIT  B

*Via Email*

October 5, 2020

Meghan DesLauriers, Esq.
Dorsey & Whitney LLP
50 South Street, Suite 1500
Minneapolis, MN 55402

**RE:    Bristol SL Holdings v. United Behavioral Health
San Francisco Superior Court Case No. CGC-19-580534**

Dear Meghan:

I am writing to confirm some of the discussions that have occurred among counsel and to respond to your meet and confer letter dated July 29, 2020. I will attempt the issues in the order you presented.

**Issues raised regarding Bristol's Responses to Document requests where documents have been produced.**

You state that "Bristol has produced medical records and claim forms regarding at least some of the disputed claims, but not all of the information sought in RFP No. 1." Actually, if documents were not produced for all of the claims at issue, it would be a handful at most. The documents produced include over 200 separate files consisting and approximately 80,000 pages of records for all the patients with claims at issue in this lawsuit, and include verification of benefit documents, detailed authorization logs, and treatment records.

Assignment of benefit forms were also produced as a separate file with assignments for all patients in one file. We also produced claim invoices sent to United documents as a separate file and an authorization spreadsheet compiling the authorizations into one document.

**Issues raised regarding Bristol's Responses to Document requests where no documents have been produced.**

You suggest that Bristol has agreed to produce documents in response to requests 2-6, 8, 14-5, 17, 21-22, and 25. However, you don't mention that Bristol only agreed to produce discoverable documents, if any, and that the responses are subject to numerous applicable objections.

Requests 2 and 3 seek documents that United already has and/or which have been produced by Bristol. Requests 4, 5 and 6 also seek documents United already has or which are contained within the documents Bristol has produced.

With regard to request 8, many of the claim files produced are for male patients, so in fact responsive documents have already been produced. Sure Haven, like Hope's Landing, Cedar Creek and Long Beach Recovery, were all treatment locations under the Solid Landings banner. All were licenses as co-ed facilities and some primarily treated men and others, women. Plaintiff's past production includes claims and medical records that indicate the all the providers whose claims are at issue. NPIs and prerequisite licensure data is included in bills and patient records. You can review the National Provider Identification numbers and cross reference them with relevant licensures and see that this is a non-issue.

As to requests 14 and 15, many documents relating to the asset purchase agreement and bankruptcy have been produced. To the extent any other documents relating to that category might exist, they are either equally available or not discoverable.

We have not located documents responsive to Request 17, but it is a matter of public record that Sure Haven was CARF accredited.

Request 21 refer to request 13. We do not see the connection between the two. Moreover, this request seeks irrelevant information and is not calculated to lead to the discovery of admissible evidence.

Request 22 asks for irrelevant proprietary information concerning pricing policies. Beyond the billed amounts reflected in the claim submittal documents, this request is inappropriate.

The response to Request 25 identifies documents relied on in responding to the interrogatories.

**<u>Issues raised regarding Bristol's Responses to Document requests where it has indicated no documents will produced.</u>**

In request 7, United requests documents regarding Sky Toxicology. Sky Toxicology was not used to render any laboratory services to any of the patient claims at issue in this case. The Plaintiff in this case is Bristol SL Holdings, which purchased assets out of bankruptcy in 2017. The Plaintiff has never had Communications with Sky Toxicology. Plaintiff has never conducted any transactions with Sky Toxicology. Plaintiff never had a relationship with Sky Toxicology.

Requests 9 and 10 are confusing. All treatment records are produced in the patient EMR record files as referenced above. Plaintiff is unaware of any improprieties in the treatment or record keeping associated with the patients with claims at issue.

With regard to request 11, all patients sign financial responsibility agreements. Plaintiff is unaware of any waiver of member responsibility amounts.

As to Request 12, we cannot see how this is relevant or calculated to lead to the discovery of admissible evidence.

Requests 13 and 16 clearly ask for privileged and confidential documents, including documents protected from disclosure by the attorney client and/or attorney work product privileges.

Requests 18 and 19 call for confidential, private, proprietary, irrelevant information not calculated to lead to the discovery of admissible evidence.

Request 20, we cannot see how this is relevant or calculated to lead to the discovery of admissible evidence.

Requests 23, 24 and 29 call for confidential, private, proprietary, irrelevant information not calculated to lead to the discovery of admissible evidence.

### Issues raised regarding Bristol's Responses to Interrogatories.

In the response to interrogatory 1 Bristol identified Tanisha Porreca by name. In addition, Bristol refers to the tens of thousands of documents it has produced which identify numerous individuals. Per California Code of Civil Procedure section 2030.230 Bristol is not required to create a compilation from produced documents

In the response to interrogatories 2-10, Bristol refers to the voluminous documents it has produced which contain responsive information. Per California Code of Civil Procedure section 2030.230 Bristol is not required to create a compilation from produced documents.

As you state, Interrogatories 11 and 12, refer to lawsuits Bristol has been involved in and disposition information. These interrogatories call for equally available or confidential/privileged information.

In the response to interrogatory 13, Hope's Landing was the name of a co-ed licensed, 12-18 bed facility that treated mostly women. HL was under the Solid Landings umbrella like Sure Haven. Long Beach Recovery was the name was a co-ed licensed 12 bed facility that treated mostly men. LBR was under the Solid Landings umbrella like Sure Haven.

Interrogatory 14 asks about claims for male patients. As discussed above, the documents produced confidentiality pursuant to the protective order identify the patients by name/gender.

The response to interrogatory 15 refers to the patient medical records which detail all treatment received.

The response to Interrogatory 16 is appropriate as Plaintiff is unaware of any instances where medical records were altered or modified.

The response to Interrogatory 17 is appropriate as Plaintiff is unaware of any instances where member responsibility amounts have been waived.

**<u>Response to Andrew Holly's September 30, 2020 letter.</u>**

I am not sure why Mr. Holly felt compelled to write his letter. When we talked on September 29, 2020, I made some inquiries in an attempt to clarify some of the requests/issues. Mr. Holly did not want to engage in that process. He just wanted a letter from us, so I informed him that I would get something to him within a week. He expressed no objection to that.

In his letter Mr. Holly states: "…you indicated that Bristol has not produced all documents related to the phone calls that form the basis for its claims…." That misstates our conversation as I did not "indicate" that at all. I did inform Mr. Holly that we were still searching to determine if any additional documents can be located. I also pointed him to the locations in the voluminous individual patient files we produced long ago where the VOB and authorization call notes are located for each patient with claims at issue.

Contrary to Mr. Holly's contentions, we have provided significant documentation, including treatment, VOB and authorization records. We have also provided appropriate responses to the interrogatories.

We remain available to meet and confer and discuss these issues further if you desire.

Very truly yours,

JOHN W. TOWER

JWT: djt

Cc: Mathew Lavin, Esq.

Matthew M. Lavin, Esq. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

John W. Tower, Esq. (CA SBN 106425)
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA 92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
**BY: EDNALEEN ALEGRE**
**Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al.,     ) | **Case No.: CGC-19-580534** |
|                ) | |
|         Plaintiff,    ) | **DECLARATION OF TANISHA PORRECA** |
|      vs.                  ) | |
|                ) | |
| UNITED BEHAVIORAL HEALTH, a     ) | |
| California corporation, et al.,       ) | |
|                ) | |
|         Defendants.    ) | |
| _____ ) | |

I, Tanisha Porreca, declare under penalty of perjury as follows:

1.      I am employed by Bristol Holdings SL, Inc., the Plaintiff in this action, and have personal knowledge of each of the facts set forth in this declaration, and can testify competently thereto, except as to the matters stated on information and belief, and as to such matters I believe them to be true.

2.      Sure Haven, Inc., Hope's Landing, Long Beach Recovery and Cedar Creek Recovery terminated any relationship with Sky Toxicology prior to the dates of service for which payment is sought in this lawsuit.

3. I have reviewed the records of Bristol SL Holdings, Sure Haven, Inc., Hope's Landing, Long Beach Recovery and Cedar Creek Recovery and can state upon information and belief that, for the dates of service relevant to this lawsuit, none of the patients whose claims are at issue had lab testing performed by Sky Toxicology.

4. I have reviewed the outstanding accounts receivable of Sure Haven, Inc., Hope's Landing, Long Beach Recovery and Cedar Creek Recovery, as well as the spreadsheet attached as Exhibit C to the Complaint, and can confirm that none of the charges for which payment is sought in this lawsuit are for laboratory testing.

5. I have reviewed the outstanding accounts receivable of Sure Haven, Inc., Hope's Landing, Long Beach Recovery and Cedar Creek Recovery, as well as the spreadsheet attached as Exhibit C to the Complaint, and can confirm that all charges for which payment is sought in this lawsuit are for authorized clinical treatment services only.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 17, 2020 at Costa Mesa, California.

Dated: April 17, 2020

By: _Tanbu_____
Tanisha Porreca

MATTHEW M. LAVIN, ESQ. (*pro hac vice*)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603

JOHN W. TOWER, ESQ. SBN 106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570

Attorneys for Plaintiff
Bristol SL Holdings, Inc.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/04/2020**
**Clerk of the Court**
**BY: EDNALEEN ALEGRE**
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANSISCO

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., et al., | Case No.: CGC-19-580534 |
| Plaintiff, | **PROOF OF SEVICE** |
| vs. | |
| UNITED BEHAVIORAL HEALTH, a California corporation, et al., | Date:    December 3, 2020<br>Time:   9:00 a.m.<br>Judge:  Hon. Ethan P. Schulman<br>Dept:   301 |
| Defendants. | |

I, the undersigned, declare as follows:

I am employed with the LAW OFFICE OF JOHN W, TOWER 2211 Encinitas Blvd., 2nd Floor, Encinitas, CA 92024.  I am readily familiar with the business practices of this office for collection and processing of correspondence for mailing with the United States Postal Service; I am over the age of eighteen and I am not a party to this action.

On November 4, 2020, I served the following document(s) described as:

1. **PLAINTIFF'S NOTICE OF MOTION FOR DISCOVERY PROTECTIVE ORDER**

2. **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF MOTION FOR DISCOVERY PROTECTIVE ORDER**

- 1 -

**3. PLAINTIFF'S SEPARATE STATEMENT IN SUPPORT OF MOTION FOR DISCOVERY PROTECTIVE ORDER**

**4. DECLARATION OF JOHN W TOWER IN SUPPORT OF MOTION FOR DISCOVERY PROTECTIVE ORDER**

**5. DECLARATION OF TANISHA PORRECA**

**6. PROPOSED ORDER GRANTING MOTION FOR DISCOVERY PROTECTIVE ORDER**

on counsel for Defendants in this action as follows:

Kent J. Schmidt, Esq.
DORSEY & WHITNEY LLP
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Schmidt.kent@dorsey.com

Andrew Holly, Esq.
Michelle S. Grant, Esq.
DORSEY & WHITNEY LLP
50 S. 6th Street, #150
Minneapolis, MN 55402
Holly.andrew@dorsey.com
*Grant.michelle@dorsey.com*

[X] by placing [ ] the original [X] a true copy thereof addressed as follows: See Above.

[ ] (BY **MAIL SERVICE**) I placed such envelopes for collection and to be mailed on this date following ordinary business practices.

[X] (BY **E- MAIL**) I sent a true copy of the above-entitled document(s) to the individual identified at the email address referenced above.

[X] (BY **E-SERVICE**) The document stated herein was submitted to be transmitted electronically via the courts authorized e-filing and e-service provider.

[X] (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 4, 2020, at Encinitas, California.

By: _____
   John W. Tower

- 2 -

# EXHIBIT I

2019 WL 6333803
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

BRISTOL SL HOLDINGS, INC. et al

v.

UNITED HEALTHCARE
SERVICES, INC. et al

Case No. SA CV 19-0710-DOC (DFMx)
|
Filed 10/07/2019

**Attorneys and Law Firms**

Jennifer R. Liakos, Napoli Shkolnik PLLC, Los Angeles, CA, Aaron R. Modiano, Pro Hac Vice, Napoli Shkolnik PLLC, Miami, FL, John W. Tower, Law Office of John W. Tower, Encinitas, CA, Matthew M. Lavin, Pro Hac Vice, Napoli Shkolnik PLLC, McLean, VA, for Bristol SL Holdings, Inc. et al.

Andrew J. Holly, Pro Hac Vice, Meghan L. DesLauriers, Pro Hac Vice, Michelle S. Grant, Pro Hac Vice, Dorsey and Whitney LLP, Minneapolis, MN, Divya Gupta, Dorsey and Whitney LLP, Costa Mesa, CA, for United Healthcare Services, Inc. et al.

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING MOTION TO DISMISS [38]**

THE HONORABLE DAVID O. CARTER, JUDGE

**\*1** Before the Court is Defendants United HealthCare Services, Inc., United Behavioral Health, UnitedHealthcare Service LLC, OptumInsight, Inc. and Optum Services, Inc. (collectively, "United" or "Defendants") Motion to Dismiss ("Motion") (Dkt. 38). The Court finds these matters appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court **GRANTS** Defendants' Motion.

**I. Background**

    **A. Facts**

The following facts are taken from the Complaint ("Compl.") (Dkt. 1). Plaintiff Bristol SL Holdings, Inc. ("Plaintiff") alleges it is a corporation pursuing the instant action on behalf of itself, Sure Haven, Inc. ("Sure Haven"), Cedar Creek Recovery, Inc. ("Cedar Creek"), and Silver Rock Recovery ("Silver Rock"). *Id.* ¶¶ 5–9. Sure Haven, Cedar Creek, and Silver Rock were health care providers and jointly filed for bankruptcy and assigned to Bristol the claims at issue in this lawsuit. *Id.* ¶ 5. The action involves alleged unpaid claims for substance abuse treatment services for 124 United patients and verification of benefits ("VOB") calls regarding those claims. *Id.* ¶¶ 14, 17. Plaintiff alleges that while the health plans/policies were effective, Plaintiff provided services to Defendants' insureds. *Id.* ¶ 15. During VOB calls, Defendants' agents would tell Plaintiff's agents that a particular patient's health plan would cover a certain percentage of the out-of-network substance abuse treatment. *Id.* ¶ 17. Plaintiffs would verify all benefits and obtain authorization for all treatments as required by Defendants. *Id.* ¶ 15. Defendants directly informed Plaintiff that Defendants would pay for treatment at the usual, customary, and reasonable rate ("UCR"). *Id.* After a patient was admitted to a Plaintiff facility, Plaintiff would routinely call United to receive pre-authorization and/or pre-certification to continue services. *Id.* ¶ 18.

Later, Defendants failed to pay for the agreed upon amounts or failed to pay Plaintiff anything at all for the services provided. *Id.* ¶ 19. Plaintiff alleges that Defendants would often use the guise of an "audit" to refuse payment. *Id.* The unpaid claims owed total "not less than $7,056,095.29." *Id.* ¶ 20. Plaintiff asserts twelve causes of action, only the first of which is a federal cause of action: (1) Claim for Benefits under ERISA; (2) Breach of Contract; (3) Intentional Misrepresentation; (4) Negligent Misrepresentation; (5) Fraudulent Concealment; (6) Negligent Failure to Disclose; (7) Promissory Estoppel; (8) Quantum Meruit; (9) Violation of the UCL; (1) Breach of Implied in Fact Contract; (11) Breach of Contract on Assignment; and (12) Breach of Implied Covenant of Good Faith and Fair Dealing. *Id.* at 15–30. Plaintiff alleges this Court has federal question jurisdiction over the ERISA claim and supplemental jurisdiction over the remainder of the claims. *Id.* ¶¶ 1–2.

    **B. Procedural History**
On April 15, 2019, Plaintiff filed the action in this Court (Dkt. 1). On June 13, 2019, Defendants filed the Motion to Dismiss ("Motion") (Dkt. 38). On July 12, 2019, Plaintiff opposed the Motion to Dismiss ("Opp'n") (Dkt. 41). On July 22, 2019, Defendants replied ("Reply") (Dkt. 43). On September 26,

2019, the Court requested supplemental briefing on the issue of standing (Dkt. 55). Plaintiff and Defendants submitted supplemental briefing on October 3, 2019 (Dkts. 60, 61).

## II. Legal Standard

### A. Failure to State a Claim

**\*2** Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts accept as true a plaintiff's well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). Courts may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### B. Standing

The "irreducible constitutional minimum" of Article III standing has three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 560. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* Ultimately, the plaintiff, as the party invoking federal jurisdiction, has the burden of establishing these elements. *See id.* at 561.

### C. Subject Matter Jurisdiction

The Court may decide, on its own initiative, to decline to exercise supplemental jurisdiction when the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The applicable portion of subsection (c) provide:

**\*3** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(3) the district court has dismissed all claims over which it has original jurisdiction ...

The Ninth Circuit has affirmed that this Court may decline jurisdiction and dismiss without prejudice state law claims "[w]here [the] district court dismisses a federal claim, leaving

only state claims for resolution ...." *Wade v. Reg'l Credit Assn.*, 87 F.3d 1098, 1101 (9th Cir. 1996).

## III. Discussion

### A. Claim for Benefits under 29 U.S.C. § 1132(a)(1) (B) ("ERISA")

Defendants argue that the Complaint (1) does not plausibly allege standing to pursue a claim under ERISA and (2) that even if Plaintiff has standing to bring the claim generally, Plaintiff lacks ERISA standing because it is an assignee of claims by the health care providers and not a participant or beneficiary. Mot. at 4–6. Plaintiff argues that it has plead a valid ERISA claim and does not counter Defendants' argument that, as an assignee of the claims, Bristol does not have standing under ERISA. *See* Opp'n at 5–12.

Section 502(a)(1)(B) of ERISA, codified as 11 U.S.C. § 1132(a)(1)(B), authorizes health benefit plan participants and beneficiaries to bring civil enforcement actions in federal court to recover plan benefits. *Simon v. Value Behavior Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000), overruled on other grounds by *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). However, "health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions," as "[h]ealth care providers' patients are the ones who receive ERISA health benefits, not the providers themselves." *DB Healthcare v. Blue Cross Blue Shield*, 852 F.3d 868, 874–75 (9th Cir. 2017). Accordingly, health care providers "do not have direct authority as beneficiaries to sue under ERISA ... to recover payments due them for services rendered, or otherwise to enforce the statute's protections." *Id.* at 875.

Although health care providers lack direct standing to sue under ERISA, the Ninth Circuit has recognized that a health care provider may bring suit under ERISA "derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). Thus, if a health care provider has derivative standing, "a health care provider in appropriate circumstances can assert the claims of an ERISA participant or beneficiary." *DB Healthcare*, 852 F.3d at 876. Whether an assignee has standing depends on whether the claims are within the scope of assignment. *See*

*Cty. of Monterey v. Blue Cross of California*, 2019 WL 343419, at *6 (N.D. Cal. Jan. 28, 2019). To be considered beneficiaries under ERISA, plaintiffs "do bear the burden of showing that their assignments are valid." *Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California*, SA-CV-15-0736-DOC (DFMx), 2016 WL 6892140, at *13 (C.D. Cal. November, 22, 2016).

The exception that allows health care providers to bring suit under ERISA has not been extended to assignees of health care providers. *Simon*, 208 F.3d at 1081. In *Simon*, the Ninth Circuit explained that derivative standing exists for "health care providers to whom beneficiaries had assigned their benefit claims after receiving medical care from such providers." *Id.* However, the Ninth Circuit declined to extend the exception to "the assignee of health care providers." *Id.* This is because granting standing to assignees of health care providers "would be tantamount to transforming health benefit claims into a freely tradable commodity." *Id.*

**\*4** Here, Plaintiff pleads that patients, upon admittance to the relevant treatment facilities, assigned payment of insurance benefits to their respective health care provider. Compl. ¶ 10 and Exh. B (showing an assignment to Sure Haven). The Complaint then details how Sure Haven, Cedar Creek, and Silver Rock, the health care providers, filed for Bankruptcy. *Id.* ¶ 5. The Bankruptcy Court "approv[ed] the asset *sale* and *assignment* to Bristol of the claims which are the subject of this lawsuit ...." *Id* (emphasis added). The Bankruptcy Court order found that the "consideration provided by the Buyer for the Transferred Assets" was fair and reasonable. *Id.* Exh. A at 4. Though Bristol tries to characterize *itself* as a health care provider, *See id.* ¶ 10 ("Upon admittance to one of Plaintiff's treatment facilities ..."), Plaintiff is not a health care provider. Instead, Plaintiff is a holding company that acquired the claims after the health care organizations filed for bankruptcy. *Id.* ¶ 5. Therefore, Bristol does not have derivative standing to bring this suit. *See Spinedex*, 770 F.3d at 1289 (recognizing that a health care provider may bring suit under ERISA "derivatively, relying on its patient's assignments of their benefits claims."). Furthermore, Ninth Circuit precedent instructs this Court to find that Bristol, as an assignee, does not have standing to bring an ERISA claim. *See Simon*, 208 F.3d at 1081. To hold otherwise would transform "health benefit claims into a freely tradable commodity." *Id.* Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's ERISA claim **with prejudice**.

As the Court has dismissed the only federal cause of action in this case, the Court declines to exercise supplemental jurisdiction over the remaining state causes of action and dismisses those claims **without prejudice**. *See* Wade v. *Reg'l Credit Assn.*, 87 F.3d 1098, 1101 (9th Cir. 1996).

**IV. Disposition**

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss. The Court **DISMISSES WITH PREJUDICE** Plaintiff's ERISA claim and **DISMISSES WITHOUT PREJUDICE** the remainder of the Complaint for lack of subject matter jurisdiction.

**All Citations**

Slip Copy, 2019 WL 6333803

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT J

Nathan Fransen, SBN 242867
Paul J. Molinaro, SBN 242879
FRANSEN AND MOLINARO, LLP
4160 Temescal Canyon Rd #306
Corona, CA 92883
Telephone: (951) 520-9684
Fax: (951) 277-7598
nfransen@fransenandmolinaro.com
pmolinaro@fransenandmolinaro.com
Attorneys for Plaintiff Bristol SL Holdings

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRANSEN & MOLINARO, LLP
4160 TEMESCAL CANYON ROAD, SUITE 306
CORONA CA 92883

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>SOLID LANDINGS BEHAVIORAL HEALTH, INC. et. al.,<br><br>    Debtors and<br>    Debtors-In-Possession.<br><br>_____<br><br>BRISTOL SL HOLDINGS, INC.<br><br>    Plaintiff,<br><br>v.<br><br>HOWARD B. GROBSTEIN, LIQUIDATING TRUSTEE,<br><br>    Defendants.<br>_____ | CASE NO.: 8:17-bk-12213-ES<br>Adv. No. 8:20-ap-01151-ES<br><br>Chapter 7<br><br>Jointly Administered With:<br>Case No. 8:17-bk-12218-CB<br>Case No. 8:17-bk-12221-CB<br>Case No. 8:17-bk-12222-CB<br>Case No. 8:17-bk-12223-CB<br><br><br>**STIPULATION FOR JUDGMENT** |

1.  WHEREAS, Plaintiff Bristol SL Holdings, Inc., ("Bristol") filed a Complaint for Declaratory Relief in the above captioned case against Howard B. Grobstein, Liquidating Trustee ("Trustee").

2.  WHEREAS, the Complaint generally seeks a declaration of the Court that resolves any existing disputes concerning the assets purchased by Bristol from the Debtors in the matter of *In re Solid Landings* (8:17-bk-12213-ES) for which the Trustee is administering.

3.  WHEREAS, among the assets purchased by Bristol from the Debtors, were the "uncollected accounts, notes, interest and other health care or other receivables generated in connection with the operation of the Debtors ... whether billed or unbilled, recorded or unrecorded, or payable by a medically indigent assistance program, private Payors or any other Payor (including an insurance company), health care provider, independent practice association network (such as a health maintenance organization, preferred provider organization or any other managed care program), any fiscal intermediary of the foregoing, private pay clients, private insurance or any other source.." ("A/R Claims").

4.  WHEREAS, Bristol, in its pursuit of the accounts receivable it acquired from the Debtors, filed a state court action against United Health Care Services, Inc., *Bristol SL Holdings, Inc., et al. v United Health Care Services, Inc., et al.* (CGC-19-580534) ("United Case").

5.  WHEREAS, the Trustee retained all claims except as described above, specifically including, but not limited to, the Trustee's pending claims against Alpine Pacific Capital, LLC and Gerik M. Degner (Case No. 8:20-ap-1007-ES), for avoidance and recovery of preferential and fraudulent transfers, breach of fiduciary duty, and any other claims against these defendants that may exist.

6.  WHEREAS, a dispute has arisen in the Superior Court of California as to Bristol's standing, and rights to pursue its claims in the United Case. Specifically, these claims include, (1) breach of express oral contract, (2) breach of implied contract, (3) promissory estoppel, (4) intentional misrepresentation, (5) fraudulent concealment, (6) violation of business and professions code section 17200, (7) negligent interference with prospective economic relations, and (8) intentional interference with prospective economic relations.

STIPULATION FOR JUDGMENT
(In re Solid Landings Behavioral Health, Inc., et. al.)

1    7.  WHEREAS, the Trustee does not dispute Bristol's ownership of the A/R Claims and

2    wishes for the pending Complaint to be resolved in its entirety.

3                                    **STIPULATION**

4    8.  THERFORE, Bristol and the Trustee do hereby stipulate as follows:

5           a.  Judgment shall be entered in favor of Bristol and against the Trustee as to Bristol's

6               Complaint for Declaratory Relief. A true and correct copy of the Judgment that

7               will be submitted for the Court's approval, is attached hereto and marked as

8               "Exhibit A".

9           b.  This stipulation and the proposed Judgment shall fully resolve Bristol's claim

10              against the Trustee and Bristol shall not be entitled to any other relief against the

11              Trustee.

12

13   **BRISTOL SL HOLDINGS, INC.**

14

15   October 29, 2020                    /s/ Nathan Fransen

16   Date                                Nathan Fransen, Fransen and Molinaro, LLP
                                         attorney for Bristol SL Holdings, Inc.

17

18

19   **HOWARD B. GROBSTEIN, LIQUIDATING TRUSTEE**

20

21   October 29, 2020                    Rodger M. Landau /AL

22   Date                                Rodger M. Landau, LANDAU LAW, LLP

23                                       attorney for Howard B. Grobstein, Liquidating Trustee

24

25

26

27

28

FRANSEN & MOLINARO, LLP
4160 TEMESCAL CANYON ROAD, SUITE 306
CORONA CA 92883

EXHIBIT "A"

1   Nathan Fransen, SBN 242867
2   Paul J. Molinaro, SBN 242879
    FRANSEN AND MOLINARO, LLP
3   4160 Temescal Canyon Rd #306
    Corona, CA 92883
4   Telephone: (951) 520-9684
    Fax: (951) 277-7598
5   nfransen@fransenandmolinaro.com
    pmolinaro@fransenandmolinaro.com
6   Attorneys for Plaintiff Bristol SL Holdings

7

8
                    **UNITED STATES BANKRUPTCY COURT**
9
          **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**
10

11

12  In re                                    )   CASE NO.: 8:17-bk-12213-ES
                                             )   Adv. No. 8:20-ap-01151-ES
13  SOLID LANDINGS BEHAVIORAL               )
    HEALTH, INC. et. al.,                    )   Chapter 7
14                                           )
                                             )   Jointly Administered With:
15        Debtors and                        )   Case No. 8:17-bk-12218-CB
          Debtors-In-Possession.             )   Case No. 8:17-bk-12221-CB
16                                           )   Case No. 8:17-bk-12222-CB
                                             )   Case No. 8:17-bk-12223-CB
17                                           )
    _____ )
18                                           )   **JUDGMENT**
                                             )
19  BRISTOL SL HOLDINGS, INC.               )
                                             )
20                                           )
          Plaintiff,                         )
21                                           )
                                             )
22  v.                                       )
                                             )
23  HOWARD B. GROBSTEIN, LIQUIDATING        )
    TRUSTEE,                                 )
24                                           )
                                             )
25        Defendants.                        )
                                             )
26  _____ )

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JUDGMENT**

Plaintiff Bristol SL Holdings, Inc. ("Bristol"), and defendant Howard B. Grobstein,

Liquidating Trustee ("Trustee"), have stipulated to a Judgment in the matter of *Bristol SL*

*Holdings, Inc., v. Howard B. Grobstein, Liquidating Trustee* (8:20-ap-01151-ES).  The Court,

having considered the stipulation in this case, and good cause appearing, does Order and Decree

the following:

As to Bristol's single claim for declaratory relief, the Court finds in favor of Bristol and

declares that:

1.  Bristol is the rightful owner of the claims now pending in the matter of *Bristol SL*

    *Holdings, Inc., et al. v United Health Care Services, Inc., et al*. (CGC-19-580534) ("United

    Case"), and Bristol has been the rightful owner of these claims since acquiring certain

    assets from the Debtors in the matter of *In re Solid Landings* (8:17-bk-12213-ES), which

    occurred on August 4, 2017 ("A/R Claims").

2.  Bristol is the only owner of the rights to pursue the A/R Claims that were acquired from

    the Debtors in the matter of *In re Solid Landings*.

3.  Bristol's obligations pursuant to a previously entered accounts receivable distribution

    agreement remains in effect as to its obligations described therein in favor of the Trustee,

    specifically its obligation to pay 7.5% of any amounts recovered in excess of $3,500,000

    from accounts receivables purchased from the Debtors, which was a portion of the

    consideration paid by Bristol.

4.  All claims other than the A/R Claims were retained by the Trustee, specifically including,

    but not limited to, the Trustee's pending claims against Alpine Pacific Capital, LLC and

    Gerik M. Degner (Case No. 8:20-ap-1007-ES), for avoidance and recovery of preferential

    and fraudulent transfers, breach of fiduciary duty, and any other claims against these

    defendants that may exist.

//

1

2      5.   Bristol shall take nothing else by way of this Judgment from the Trustee.

3

4                                        #####

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28