Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Blvd., Suite 2000
Costa Mesa, CA 92626
Tel: (714) 800-1400; Fax: (714) 800-1499

Andrew Holly (*admitted pro hac vice*)
holly.andrew@dorsey.com
Nicholas J. Bullard (*admitted pro hac vice*)
bullard.nick@dorsey.com
**DORSEY & WHITNEY LLP**
50 S. 6th Street, #1500
Minneapolis, MN, 55402
Tel: (612) 340-2600; Fax: (612) 340-2868

Attorneys for Defendant United Behavioral
Health

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC., a California corporation, in its capacity as the owner of the claims of SURE HAVEN, INC., a California corporation, and CEDAR CREEK RECOVERY, INC., a Texas corporation,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH, a California corporation, and DOES 1 THROUGH 25, inclusive,<br><br>                Defendants. | CASE NO. 4:20-CV-07804-JSW<br><br>**DEFENDANT UNITED BEHAVIORAL HEALTH'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR EXPENSES AND FEES**<br><br>Date: January 8, 2021<br><br>Time: 9:00 a.m.<br><br>Courtroom: Courtroom 5, 2nd Floor |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ISSUES PRESENTED............................................................................................2

BACKGROUND ....................................................................................................2

    A.   Nature of the Dispute. ...........................................................................2

    B.   Bristol Initiates a Federal ERISA Action to Recover the Patients' ERISA Benefits. ...............................................................................................3

    C.   Bristol Repackages Its Claims in a State Court Action. .........................3

    D.   Bristol Avoids ERISA Preemption by Representing That Its Claims Do Not "Arise[] from Any Patient's Insurance Plan." .......................................4

    E.   To Avoid Dismissal, Bristol Shifts to Argue That It Does Seek Benefits under the Patients' Insurance Plans. ........................................................4

    F.   Within Days, United Files a Notice of Removal. ...................................5

    G.   Bristol Further Confirms, Post Removal, That It Seeks Benefits under the Patients' Insurance Plans. .....................................................................6

ARGUMENT ..........................................................................................................6

    I.   ERISA Completely Preempts Bristol's Claims. ....................................6

        A.   Governing Law. ............................................................................6

        B.   The Ninth Circuit's *Melamed* Decision Confirms That Removal Was Proper.........................................................................................7

        C.   Bristol's Claims Satisfy *Davila*'s Two-Prong Test for Complete Preemption. .................................................................................9

            1.   The first prong of *Davila*'s test is satisfied.....................9

            2.   The second prong of *Davila*'s test is satisfied. .............16

    II.   United's Notice of Removal Was Timely..............................................18

    III.   An Award of Fees and Costs Is Not Warranted.....................................20

        A.   United's Removal Was Objectively Reasonable. ......................20

        B.   Bristol Failed to Follow the Mandatory Procedure for Requesting an Award of Attorneys' Fees. ....................................................22

CONCLUSION......................................................................................................23

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*ACS Primary Care Physicians Sw., P.A. v. Unitedhealthcare Ins. Co.*,
6    2020 U.S. Dist. LEXIS 153260 (S.D. Tex. Aug. 17, 2020) ................................... 21

7

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ........................................................................................... *passim*
8

*Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*,
9    2005 U.S. App. LEXIS 29624 (11th Cir. Mar. 18, 2005) ............................... 9, 10, 20

10

*Apex Toxicology, LLC v. United Healthcare Ins. Co.*,
11    2017 U.S. Dist. LEXIS 99249 (S.D. Fla. June 26, 2017) ....................................... 21

12

*Bay Area Surgical Mgmt., Ltd. Liab. Co. v. Blue Cross Blue Shield of Minn. Inc.*,
    2012 U.S. Dist. LEXIS 99968 (N.D. Cal. July 17, 2012) ............................ 12, 13, 16
13

*Beauford v. E.W.H. Grp., Inc.*,
14    2009 U.S. Dist. LEXIS 94985 (E.D. Cal. Sep. 28, 2009) ....................................... 20

15

*Bethesda Chevy Chase Surgery Ctr., LLC v. UnitedHealthcare Ins. Co.*,
16    2016 U.S. Dist. LEXIS 70150 (D. Md. May 27, 2016) ......................................... 18

17

*Blakney v. Prasad*,
    817 F. App'x 504 (9th Cir. 2020) ......................................................................... 13
18

*In re Blast Energy Servs.*,
19    396 B.R. 676 (Bankr. S.D. Tex. 2008) ................................................................... 4

20

*Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*,
21    187 F.3d 1045 (9th Cir. 1999) ............................................................................... 8

22

*Bristol SL Holdings, Inc. v. United Healthcare Servs.*,
    2019 U.S. Dist. LEXIS 208361 (C.D. Cal. Oct. 7, 2019) ....................................... 3
23

*Cal. Spine & Neurosurgery Inst. v. Bos. Sci. Corp.*,
24    2019 U.S. Dist. LEXIS 75224 (N.D. Cal. May 3, 2019) ....................................... 21

25

*Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of La., Inc.*,
26    2015 U.S. Dist. LEXIS 27673 (M.D. La. Jan. 7, 2015) ......................................... 21

27

*Cedars-Sinai Med. Ctr. v. Am. Apparel, Inc.*,
28    2014 U.S. Dist. LEXIS 94857 (C.D. Cal. July 11, 2014) ....................................... 16

-ii-

*Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*,
    844 F.3d 1133 (9th Cir. 2017) ......................................................................18, 19

*Clark v. Unum Life Ins. Co. of Am.*,
    95 F. Supp. 3d 1335 (M.D. Fla. 2015)....................................................................11

*Cleghorn v. Blue Shield of Cal.*,
    408 F.3d 1222 (9th Cir. 2005) ................................................................7, 8, 11, 17

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*,
    852 F.3d 868 (9th Cir. 2017) ........................................................................8, 13, 15

*De La Pedraja v. Unitedhealthcare of Fla.*,
    2010 U.S. Dist. LEXIS 159555 (S.D. Fla. Aug. 20, 2010)....................................21

*Dishman v. UNUM Life Ins. Co.*,
    269 F.3d 974 (9th Cir. 2001) ....................................................................................7

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ................................................................................18

*Emergency Grp. of Ariz. Prof'l Corp. v. United Healthcare Inc.*,
    448 F. Supp. 3d 1077 (D. Ariz. 2020) ....................................................................21

*Eyak Native Vill. v. Exxon Corp.*,
    25 F.3d 773 (9th Cir. 1994) ....................................................................................18

*Feldman's Med. Ctr. Pharmacy, Inc. v. Carefirst, Inc.*,
    723 F. Supp. 2d 814 (D. Md. 2010)........................................................................18

*Filler v. Blue Cross of California*,
    593 F. App'x 685 (2015) .........................................................................................17

*Fossen v. Blue Cross & Blue Shield of Mont.*,
    660 F.3d 1102 (9th Cir. 2011) ..........................................................................passim

*Found. Ancillary Servs., L.L.C. v. United Healthcare Ins. Co.*,
    2011 U.S. Dist. LEXIS 119756 (S.D. Tex. Oct. 17, 2011)....................................21

*Fresno Cmty. Hosp. & Med. Ctr. v. Souza*,
    2007 U.S. Dist. LEXIS 51700 (E.D. Cal. July 3, 2007) ........................................17

*Fresno Cmty. Hosp. & Med. Ctr. v. UFCW Emplrs. Benefit Plan of N. Cal. Grp.
Admin., LLC*,
    2006 U.S. Dist. LEXIS 94700 (E.D. Cal. Dec. 19, 2006) ....................................16

*Galileo Surgery Ctr., L.P. v. Aetna Health & Life Ins. Co.*,
    2015 U.S. Dist. LEXIS 25942 (C.D. Cal. Mar. 3, 2015)........................................16

-iii-

*Gardner v. UICI*,
    508 F.3d 559 (9th Cir. 2007) ........................................................................20

*Ghosh v. Aetna Health of Cal., Inc.*,
    2012 U.S. Dist. LEXIS 142673 (S.D. Cal. Oct. 2, 2012) .........................................16

*Hill Physicians Med. Grp., Inc. v. PacifiCare of Cal.*,
    2001 U.S. Dist. LEXIS 6051 (N.D. Cal. Apr. 23, 2001) .........................................21

*Ibrahim v. Dep't of Homeland Sec.*,
    2014 U.S. Dist. LEXIS 53239 (N.D. Cal. Apr. 15, 2014) .........................................22

*Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*,
    25 F. Supp. 3d 951 (W.D. Tex. 2014)............................................................17, 18

*Iv Solutions, Inc. v. United Healthcare Servs.*,
    2012 U.S. Dist. LEXIS 195953 (C.D. Cal. Aug. 27, 2012).....................................21

*John Muir Health v. Cement Masons Health & Welfare Tr. Fund for N. Cal.*,
    69 F. Supp. 3d 1010 (N.D. Cal. 2014) ...........................................................16

*Josephson v. United Healthcare Corp.*,
    2012 U.S. Dist. LEXIS 144830 (E.D.N.Y. Sept. 8, 2012).......................................21

*Kilfoyle v. Hill*,
    2020 U.S. Dist. LEXIS 4461 (N.D. Ohio Jan. 10, 2020).......................................20

*Kos v. Aetna Health, Inc.*,
    2017 U.S. Dist. LEXIS 91380 (D. Nev. June 14, 2017)....................................12, 17

*L.A. Sleep Studies Inst. v. Anthem Blue Cross Life & Health Ins. Co.*,
    2014 U.S. Dist. LEXIS 151287 (C.D. Cal. Oct. 23, 2014).....................................16

*Lodi Mem'l Hosp. Ass'n v. Aetna Health Plans of Cal., Inc.*,
    2013 U.S. Dist. LEXIS 130770 (E.D. Cal. Sep. 10, 2013).....................................16

*Lodi Mem'l Hosp. Ass'n v. Am. Pac. Corp.*,
    2014 U.S. Dist. LEXIS 148986 (E.D. Cal. Oct. 20, 2014) .....................................16

*Maker v. FDIC*,
    441 F.3d 522 (7th Cir. 2006) ........................................................................14

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
    581 F.3d 941 (9th Cir. 2009) ................................................................*passim*

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)....................................................................................20

*Meadows v. Emp'rs Health Ins.*,
    47 F.3d 1006 (9th Cir. 1995) ........................................................................8

*Melamed v. Blue Cross of Cal.*,
  2011 U.S. Dist. LEXIS 91374 (C.D. Cal. Aug. 16, 2011)...................................................7, 17

*Melamed v. Blue Cross of California*,
  557 F. App'x 659 (9th Cir. 2014) .......................................................................*passim*

*Mem'l Hermann Hosp. Sys. v. UnitedHealthcare Ins. Co.*,
  2012 U.S. Dist. LEXIS 3584 (S.D. Tex. Jan. 11, 2012) ...........................................................21

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987).......................................................................................................6

*In re Miles*,
  430 F.3d 1083 (9th Cir. 2005) .......................................................................*passim*

*N.J. Carpenters Annuity Fund v. Meridian Diversified Fund Mgmt., LLC*,
  2011 U.S. Dist. LEXIS 50359 (S.D.N.Y. May 11, 2011)...............................8, 14, 15

*Orthopedic Specialists v. ILWU-PMA Welfare Plan*,
  2013 U.S. Dist. LEXIS 27940 (C.D. Cal. Feb. 28, 2013).......................................................16

*Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*,
  2012 U.S. Dist. LEXIS 41793 (N.D. Tex. Mar. 27, 2012) ......................................................21

*Peterson v. UnitedHealth Grp., Inc.*,
  913 F.3d 769 (8th Cir. 2019) ...................................................................................6

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987).......................................................................................................7

*Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*,
  64 F. Supp. 3d 459 (E.D.N.Y. 2014) .........................................................................21

*Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.*,
  126 F.3d 61 (2d Cir. 1997)........................................................................................14

*Port Med. Wellness Inc. v. Conn. Gen. Life Ins. Co.*,
  2013 U.S. Dist. LEXIS 134612 (C.D. Cal. Sep. 18, 2013).....................................................16

*Primax Recoveries, Inc. v. Gunter*,
  433 F.3d 515 (6th Cir. 2006) ...................................................................................14

*Regents for the Univ. of Cal*,
  2012 U.S. Dist. LEXIS 138530 (S.D. Cal. Sept. 24, 2014)....................................................21

*Reiten v. CIGNA Health & Life Ins. Co.*,
  2020 U.S. Dist. LEXIS 65372 (C.D. Cal. Apr. 14, 2020) .......................................................16

*Resolution Trust Corp. v. Bayside Developers*,
  43 F.3d 1230 (9th Cir. 1994) ..............................................................................5, 22

-v-

*Romero v. Mortg. Co.*,
    2011 U.S. Dist. LEXIS 69673 (N.D. Cal. June 28, 2011) ........................................22

*Romney v. Lin*,
    105 F.3d 806 (2d Cir. 1997)..................................................................................14

*Roohipour v. ILWU-PMA Welfare Plan*,
    2020 U.S. Dist. LEXIS 14775 (C.D. Cal. Jan. 28, 2020) .................................16, 21

*Rose v. Bank of Am. Corp.*,
    2015 U.S. Dist. LEXIS 64780 (N.D. Cal. May 18, 2015) .......................................23

*S. Fulton Dialysis, LLC v. Anita Taylor Caldwell & United Healthcare*,
    428 F. Supp. 3d 1346 (N.D. Ga. 2019) ..................................................................21

*San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*,
    2011 U.S. Dist. LEXIS 4100 (N.D. Cal. Jan. 10, 2011) ........................................21

*Simon v. Value Behavior Health, Inc.*,
    208 F.3d 1073 (9th Cir. 2000) ................................................................................3

*Smith v. Provident Bank*,
    170 F.3d 609 (6th Cir. 1999) ................................................................................14

*Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*,
    159 F.3d 1209 (9th Cir. 1998) ..............................................................................10

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014) .......................................................................12, 13

*Surgicore, Inc. v. Principal Life Ins. Co.*,
    2002 U.S. Dist. LEXIS 9122 (N.D. Ill. May 21, 2002) .........................................10

*Temple Hosp. Corp. v. Gomez*,
    2014 U.S. Dist. LEXIS 33166 (C.D. Cal. Mar. 11, 2014) ......................................16

*Wood v. Prudential Ins. Co. of Am.*,
    207 F.3d 674 (3d Cir. 2000)..................................................................................14

**Statutes and Rules**

28 U.S.C. § 1446(b) ..............................................................................................5, 18, 19

28 U.S.C. § 1447(c) .......................................................................................................23

Cal. Com. Code § 9102 ........................................................................................4, 5, 9, 10

ERISA § 502(a)..................................................................................................... *passim*

ERISA § 514 .....................................................................................................................4

**<u>INTRODUCTION</u>**

On October 29, 2020, Plaintiff Bristol SL Holdings ("Bristol") attempted to avoid dismissal by advancing a new theory of its case in an opposition brief: Bristol argued that it has the right to recover money due under the terms of ERISA-governed health insurance plans.  Such a claim falls squarely within ERISA's "complete preemption" doctrine and is therefore removable to federal court.  Accordingly, Defendant United Behavioral Health ("United") filed a notice of removal just six days after Bristol unveiled its new theory.  That removal was proper and timely, so this Court should deny Bristol's remand motion.

The Ninth Circuit's decision in *Melamed v. Blue Cross of California*, 557 F. App'x 659 (9th Cir. 2014) confirms that removal was proper under ERISA's complete preemption doctrine.  The *Melamed* plaintiff, like Bristol, sued to recover ERISA plan benefits under the guise of state-law claims.  The Ninth Circuit held that those claims—like Bristol's claims—are completely preempted by ERISA and removable to federal court.  *Melamed* confirms that this Court has jurisdiction over this action, and none of Bristol's arguments change that conclusion.

First, all the cases cited by Bristol involved state-law claims that were *outside* the scope of ERISA.  By contrast, the claims here and in *Melamed* are squarely *within* the scope of ERISA because they seek money under ERISA-governed health insurance plans.

Second, the record refutes Bristol's argument that "nothing new" happened in the state court proceeding to trigger removal.  Prior to October 29, Bristol had insisted in the state court action—in its complaint and briefing—that it was *not* seeking money under ERISA health insurance plans.  That changed on October 29 when Bristol was forced to respond to a dispositive motion.  To avoid dismissal, Bristol shifted strategies and admitted that it does seek to recover under ERISA health insurance plans.  That major shift triggered ERISA complete preemption and removal.

Third, Bristol's remand motion is built on the false premise that United is seeking a "second bite at the apple."  There is no question that this is United's *first* removal and its *first* argument that ERISA completely preempts Bristol's claims.  The state court never ruled on ERISA complete preemption, and regardless, the state court's rulings all came before Bristol unveiled its new theory of its case on October 29.

DEFENDANT'S OPPOSITION TO MOTION TO REMAND                                    CASE NO. 4:20-cv-07804-JSW

Finally, there is no basis for an award of attorneys' fees should the Court order remand. *Melamed* and other Ninth Circuit decisions provide a clear and objectively reasonable basis for removal. And Bristol has not even followed this Court's mandatory procedure for seeking a fee award. While Bristol's motion levels various personal attacks at United's counsel, those attacks are unfounded and ultimately irrelevant. United properly removed this action to federal court, so this Court should deny Bristol's motion.

## ISSUES PRESENTED

1.      Whether United properly removed this action to federal court given that Bristol seeks to recover money under ERISA-governed health insurance plans, a claim that is completely preempted by ERISA.

2.      Whether the Court should award Bristol its fees and costs when (a) Ninth Circuit authority provides an objectively reasonable basis for removal and (b) Bristol did not follow this Court's mandatory procedure for seeking a fee award.

## BACKGROUND

**A.      Nature of the Dispute.**

This case concerns payment for medical services provided to patients (the "Patients") at several substance abuse treatment facilities (the "Providers"). Decl. of Andrew Holly ("Holly Decl."), Ex. C ¶¶ 1, 15 ("State Compl."). The Providers allegedly treated the Patients expecting that the Patients' health insurance plans would cover the cost of treatment. *Id.* ¶ 17. It is undisputed that most of the Patients' health insurance plans were ERISA-governed plans, all of which United insured or administered. *See id.* ¶¶ 9, 15; *see also infra* at 3.

The Providers entered bankruptcy. *Id.* ¶ 1. There, they allegedly sold and assigned certain legal causes of action to Bristol (the "Sale Order"). *Id.* On the basis of that Sale Order, Bristol has sued United to recover payment for the Providers' treatment of the Patients. *Id.* ¶¶ 1, 16. United, on the other hand, asserts that the Providers engaged in a multi-year fraudulent billing scheme. *See* Holly Decl., Ex. G at 2-6. The Providers sent thousands of unnecessary lab tests to one of their affiliates as part of a kickback scheme, altered medical records to qualify for higher reimbursement, misrepresented their services to United, and engaged in other fraud. *Id.*

-2-

**B.      Bristol Initiates a Federal ERISA Action to Recover the Patients' ERISA Benefits.**

Because most of the Patients participated in ERISA-governed health insurance plans, Bristol initially filed an ERISA action in April 2019 in the U.S. District Court for the Central District of California.  *See* Holly Decl., Ex. A ("Federal Compl.").  Bristol sought to recover amounts that "were or should have been covered by [the Patients'] health insurance policies."  *Id.* ¶¶ 6-8.  Specifically, Bristol asserted a claim under ERISA § 502(a)(1)(B) "to recover benefits due . . . under the terms of" the Patients' ERISA plans, along with state-law claims.  *Id.* ¶¶ 22, 27-76.  According to Bristol, "most" of the Patients participated in ERISA-governed plans (*id.* ¶ 22), and all the Patients had "assigned payment of their insurance benefits to" the Providers.  *Id.* ¶ 23.

The court dismissed the ERISA claim with prejudice.  *Bristol SL Holdings, Inc. v. United Healthcare Servs.*, 2019 U.S. Dist. LEXIS 208361, at *11-12 (C.D. Cal. Oct. 7, 2019).  The court recognized that the Providers could have brought "suit under ERISA derivatively, relying on [their] patients' assignments of their benefits claims."  *Id.* at *9 (quotation omitted).  However, Bristol could not do so because Ninth Circuit law does not permit an assignee of a medical provider to assert an ERISA claim.  *Id.* at *9-11 (discussing *Simon v. Value Behavior Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000)).  The court dismissed the state-law claims without prejudice.  *Id.*

**C.      Bristol Repackages Its Claims in a State Court Action.**

On November 5, 2019, Bristol refiled in the Superior Court of the State of California for the County of San Francisco (the "State Court Action").  *See* State Compl. ¶ 1.  As in the initial federal court action, Bristol sought to recover payment for the Providers' treatment of the Patients.  *Id.* ¶ 9 (seeking recovery on "the same Patient claims").  This time, Bristol brought only its state-law claims for breach of oral contract, promissory estoppel, and other tort claims.  *Id.* ¶¶ 1777-1919.  Bristol alleged that it "does not seek to enforce the contractual rights of the Providers' Patients through their insurance contracts, policies, certificates of coverage, or any other written insurance agreement between the Patients and Defendants."  *Id.* ¶ 14.

**D.  Bristol Avoids ERISA Preemption by Representing That Its Claims Do Not "Arise[] from Any Patient's Insurance Plan."**

United filed a demurrer in the State Court Action, arguing, among other things, that Bristol's claims fall within ERISA § 514 "conflict preemption"[1] because they "interfere with ERISA-regulated relationships."  Holly Decl., Ex. D at 15-20 ("Demurrer").  In response, Bristol represented to the state court that "all causes of action in the Complaint are brought on behalf of the Providers themselves, based solely upon their business relationship with [United] and are not derivative of any claims which may have belonged to patients or *arisen from any patient's insurance plan*."  Holly Decl., Ex. E at 11 (emphasis added).  Based on that characterization of the claims, the state court declined to dismiss Bristol's claims as preempted by ERISA § 514.  Holly Decl., Ex. F at 3-4 ("Demurrer Order").  And given Bristol's characterization of its claim, United did not seek to remove the case to federal court at that time.

**E.  To Avoid Dismissal, Bristol Shifts to Argue That It Does Seek Benefits under the Patients' Insurance Plans.**

In its Demurrer, United also argued that Bristol lacks standing to assert its claims because it had not acquired those claims from the Providers.  Demurer at 11-13.  At the state court's suggestion, United sought clarification from the bankruptcy court on what claims Bristol had acquired.[2]  *See* Demurrer Order at 2.  The bankruptcy court then clarified that Bristol had acquired only claims "associated with" the Providers' "accounts receivable" (the "Accounts Receivable").  Holly Decl., Ex. H at 5.

With that clarification, United filed a motion for judgment on the pleadings in the State Court Action on October 19, 2020.  Holly Decl., Ex. I at 1 ("MJP").  United argued that Bristol's claims are not associated with the Providers' Accounts Receivable because an "account receivable" refers only to amounts owed by customers and it excludes "commercial tort claims."  *Id.* at 6-9 (citing *In re Blast Energy Servs.*, 396 B.R. 676, 707 (Bankr. S.D. Tex. 2008); Cal. U. Com. Code § 9102(a)(2)).  The Providers' customers were its Patients, and Bristol had represented that its

---

[1] ERISA "conflict" preemption (a defense) differs from "complete" preemption (a jurisdictional doctrine).  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009).

[2] Specifically, the court noted that it appeared that Bristol had acquired the right to assert its claims, but invited United to "petition the bankruptcy court for clarification."  Demurrer Order at 2.

DEFENDANT'S OPPOSITION TO MOTION TO REMAND                    CASE NO. 4:20-cv-07804-JSW

claims do not concern amounts owned by the Patients and do not "arise[] from any patient's insurance plan." *Id.*  Thus, United argued that Bristol's claims should be dismissed because they are not associated with the Providers' Accounts Receivable.

United's motion left Bristol in a predicament.  It could continue to insist that it was not seeking payment under the Patients' insurance health plans, but that would confirm that its claims are not associated with the Providers' Accounts Receivable.  Or Bristol could switch theories to argue that it was seeking payment under the Patients' insurance health plans.

Bristol chose the latter option.  To avoid dismissal, Bristol shifted theories in its opposition to United's motion, which it filed on October 29, 2020 (the "Opposition").  Holly Decl., Ex. J at 11.  In the Opposition, Bristol argued that it seeks (as a practical matter) benefits under the Patients' ERISA Plans.  Specifically, Bristol argued that its right to recover "accounts receivable" includes the right to recover "health care insurance receivables" under Cal. U. Com. Code § 9102.  *Id.* at 5-7 (quoting Cal. U. Com. Code § 9102).  A "health care insurance receivable" is defined as "an interest in or claim under a *policy of insurance* which is a right to payment of a monetary obligation for health care goods or services provided or to be provided."  Cal. U. Com. Code § 9102(a)(46) (emphasis added).  Here, most of the Patient's "polic[ies] of insurance" are ERISA-governed health insurance plans.  *Supra* at 2-3.  Thus, the October 29 Opposition revealed that Bristol seeks payment under the terms of ERISA-governed health insurance plans.

The Opposition put United on notice for the first time that Bristol seeks, as a practical matter, ERISA plan benefits.  As discussed below, that claim falls within ERISA's "complete preemption" doctrine so it is removable to federal court.  Accordingly, United had 30 days from October 29 within which to remove the action.  *See* 28 U.S.C. § 1446(b).

**F.    Within Days, United Files a Notice of Removal.**

On November 4, 2020, just six days after receiving Bristol's Opposition, United filed a notice of removal.  *See* Dkt. No. 1.  Prompt removal was necessary because November 4 was the deadline to file a reply brief for the motion for judgment on the pleadings, as well as certain discovery-related motions.  *See* Remand Mot. at 7.  Had United filed those briefs, Bristol may have argued waiver of the right to removal.  *See Resolution Trust Corp. v. Bayside Developers*, 43 F.3d

1230, 1240 (9th Cir. 1994) ("A party . . . may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there.").

**G.    Bristol Further Confirms, Post Removal, That It Seeks Benefits under the Patients' Insurance Plans.**

In post-removal papers, Bristol further confirmed that it seeks money under the Patients' ERISA-governed health insurance plans.  For example, on November 19, Bristol filed a motion in bankruptcy court, representing that this action concerns "certain accounts receivables, namely delinquent *insurance payments*."  Holly Decl., Ex. M at 2 (emphasis added).  Likewise, Bristol filed discovery motions in the State Court Action, arguing that United's defenses implicate "cross plan offsetting," which, by definition, concerns the payment of plan benefits.  *See* Holly Decl., Ex. K at 4, 6; *Peterson v. UnitedHealth Grp., Inc.*, 913 F.3d 769, 776 (8th Cir. 2019) ("cross plan offsetting [is] the practice of not paying a benefit due under one plan in order to recover an amount believed to be owed to another plan").  Bristol even suggested that this case may have "a myriad of serio[u]s consequences to plans and insureds."  Holly Decl., Ex. L at 3.

## ARGUMENT

**I.    ERISA Completely Preempts Bristol's Claims.**

**A.    Governing Law.**

ERISA § 502(a) authorizes claims "to recover benefits due under" ERISA-governed health insurance plans.  ERISA § 502(a)(1)(B).  Because § 502(a) is the "exclusive" means for such relief, it preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).  Section 502(a)'s preemptive force is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," allowing such claims to be removed to federal court.  *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).  This "complete preemption" doctrine allows a defendant to remove to federal court state-law claims that, as a practical matter, seek "money under the terms of an ERISA plan."  *Melamed v. Blue Cross of Cal.*, 557 F. App'x 659, 661 (9th Cir. 2014).

ERISA complete preemption prevents plaintiffs from "dressing up an ERISA benefits claim in the garb of a state law" claim. *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (quoting *Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 983 (9th Cir. 2001)). This doctrine is necessary to ensure that plaintiffs do not "completely undermin[e]" ERISA by seeking "remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Complete preemption thus ensures that federal courts adjudicate all claims, even state-law claims, "within the scope of [ERISA's] civil enforcement provisions." *Davila*, 542 U.S. at 209.

To determine whether a state-law claim is completely preempted by ERISA, this Court applies a two-part test drawn from *Davila*: (1) "an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)" and (2) "there is no other independent legal duty that is implicated." *Fossen v. Blue Cross & Blue Shield of Mont.*, 660 F.3d 1102, 1107-08 (9th Cir. 2011) (quoting *Davila*, 542 U.S. at 210). This two-part test "requires a practical, rather than a formalistic, analysis." *Id.* If only "one" claim is completely preempted by ERISA, the case may be removed to federal court; the "existence of other nonpreempted claims will not save the case from federal removal jurisdiction." *Melamed*, 557 F. App'x at 661.

**B.      The Ninth Circuit's *Melamed* Decision Confirms That Removal Was Proper.**

The Ninth Circuit's decision in *Melamed v. Blue Cross of California* is directly on point and confirms that removal was proper. In *Melamed*, a medical provider sued insurance companies claiming he had been "systematically underpaid" for services to patients in ERISA health insurance plans. 557 F. App'x at 660. Though the plaintiff asserted only state-law claims, the Ninth Circuit held that ERISA completely preempted the case because the plaintiff, in substance, sought "money under the terms of an ERISA plan." *Id.* at 660-61.

Complete preemption applied even though the plaintiff's claim (like Bristol's) was not a valid ERISA claim. *See id.* Specifically, the *Melamed* plaintiff was a medical provider, not an ERISA "participant or beneficiary," the only parties authorized to sue under ERISA § 502(a)(1)(B). *Id.* Nor did the plaintiff rely on an assignment of benefits to sue on behalf of his patients. *See Melamed v. Blue Cross of Cal.*, 2011 U.S. Dist. LEXIS 91374, at *15-17 & n.3 (C.D. Cal. Aug. 16, 2011). Instead, the plaintiff claimed he was a "third party beneficiary" of his patients. *Melamed*,

557 F. App'x at 661.  Settled Ninth Circuit law, however, does not allow medical providers to sue under ERISA § 502(a) as a "third party beneficiary."  *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*, 852 F.3d 868, 874 (9th Cir. 2017) ("health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions.").[3]  The Ninth Circuit still held that ERISA complete preemption applied because the plaintiff sought "money under the terms of an ERISA plan." *Melamed*, 557 F. App'x at 661.

The same is true here.  Like the *Melamed* plaintiff, Bristol seeks money under the terms of the Patients' ERISA health insurance plans.  *See* MJP Opp'n at 5-7; *infra* Section I.C.1.  That claim is within the scope of ERISA § 502(a)(1)(B) and is completely preempted.  *See Melamed*, 557 F. App'x at 661; *Fossen*, 660 F.3d at 1111; *Cleghorn*, 408 F.3d at 1225.  As in *Melamed*, complete preemption applies even though Bristol cannot assert a valid claim under ERISA § 502(a).  *See DB Healthcare*, 852 F.3d at 874.  That result is consistent with the purpose of complete preemption.  It ensures that *all* claims for ERISA benefits, even improper ones like Bristol's, are adjudicated in federal court.  *See In re Miles*, 430 F.3d 1083, 1091-92 & n.3 (9th Cir. 2005) (recognizing that "complete preemption" applies even where plaintiffs "do not have standing to recover damages under" the federal act); *N.J. Carpenters Annuity Fund v. Meridian Diversified Fund Mgmt., LLC*, 2011 U.S. Dist. LEXIS 50359, at *16-17 (S.D.N.Y. May 11, 2011) ("Improper claims are still 'within the scope' of § 502(a) in the sense of being completely preempted.").

*Melamed* and this case fundamentally differ from the case Bristol claims is "controlling," *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir. 2009).  *See* Remand Mot. at 3.  In *Marin*, unlike *Melamed* and this case, *all* the claims arose from contracts and duties independent of any ERISA plan with no claim to money "owed under the patient's ERISA plan." *Marin*, 581 F.3d at 497.  Likewise, the other Ninth Circuit cases cited by Bristol are inapplicable as they involved claims not seeking ERISA plan benefits.  *See Meadows v. Emp'rs Health Ins.*, 47 F.3d 1006, 1110 (9th Cir. 1995); *Blue Cross v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d

---

[3] Though Bristol suggests that the *Melamed* district court found that the plaintiff could bring an ERISA claim (Remand Mot. at 11), the Ninth Circuit did not address that issue and such a finding would be directly contrary to settled law.  *See Melamed*, 557 F. App'x at 661; *DB Healthcare*, 852 F.3d at 873.

1   1045, 1051 (9th Cir. 1999).  Here, Bristol seeks "money under the terms of an ERISA plan."

2   *Melamed*, 557 F. App'x at 661.  Thus, *Melamed* controls, and removal was proper.

3       **C.      Bristol's Claims Satisfy *Davila*'s Two-Prong Test for Complete Preemption.**

4       *Davila*'s two-prong test confirms that Bristol's claims, just like the on-point claims in

5   *Melamed*, are completely preempted by ERISA.  The first prong is satisfied because Bristol seeks

6   ERISA plan benefits that the Providers or their Patients could have sued to recover under ERISA

7   § 502(a).  The second prong is satisfied because the duty to pay benefits under an ERISA-governed

8   health insurance policy arises only under ERISA.  While Bristol may have other non-preempted

9   claims, the "existence of other nonpreempted claims will not save the case from federal removal

10  jurisdiction."  *Melamed*, 557 F. App'x at 661.

11          **1.      The first prong of *Davila*'s test is satisfied.**

12              **a.      Bristol seeks money under the Patients' ERISA plans.**

13      Bristol made clear in its October 29 Opposition that it seeks money under the terms of the

14  Patients' ERISA health insurance plans.  Specifically, Bristol argued that its claims are associated

15  with the Providers' Accounts Receivable because they seek to recover "health care insurance

16  receivables" under Cal. U. Com. Code § 9102(a)(2).  MJP Opp'n at 5-7.  A "health care insurance

17  receivable" is as "an interest in or claim under a policy of insurance which is a right to payment of

18  a monetary obligation for health care goods or services provided or to be provided."  Cal. U. Com.

19  Code § 9102(a)(46).  There is no question that a "right to payment" due "under a policy of

20  insurance" for "health care goods or services provided" includes the right to payment for medical

21  services under the Patients' health insurance plans, most of which are ERISA-governed plans.

22  Indeed, Bristol has acknowledged that a claim for payment for "services . . . covered by health

23  insurance policies" is a claim under ERISA § 502(a).  *See* Federal Compl. ¶¶ 6-8, 22-23.

24      For that reason, the Eleventh Circuit has recognized that state-law claims to recover

25  payments constituting "health care insurance receivables" are completely preempted by ERISA.

26  *See Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, 2005 U.S. App.

27  LEXIS 29624, at *4-5 (11th Cir. Mar. 18, 2005).  In that case, the Eleventh Circuit noted that claims

28  to recover "health care insurance receivables," in substance, seek ERISA plan benefits and would

"'duplicate' or 'supplement' the remedy provided by ERISA § 502." *Id.*  The court therefore agreed there was a "strong argument" that such claims are completely preempted by ERISA.  *Id.*  Bristol cannot avoid this on-point decision by noting that it was decided under Florida law.  *See* Remand Mot. at 12.  The Florida and California versions of the Uniform Commercial Code include the *same* definition of "health care insurance receivables."  *Compare* Cal. Com. Code § 9102(a)(46), *with* Fla. Stat. Ann. § 679.1021(1)(tt); *see also Surgicore, Inc. v. Principal Life Ins. Co.*, 2002 U.S. Dist. LEXIS 9122, at *10-12 (N.D. Ill. May 21, 2002) (applying ERISA conflict preemption to claim for payments constituting "health care insurance receivables" under Illinois law).

Bristol does not meaningfully dispute that "health care insurance receivables" include payments under the Patients' ERISA health insurance plans.  Instead, Bristol tries to distance itself from its prior statements, claiming they are "*dicta* in [its] brief, presented for purposes of illustration only."  Remand Mot. at 21.  This argument misstates the record.  In the Opposition, Bristol tried to avoid dismissal by arguing that the term "Account Receivable" "includes health care insurance receivables."  MJP Opp'n at 5-7.  Bristol cannot walk-back its statements by labeling them "dicta" (a concept that does not even apply to briefs).  It is well-established that a party cannot secure remand by disavowing statements or allegations that establish federal jurisdiction.  *See Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998); *Hill v. Hill-Love*, 509 F. App'x 605, 606 (9th Cir. 2013).

Indeed, Bristol has made other statements in post-removal briefs further confirming that it seeks, in substance, payment of benefits under ERISA-governed health insurance policies.  For example, in a November 19 filing in bankruptcy court, Bristol acknowledged that this action concerns "certain accounts receivables, namely delinquent *insurance payments*."  Holly Decl., Ex. M at 2 (emphasis added).  Likewise, in discovery motions, Bristol argued that United's defenses implicate "cross plan offsetting," which, by definition, concerns plan benefits.  *See* Holly Decl., Ex. K at 6, Ex. L at 3.  Bristol cannot back away from these statements and arguments, all of which make clear that it seeks to recover payment of ERISA-governed health insurance benefits.

None of Bristol's other arguments alter the conclusion that *Davila*'s first prong is satisfied:

1.     First, Bristol claims that "[a]t no time has [it] asserted that *all* of the patients had ERISA governed plan[s]."  Remand Mot. at 12 (emphasis added).  But Bristol has acknowledged that most of the Patients participated in ERISA-governed health plans.  *See* State Compl. ¶ 9; Federal Compl. ¶ 22.  That is sufficient for removal purposes.  *See Fossen*, 660 F.3d at 1110 ("Because at least some of the contracts at issue in this action are ERISA plans, this lawsuit falls within the scope of ERISA § 502(a).").

2.     Next, Bristol claims that "no employer self-funded plan is a named defendant." Remand Mot. at 20.  That is irrelevant.  The Ninth Circuit has recognized repeatedly that ERISA can completely preempt claims against plan administrators or insurers like United.  *E.g.*, *Melamed*, 557 F. App'x at 661; *Foseen*, 660 F.3d at 1109-12; *Cleghorn*, 408 F.3d at 1225-27.

3.     Bristol argues that removal to federal court was "preclu[ded]" because the state court ruled on ERISA *conflict* preemption.  Remand Mot. 1-2, 6, 19.  This argument ignores the fact that Bristol revealed the grounds for ERISA complete preemption *after* the state court's conflict preemption ruling.  *See* Demurer Order at 1.  Moreover, this argument confuses basis ERISA principles.  ERISA "conflict" preemption (a defense) is a different doctrine based on a different statutory provision than ERISA "complete" preemption (a jurisdictional doctrine).  *See Marin*, 581 F.3d at 945.  A claim may be completely preempted, yet not conflict preempted.  *See Cleghorn*, 408 F.3d at 1225.  And a defendant's "assertion of preemption as an affirmative defense . . . does not equate to an admission that it had sufficient facts to justify removal based on complete preemption."  *Clark v. Unum Life Ins. Co. of Am.*, 95 F. Supp. 3d 1335, 1356 n.15 (M.D. Fla. 2015). Here, United asserted the defense of *conflict* preemption in the State Court Action (Demurrer at 15-20), and the state court issued a ruling on *conflict* preemption (Demurer Order at 3-4).  Contrary to Bristol's suggestion, the issue of complete preemption was not "already answered" in the State Court Action, nor would that make sense given that complete preemption is a doctrine of federal jurisdiction.  Remand Mot. at 3.

4.     Finally, Bristol spends pages knocking down a strawman "argument that Plaintiff's claims are preempted merely from the presence of some assignments."  Remand Mot. at 9-12. United did not remove on that basis.  *See* Dkt. No. 1 at 4-6.  What triggered ERISA complete

DEFENDANT'S OPPOSITION TO MOTION TO REMAND                    CASE NO. 4:20-cv-07804-JSW

preemption and removal was Bristol's revelation that it seeks money under ERISA health insurance plans, not the mere existence of assignments from the Patients to the Providers.  *See id.*  Those assignments are relevant because they demonstrate that the Providers could have brought ERISA claims, but they are not themselves the basis for ERISA complete preemption.  In sum, the rights in question—benefits under ERISA plans—are within the scope of ERISA § 502(a)(1)(B).

><b>      b.     The Patients or Providers could have asserted ERISA claims to recover the "health care insurance receivables."</b>

Bristol seeks ERISA plan benefits within the scope of ERISA § 502(a), and it is clear that "an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)." *Fossen*, 660 F.3d at 1107-08 (quoting *Davila*, 542 U.S. at 210 and *Marin*, 581 F.3d at 946).  The Patients could have brought claims under § 502(a)(1)(B) to recover the "health care insurance receivables" sought by Bristol.  Likewise, the Providers, who had assignments of benefits from the Patients, could have brought claims under § 502(a)(1)(B) to recover the "health care insurance receivables."   State Compl. ¶ 23 ("the Patients' insurance benefits had been assigned to the Providers"); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014) (recognizing that a medical provider can assert ERISA claims "relying on its patients' assignments of their benefits claims").  Had those claims been asserted in state court, they would have been completely preempted by ERISA.  *See, e.g.*, *Kos v. Aetna Health, Inc.*, 2017 U.S. Dist. LEXIS 91380, at *6-8 (D. Nev. June 14, 2017).

Because the Patients or the Providers "could have brought the claim under ERISA § 502(a)(1)(B)," *Davila*'s first prong is satisfied.  *Fossen*, 660 F.3d at 1107-08 (quoting *Davila*, 542 U.S. at 210 and *Marin*, 581 F.3d at 946); *see also Bay Area Surgical Mgmt., Ltd. Liab. Co. v. Blue Cross Blue Shield of Minn. Inc.*, 2012 U.S. Dist. LEXIS 99968, at *11 (N.D. Cal. July 17, 2012) (finding that a healthcare provider's claims "meet the first prong of the *Davila* test because the *patient* could have brought these causes of action") (emphasis added).

><b>      c.     Bristol cannot evade complete preemption merely because *it* cannot assert an ERISA claim.</b>

Bristol cannot escape ERISA complete preemption merely because *it* lacks the statutory authority to assert a claim under ERISA § 502(a).  *See* Remand Mot. at 13-16.  As the Ninth Circuit

has confirmed, the broad reach of complete preemption ensures that *all* claims for ERISA benefits, even improper ones like Bristol's, are adjudicated in federal court.

ERISA complete preemption turns on the relief sought (plan benefits), not the identity of the person seeking the relief.  The question is whether "*an individual*"—not the particular plaintiff—"at some point in time, could have brought the claim under ERISA § 502(a)(1)(B)." *Fossen*, 660 F.3d at 1107; *see Marin*, 581 F.3d at 946 ("an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)"); *Blakney v. Prasad*, 817 F. App'x 504, 505 (9th Cir. 2020) (same); *Bay Area*, 2012 U.S. Dist. LEXIS 99968, at *11 (finding that claims "meet the first prong of the *Davila* test because the patient could have brought these causes of action").  Here, that test is met because the Patients or the Providers could have asserted ERISA claims to recover the money sought by Bristol.  It makes no difference that Bristol itself could not do so.

As noted, *Melamed* confirms that ERISA completely preempts claims that duplicate ERISA remedies, even if the particular plaintiff cannot assert a cognizable ERISA claim.  *See* Section I.B. In *Melamed*, the plaintiff medical provider sued as a "third party beneficiary," a theory that was fatally deficient under settled Ninth Circuit law.  557 F. App'x at 661; *see DB Healthcare*, 852 F.3d at 874 ("We have held before, and reiterate now, that health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions"); *Spinedex*, 770 F.3d at 1289 (same). Even though the plaintiff was barred from asserting a claim under ERISA § 502(a), the Ninth Circuit still held that ERISA complete preemption applied because the plaintiff sought "money under the terms of an ERISA plan." *Melamed*, 557 F. App'x at 661.

*Melamed* is in keeping with the Ninth Circuit's decision in *In re Miles*, 430 F.3d at 1091-92.  There, the Ninth Circuit evaluated the scope of "complete preemption" under multiple federal statutes, including "section 502 of ERISA."  *Id.*  The court held that "complete preemption" applies even where plaintiffs "do not have standing to recover damages under" the applicable federal statute (there, the National Bank Act).  As the court explained, the "focus" of the complete preemption analysis is "not on the parties protected but on whether Congress intended to provide an 'exclusive cause of action.'"  *Id.* (citing *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 9 & n.5 (2003)).[4]  For that

---

[4] In so holding, the Ninth Circuit disavowed prior "ERISA cases" suggesting that standing was a

1   reason, whether Congress permitted the particular plaintiff "to recover under the exclusive federal

2   cause of action it created" is not "a predicate to federal removal jurisdiction." *Id.*

3       *Melamed* and *In re Miles* are consistent with numerous decisions holding that a claim "need

4   not be cognizable" under ERISA § 502(a) "in order to fall 'within the scope' of the provision for

5   purposes of the jurisdictional analysis" of ERISA complete preemption. *Plumbing Indus. Bd.,*

6   *Plumbing Local Union No. 1 v. E.W. Howell Co.*, 126 F.3d 61, 69 (2d Cir. 1997). For example,

7   ERISA completely preempts claims seeking "remedies beyond those authorized by ERISA

8   § 502(a)." *Davila*, 542 U.S. at 214; *e.g.*, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678

9   (3d Cir. 2000). It also preempts claims against "a defendant not liable under ERISA." *Romney v.*

10  *Lin*, 105 F.3d 806, 813 (2d Cir. 1997). And it preempts claims brought by parties like Bristol who

11  "may not be the proper plaintiffs to bring an enforcement action under § 502(a)." *N.J. Carpenters*,

12  2011 U.S. Dist. LEXIS 50359, at *14-17; *see also Smith v. Provident Bank*, 170 F.3d 609, 616 (6th

13  Cir. 1999) (applying ERISA complete preemption even though the plaintiff lacked "standing to sue

14  for breach of fiduciary duty under ERISA"); *accord Maker v. FDIC*, 441 F.3d 522, 525 (7th Cir.

15  2006) ("Even if the complaint may fail to state a claim upon which relief may be granted, the court

16  has subject matter jurisdiction over the disposition of the ERISA claim."); *Primax Recoveries, Inc.*

17  *v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006) (same).

18      This conclusion is also consistent with the purpose of ERISA complete preemption. The

19  doctrine "ensure[s] that employee benefit plan regulation" remains "*exclusively* a federal concern."

20  *Davila*, 542 U.S. at 208 (emphasis added; quotation omitted). This is true even where the plaintiff

21  attempts to bring a claim for benefits not "authorized by ERISA § 502(a)" or one that does not

22  "precisely duplicates a cause of action under ERISA § 502(a)." *Id.* at 214-16. Complete

23  preemption means that an ERISA enforcement action should be dealt with in federal court even if

24  the plaintiff cannot state a cognizable ERISA claim:

25          To allow [a plaintiff] to pursue in state court a civil enforcement

26          action so closely tied to the limited actions provided for by Congress
           precisely because Congress prohibited the [plaintiff] from bringing

27  perquisite to complete preemption, explaining that those cases "were decided before *Beneficial National Bank v. Anderson*, which expanded the scope of the complete preemption analysis." *In*

28  *re Miles*, 430 F.3d at 1091-92 & n.3.

1

2

> any such civil enforcement action in federal court would turn the
> purpose of complete preemption on its head. . . . . Improper claims
> are still 'within the scope' of § 502(a) in the sense of being
> completely preempted.

3

4

5

*N.J. Carpenters*, 2011 U.S. Dist. LEXIS 50359, at *13-17. The same is true here. Bristol's claims

to recover ERISA plan benefits are completely preempted regardless of whether Bristol itself could

assert ERISA § 502(a) claims.

6

7

8

9

10

11

12

13

14

Bristol cannot escape preemption by suggesting that its inability to state a cognizable

ERISA claim "divests the Court of subject matter jurisdiction and requires the matter be remanded

to state court." Remand Mot. at 16. The Ninth Circuit has rejected that argument: "our cases

discussing whether a plaintiff is authorized to sue under ERISA's civil enforcement provisions

often refer to the question as whether the plaintiff has 'standing' or 'statutory standing' to sue under

ERISA. This common shorthand suggests that subject matter jurisdiction may also be at stake. It

is not. The question whether Congress has granted a private right of action to a particular plaintiff

is *not* a jurisdictional requirement." *DB Healthcare*, 852 F.3d at 874 (citations omitted). This

Court has jurisdiction.

15

16

17

18

19

20

Finally, Bristol claims there is a strict rule that *the* plaintiff must "have standing to bring an

ERISA claim" in order to trigger ERISA complete preemption. Remand Mot. at 2-3, 13-15. But

*Melamed* and *In re Miles* reject such a strict standing requirement. *See In re Miles*, 430 F.3d at

1091 ("complete preemption is appropriate here, despite [plaintiffs'] argument that [] they do not

have standing to recover damages"). And the cases that Bristol cites do not support that rule. In

all those cases, the plaintiffs did not seek money under ERISA plans; they sought money under

21

22

23

24

25

26

27

28

network provider contracts[5] or asserted other claims independent of ERISA plan benefits.[6]  Thus, *no* party could have raised the claims through an ERISA § 502(a) claim.  The courts' discussion of a "lack of standing" simply reflects the fact that the claims at issue were not, in substance, ERISA claims.  Here, by contrast, Bristol clearly seeks benefits under ERISA-governed health insurance plans that the Providers (or their Patients) could have sued to recover under ERISA § 502(a).  *See* Section I.C.1.a-b.  Notably, Bristol cites no case—and United is not aware of any—in which a court has not applied ERISA complete preemption where an individual could have asserted the claim under ERISA § 502(a).  For all these reasons, *Davila*'s first prong is satisfied.

### 2.     The second prong of *Davila*'s test is satisfied.

*Davila*'s second prong—"no other independent legal duty that is implicated"—is also satisfied because the duty to pay ERISA claims pursuant to the terms of ERISA plans arises only under ERISA.  *See Davila*, 542 U.S. at 210 ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit [under section 502(a)(1)(B)] seeking provision of those benefits.").  Courts uniformly recognize that such claims

---

[5] *E.g.*, *Cedars-Sinai Med. Ctr. v. Am. Apparel, Inc.*, 2014 U.S. Dist. LEXIS 94857, at *6 (C.D. Cal. July 11, 2014) ("relief on the basis of its separate agreement with defendant"); *Lodi Mem'l Hosp. Ass'n v. Am. Pac. Corp.*, 2014 U.S. Dist. LEXIS 148986, at *3 (E.D. Cal. Oct. 20, 2014) (suing "under the terms of the Agreement" with payor); *Port Med. Wellness Inc. v. Conn. Gen. Life Ins. Co.*, 2013 U.S. Dist. LEXIS 134612, at *2 (C.D. Cal. Sep. 18, 2013) (claims under "Participating Practitioner Agreement"); *Bay Area Surgical Mgmt., Ltd. Liab. Co. v. Blue Cross Blue Shield of Minn. Inc.*, 2012 U.S. Dist. LEXIS 99968, at *19 (N.D. Cal. July 17, 2012) ("This cause of action arises from a contract between the Blue Cross and Bay Area."); *Lodi Mem'l Hosp. Ass'n v. Aetna Health Plans of Cal., Inc.*, 2013 U.S. Dist. LEXIS 130770, at *9 (E.D. Cal. Sep. 10, 2013) ("claims arising from two written contracts"); *Fresno Cmty. Hosp. & Med. Ctr. v. UFCW Emplrs. Benefit Plan of N. Cal. Grp. Admin., LLC*, 2006 U.S. Dist. LEXIS 94700, at *19 (E.D. Cal. Dec. 19, 2006) ("Plaintiff is simply attempting . . .  to enforce the reimbursement contract").

[6] *E.g.*, *Roohipour v. ILWU-PMA Welfare Plan*, 2020 U.S. Dist. LEXIS 14775, at *3 (C.D. Cal. Jan. 28, 2020) ("independent contractual obligations"); *Reiten v. CIGNA Health & Life Ins. Co.*, 2020 U.S. Dist. LEXIS 65372, at *10 (C.D. Cal. Apr. 14, 2020) ("independent legal contractual obligations"); *Galileo Surgery Ctr., L.P. v. Aetna Health & Life Ins. Co.*, 2015 U.S. Dist. LEXIS 25942 (C.D. Cal. Mar. 3, 2015) ("not claims for benefits under the terms of ERISA plans"); *John Muir Health v. Cement Masons Health & Welfare Tr. Fund for N. Cal.*, 69 F. Supp. 3d 1010, 1015 (N.D. Cal. 2014) (not "seeking to recover ERISA-regulated benefits"); *L.A. Sleep Studies Inst. v. Anthem Blue Cross Life & Health Ins. Co.*, 2014 U.S. Dist. LEXIS 151287, at *13 (C.D. Cal. Oct. 23, 2014) ("implied contracts separate from an ERISA plan"); *Temple Hosp. Corp. v. Gomez*, 2014 U.S. Dist. LEXIS 33166, at *6 (C.D. Cal. Mar. 11, 2014) ("duties do not arise out of ERISA"); *Orthopedic Specialists v. IlWU-PMA Welfare Plan*, 2013 U.S. Dist. LEXIS 27940, at *15 (C.D. Cal. Feb. 28, 2013) ("independent legal duty based on its alleged oral contract"); *Ghosh v. Aetna Health of Cal., Inc.*, 2012 U.S. Dist. LEXIS 142673, at *16 (S.D. Cal. Oct. 2, 2012) ("claims do not directly concern the patients' benefits under their respective plans").

seeking ERISA plan benefits are completely preempted regardless of whether the plaintiff dresses the claim "in the garb of a state law" claim.  *Cleghorn*, 408 F.3d at 1226 (quotation omitted); *see also Davila*, 542 U.S. at 214; *Melamed*, 557 F. App'x at 661; *Filler*, 593 F. App'x at 686.

For example, in *Melamed*, the plaintiff asserted only state law claims, including breach of implied contract, quantam meruit, and violations of California statutes.  *Melamed*, 2011 U.S. Dist. LEXIS 91374, at *2.  The Ninth Circuit concluded that ERISA completely preempted those claims to the extent they seek "reimbursement for benefits that exist only because of the defendant's administration of ERISA-regulated benefit plans."  *Melamed*, 557 F. App'x at 661. While some of the plaintiff's claims may not have been preempted, "the existence of other nonpreempted claims will not save the case from federal removal jurisdiction."  *Id.*; *see also Fresno Cmty. Hosp. & Med. Ctr. v. Souza*, 2007 U.S. Dist. LEXIS 51700, at *7-16 (E.D. Cal. July 3, 2007) (similar); *Kos*, 2017 U.S. Dist. LEXIS 91380, at *6-9 (similar).

Likewise, in *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, the court concluded that ERISA complete preemption applied although the plaintiff asserted some non-preempted claims. 25 F. Supp. 3d 951, 961-64 (W.D. Tex. 2014).  The *Innova* plaintiff, like Bristol, asserted state contract and quasi-contract claims against an insurer based on alleged statements during patients' verification-of-benefit calls.  *Id.* at 952-55.  Like Bristol, the *Innova* plaintiff then went a step further and revealed that it also sought recovery under the "policies of insurance and/or the health plans which covered the patients."  *Id.* at 960.  The court held that removal was proper because the plaintiffs' "claims stray from the boundaries of the [non-preempted claims] into ERISA territory," so "portions of their claims arise solely under ERISA or ERISA plans and not from any independent legal duty."  *Id.* at 961.

The same is true here.  ERISA completely preempts Bristol's claim to the extent they seek benefits under the Patients' ERISA health plans.  While Bristol may have other non-preempted claims arising from "independent duties," the "existence of other nonpreempted claims will not save the case from federal removal jurisdiction."  *Melamed*, 557 F. App'x at 661.

-17-

## II.     United's Notice of Removal Was Timely.

The record refutes Bristol's claim that United's removal to federal court was "untimely." Remand Mot. at 18-19.  United filed a notice of removal *six days* after Bristol first revealed that its claims are completely preempted by ERISA.  United's prompt filing was timely.

Bristol admits that its complaint did not disclose any basis for removal to federal court.  *See* Remand Mot. at 3.  Where, as here, "the case stated by the initial pleading is not removable," a "notice of removal may be filed within thirty (30) days after receipt by the defendant" of a "paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Briefs filed in state court are the type of "paper" that can reveal federal jurisdiction and thereby trigger removal.  *See, e.g.*, *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 779 (9th Cir. 1994); *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1142 (9th Cir. 2017).  However, courts do not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

*Eyak* illustrates how state court briefing can reveal federal jurisdiction and trigger removal. In *Eyak*, the Ninth Circuit agreed that the plaintiffs' "reply brief triggered removal" even though it was filed "several years" into the underlying state court litigation.  25 F.3d at 774-75, 779. Although that "reply brief did not change the basic theory and nature of the claims," the brief "made clear" for the first time that plaintiffs "intended to pursue additional relief" that implicated a federal question and thus triggered removal.  *Id.* at 779.

Courts similarly recognize that post-pleading filings can reveal that a claim is completely preempted by ERISA and thus removable.  *See, e.g.*, *Bethesda Chevy Chase Surgery Ctr., LLC v. UnitedHealthcare Ins. Co.*, 2016 U.S. Dist. LEXIS 70150, at *5-18 (D. Md. May 27, 2016) (provider-plaintiff revealed post-pleading that its claims were "completely preempted by ERISA"); *Innova*, 25 F. Supp. 3d at 964-65 (same); *Feldman's Med. Ctr. Pharmacy, Inc. v. Carefirst, Inc.*, 723 F. Supp. 2d 814, 821-22 (D. Md. 2010) (same).

That is what occurred here.  On October 29, 2020, Bristol filed its Opposition that revealed that it seeks to recover ERISA plan benefits.  *See* Section I.C.  As explained, such a claim for

-18-

ERISA plan benefits is completely preempted by ERISA and thus removable to federal court. Six days after Bristol revealed this basis for removal, United filed its notice of removal (Dkt. No. 1), well within the 30-day window for removal. *See* 8 U.S.C. §1446(b).

That basis for removable was unavailable before October 29. Until then, Bristol had never alleged or argued in the State Court Action that it sought to recover "health care insurance receivables" or otherwise disclosed that it sought ERISA plan benefits. To the contrary, Bristol had maintained the *opposite* position prior to October 29. For example, the Complaint alleges: "Bristol does not seek to enforce the contractual rights of the Providers' Patients through their insurance contracts, policies, certificates of coverage, or any other written insurance agreement between the Patients and Defendants." State Compl. ¶ 14. And Bristol represented to the state court that "all causes of action in the Complaint are . . . are not derivative of any claims which may have belonged to patients or arising from any patient's insurance plan." Holly Decl., Ex. E at 11. On October 29, Bristol shifted theories to avoid dismissal by arguing that it *does* seek payments under the patients' ERISA plans. That shift triggered ERISA complete preemption and removal.

Bristol's remand motion all but ignores the statements in its Opposition that triggered removal. Instead, Bristol emphasizes irrelevant parts of the record that have "not changed." For example, Bristol notes that the "operative complaint has not changed" (Remand Mot. at 19), but removal was not based on allegations in the complaint. Likewise, Bristol claims "United had the full medical records from all patients relevant to this case for more than a year" (*id.* at 18), but again, removal was not based on the contents of the medical record.

Finally, Bristol claims its Opposition revealed "nothing new" because the litigation has always concerned "payment for healthcare services" (*id.* at 18), but that misses the point. Prior to the Opposition, Bristol had insisted that it was asserting claims outside the scope of ERISA based on independent promises to pay for "health care services." See, e.g., State Compl. ¶ 14. Bristol shifted to avoid dismissal and took a fundamentally different position in the Opposition, claiming that it seeks payments arising from ERISA-governed health insurance plans. Bristol had never previously alleged or argued in the State Court Action that it sought to recover ERISA plan benefits, so any earlier removal notice would have been premature. *See Chan*, 844 F.3d at 1142 ("a

-19-

1  defendant is not put to the impossible choice of subjecting itself to fees and sanctions by filing a

2  premature (and baseless) notice of removal").  United's removal was timely.

3  **III.   An Award of Fees and Costs Is Not Warranted.**

4      Should the Court remand this action to state court, an award of fees and costs is not

5  warranted.  This case raises complex issues of complete preemption based on a complex set of

6  facts.  The three circuit court decisions that come closest to resolving those issues—*Melamed*,

7  *Anesthesiology Assocs. of Tallahassee*, and *In re Miles*—all support removal.  Thus, United's

8  removal was objectively reasonable, precluding an award of fees.  In any event, Bristol failed to

9  follow the mandatory procedure for requesting such an award.

10     **A.   United's Removal Was Objectively Reasonable.**

11     "Absent unusual circumstances, courts may award attorney's fees . . . only when the

12  removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin*

13  *Capital Corp.*, 546 U.S. 132, 141 (2005).  "[W]hether a removal is improper is not dispositive in

14  determining whether fees should be awarded."  *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007).

15  Rather, as Bristol agrees, the "test for objective reasonableness is whether the relevant case law

16  clearly foreclosed the defendant's basis for removal."  Remand Mot. at 22 (quoting *Beauford v.*

17  *E.W.H. Grp., Inc.*, 2009 U.S. Dist. LEXIS 94985, at *5 (E.D. Cal. Sep. 28, 2009)).

18     Here, as set forth above, United had an objectively reasonable basis for removing this

19  action.  Among other things, the Ninth Circuit's decision in *Melamed* directly supports removal.

20  *See* Section I.B.  The Eleventh Circuit has noted there is a "strong argument" that ERISA

21  completely preempts claims like Bristol's seeking to recover payments constituting "health care

22  insurance receivables" under state commercial codes.  *Anesthesiology Assocs. of Tallahassee*, 2005

23  U.S. App. LEXIS 29624, at *4-5.  And the Ninth Circuit's decision in *In re Miles* holds that

24  "complete preemption" applies even where plaintiffs like Bristol "do not have standing to recover

25  damages under" the applicable federal statute.  430 F.3d at 1091-92.  These decisions, and the other

26  legal authorities discussed above, provide a clear and objectively reasonable basis for removal.

27     Moreover, "the complicated nature of ERISA and, in particular, its preemption provisions"

28  militate against awarding fees on a remand motion.  *Kilfoyle v. Hill*, 2020 U.S. Dist. LEXIS 4461,

-20-

at *15 (N.D. Ohio Jan. 10, 2020); *see also Roohipour*, 2020 U.S. Dist. LEXIS 14775, at *16 (declining to award fees because the "scope of ERISA preemption is broad").  Indeed, this Court often declines to award fees where a provider seeks benefits that arguably fall within the scope of ERISA complete preemption.  *E.g.*, *Cal. Spine & Neurosurgery Inst. v. Bos. Sci. Corp.*, 2019 U.S. Dist. LEXIS 75224, at *14 (N.D. Cal. May 3, 2019); *San Ramon Reg'l Med. Ctr., Inc. v. Principal Life Ins. Co.*, 2011 U.S. Dist. LEXIS 4100, at *13-14 (N.D. Cal. Jan. 10, 2011); *Hill Physicians Med. Grp., Inc. v. PacifiCare of Cal.*, 2001 U.S. Dist. LEXIS 6051, at *16 (N.D. Cal. Apr. 23, 2001).  Bristol's various arguments for an award fees have no merit.

1.    First, Bristol falsely accuses United of "disregarding" *Marin* in its "removal papers."  Remand Mot. at 23.  The Notice of Removal expressly acknowledges and distinguishes *Marin*.  *See* Dkt. 1 at 6 (explaining why "cases such as *Marin . . .* do not preclude removal of this matter").  As discussed in the Notice of Removal and above, the Ninth Circuit's decision in *Melamed*, not *Marin*, should controls the outcome of Bristol's remand motion.  *See* Section I.B.

2.    Next, ignoring the dozens of cases in which United has defeated medical providers' remand motions,[7] Bristol cites five decisions granting such motions.  *See* Remand Mot. at 4, 24-25.  Those cases involved different issues and claims, and notably, only one of those decisions even considered fees, and it held that "United . . . had an objectively reasonable basis for removal."  *Regents for the Univ. of Cal*, 2012 U.S. Dist. LEXIS 138530, at *13 (S.D. Cal. Sept. 24, 2014).

---

[7] *See, e.g.*, *Emergency Grp. of Ariz. Prof'l Corp. v. United Healthcare Inc.*, 448 F. Supp. 3d 1077, 1086 (D. Ariz. 2020); *Iv Solutions, Inc. v. United Healthcare Servs.*, 2012 U.S. Dist. LEXIS 195953, at *19 (C.D. Cal. Aug. 27, 2012); *ACS Primary Care Physicians Sw., P.A. v. Unitedhealthcare Ins. Co.*, 2020 U.S. Dist. LEXIS 153260, at *25 (S.D. Tex. Aug. 17, 2020); *S. Fulton Dialysis, LLC v. Anita Taylor Caldwell & United Healthcare*, 428 F. Supp. 3d 1346, 1354 (N.D. Ga. 2019); *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, 2017 U.S. Dist. LEXIS 99249, at *22 (S.D. Fla. June 26, 2017); *Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of La., Inc.*, 2015 U.S. Dist. LEXIS 27673, *20-21 (M.D. La. Jan. 7, 2015); *Plastic Surgery Group, P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468 (E.D.N.Y. 2014); *Mem'l Hermann Hosp. Sys. v. UnitedHealthcare Ins. Co.*, 2012 U.S. Dist. LEXIS 3584, at *14 (S.D. Tex. Jan. 11, 2012); *Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*, 2012 U.S. Dist. LEXIS 41793, at *31 (N.D. Tex. Mar. 27, 2012); *Josephson v. United Healthcare Corp.*, 2012 U.S. Dist. LEXIS 144830, at *10 (E.D.N.Y. Sept. 8, 2012); *Found. Ancillary Servs., L.L.C. v. United Healthcare Ins. Co.*, 2011 U.S. Dist. LEXIS 119756, at *22 (S.D. Tex. Oct. 17, 2011); *De La Pedraja v. Unitedhealthcare of Fla.*, 2010 U.S. Dist. LEXIS 159555, at *10 (S.D. Fla. Aug. 20, 2010).

3.      Bristol also seeks to justify its request for fees with personal attacks on United's counsel.  *See, e.g.*, Remand Mot. at 25 ("pretextual," "dilatory").  These gratuitous attacks are irrelevant and unfounded.  They seem to stem from Bristol's belief that United filed a notice of removal on November 5 "to avoid adverse state court's rulings" on pending motions.  *Id.* at 13, 25. Not so.  As explained, United was forced to remove on November 5 due to the potential that Bristol might argue that state court filings, due on November 5, constituted waiver of the right to removal. *See Resolution Trust*, 43 F.3d at 1240 (a defendant "may waive the right to remove to federal court" by "tak[ing] actions in state court that manifest his or her intent to have the matter adjudicated there").  United's prompt removal was appropriate and not a basis for a fee award.

4.      Finally, Bristol wrongly suggests that removal was used to avoid discovery obligations.  *See* Remand Mot. at 7-8.  The opposite is true.  Shortly after removal, United offered to *accelerate* the discovery process and continue with discovery pending a decision on the remand motion; Bristol declined that offer.  *See* Holly Decl., Ex. N and Ex. O.  This clear record refutes Bristol's vague accusations about discovery.  There is no basis for an award of fees.

**B.      Bristol Failed to Follow the Mandatory Procedure for Requesting an Award of Attorneys' Fees.**

The Court also should deny Bristol's request for fees and costs because Bristol failed to follow the mandatory procedure for making such a request.  Under Civil L.R. 54-5(b), a "motion for attorney fees must be supported by declarations or affidavits containing" information about meet-and-confer efforts, services rendered and time spent, and customary hourly charges.  Civil L.R. 54-5(b) applies to requests for an award of "expenses, including attorney fees, incurred as a result of [a] removal."  *Romero v. Mortg. Co.*, 2011 U.S. Dist. LEXIS 69673, at *12-13 (N.D. Cal. June 28, 2011).  This Court has cautioned that "[f]ailing to comply with the local rules" constitutes "ground for the denial of a motion for attorney's fees."  *Ibrahim v. Dep't of Homeland Sec.*, 2014 U.S. Dist. LEXIS 53239, at *15 (N.D. Cal. Apr. 15, 2014).

Here, Bristol's motion has no such supporting declaration or affidavit, contains none of the information required by Civil L.R. 54-5(b), and includes no meet-and-confer certification.  The Court should therefore deny the request for fees.  *See, e.g.*, *Romero*, 2011 U.S. Dist. LEXIS 69673,

at *13 (denying request for fees on remand motion because it "lacked any supporting declaration or affidavit . . . as is required under Civ. L.R. 54-5(b)."); *Rose v. Bank of Am. Corp.*, 2015 U.S. Dist. LEXIS 64780, at *8-10 (N.D. Cal. May 18, 2015) (similar).

## **CONCLUSION**

For the reasons set forth above, United respectfully requests that the Court deny Bristol's motion for remand and request for fees and costs pursuant to 28 U.S.C. § 1447(c).

Dated:  December 7, 2020                           DORSEY & WHITNEY LLP

By:   */s/ Andrew Holly*
_____
Kent J. Schmidt
Andrew Holly (*admitted pro hac vice*)
Nicholas Bullard (*admitted pro hac vice*)

*Attorneys for Defendant United Behavioral Health*