Matthew M. Lavin, Esq. (*pro hac vice* forthcoming, if required)
Aaron R. Modiano, Esq. (*pro hac vice* forthcoming, if required)
NAPOLI SHKOLNIK PLLC
5757 W. Century Boulevard, Suite 680
Los Angeles, CA 90045
(212) 397-1000 / Fax (646) 843-7603
MLavin@napolilaw.com
AModiano@napolilaw.com

John W. Tower, Esq. #106425
LAW OFFICE OF JOHN W. TOWER
2211 Encinitas Blvd., 2nd Floor
Encinitas, CA  92024
(760) 436-5589 / Fax (760) 479-0570
Towerlawsd@gmail.com

Attorneys for Plaintiff
Bristol SL Holdings

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| BRISTOL SL HOLDINGS, INC.,<br>                    Plaintiff,<br>          vs.<br>UNITED BEHAVIORAL HEALTH, and<br>DOES 1 through 10,<br><br>                    Defendants. | Case No.: 20-cv-07804<br><br>PLAINTIFF'S REPLY POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND AND REQUEST FOR EXPENSES AND FEES<br><br>Date:          January 8, 2021<br>Time:          9:00a.m.<br>Courtroom:   Courtroom 5, 2nd Floor<br>Judge:        Hon. Jeffrey S. White |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

Table of Contents ................................................................................................................... i

Table of Authorities .............................................................................................................. ii

Summary of Argument ......................................................................................................... iv

I.      Introduction ................................................................................................................ 1

I.      Bristol Does Not and Has Never Advanced the Argument During This Litigation that
        Its Claims Arise Under the Terms of Any ERISA Plans ..................................................... 2

II.     United's *Davila* Arguments Are Incorrect and Inapposite .................................................. 5

        i.      United Fails to Establish the First Davila Prong Is Met ............................................... 5

        ii.     United Cannot Satisfy the Second Davila Prong. ..................................................... 10

III.    United Has Waived Any Right to Removal It Might Have Had ..................................... 12

IV.     United's Misrepresents Its Own Filings to the Court ......................................................... 13

V.      United Misrepresents the Bankruptcy Court Proceedings .................................................. 13

VI.     Conclusion ................................................................................................................ 15

1

2

**Table of Authorities**

3

**Cases**

4

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)........................................................................................... passim

5

*Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*,
   2005 WL 6717869 (11th Cir. Mar. 18, 2005)....................................................... 6, 7

6

7

*Bast v. Prudential Ins. Co. of Am.*,
   150 F.3d 1003 (9th Cir. 1998), *as amended* (Aug. 3, 1998)..................................... 11

8

*Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*,
   2012 WL 2919388 (N.D. Cal. July 17, 2012)........................................................ 12

9

*Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*,
   2012 WL 4058373 (N.D. Cal. Sept. 14, 2012) ...................................................... 12

10

11

*Bay Area Surgical Mgmt., LLC. v. United Healthcare Ins. Co.*,
   2012 WL 3235999 (N.D. Cal. Aug. 6, 2012) ...................................................... 8, 12

12

*Blakney v. Prasad*,
   817 F. App'x 504 (9th Cir. 2020)........................................................................... 8

13

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
   497 F.3d 972 (9th Cir. 2007) ................................................................................. 2

14

15

*Cleghorn v. Blue Shield of Cal.*,
   408 F.3d 1222 (9th Cir. 2005) ............................................................................... 9

16

*DFS Secured Healthcare Receivables Tr. II v. Willow Care, Inc.*,
   1998 U.S. Dist. LEXIS 21974 (N.D. Cal. July 28, 1998)........................................ 5

17

18

*Embarcadero Techs., Inc. v. TTI Team Telecom Techs., Inc.*,
   2006 WL 1820657 (N.D. Cal. June 30, 2006) ...................................................... 18

19

*Fossen v. Blue Cross & Blue Shield of Montana, Inc.*,
   660 F.3d 1102 (9th Cir. 2011) ............................................................................... 8

20

21

*Green v. Beard*,
   2017 WL 4546551 (E.D. Cal. Oct. 12, 2017)......................................................... 2

22

*In re Miles*,
   430 F.3d 1083 (9th Cir. 2005) ............................................................................. 11

23

24

*In re Nat'l Century Fin. Enters.*,
   2006 U.S. Dist. LEXIS 16612 (S.D. Ohio Feb. 27, 2006)........................................ 5

25

*Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*,
   25 F. Supp. 3d 951 (W.D. Tex. 2014) ................................................................. 14

26

27

*Laguna Commer. Capital, Ltd. Liab. Co. v. Se. Tex. EMS Ltd. Liab. Co.*,
   2011 U.S. Dist. LEXIS 146852 (C.D. Cal. Dec. 21, 2011).......................................... 6

28

ii

Reply Points and Authorities in Support of Motion to Remand and Request for Expenses and Fees
Bristol SL Holdings, Inc. v. United Behavioral Health, Inc. Case No.: 20-cv-07804

*LifeBrite Hosp. Grp. of Stokes, LLC v. Blue Cross & Blue Shield of N. Carolina*,
  2020 WL 1516337 (M.D.N.C. Mar. 30, 2020) ........................................... 7

*Lodi Mem'l Hosp. Ass'n, Inc. v. Am. Pac. Corp.*,
  2014 WL 5473540 (E.D. Cal. Oct. 20, 2014) ........................................... 10

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
  581 F.3d 941 (9th Cir. 2009) ...................................................... 8, 13, 14

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
  857 F.3d 141 (2d Cir. 2017) ........................................................ 7, 10

*Melamed v. Blue Cross of California*,
  557 F. App'x 659 (9th Cir. 2014) ................................................... 9, 10

*Moore v. Permanente Medical Group, Inc.*,
  981 F2d. 443 (9th Cir. 1992) .......................................................... 15

*Reiten v. CIGNA Health & Life Ins. Co.*,
  2020 WL 1862462 (C.D. Cal. Apr. 14, 2020) ........................................... 11

*Roohipour v. ILWU-PMA Welfare Plan*,
  2020 WL 472921 (C.D. Cal. Jan. 28, 2020) ............................................. 9

*Rosenberg v. DVI Receivables XVII, LLC*,
  835 F.3d 414 (3d Cir. 2016) ........................................................... 11

*Rutz v. Barnes-Jewish Hosp.*,
  2005 WL 8173649 (S.D. Ill. May 27, 2005) ............................................. 14

*Sheridan Healthcorp, Inc. v. Aetna Health Inc.*,
  161 F. Supp. 3d 1238 (S.D. Fla. 2016) ................................................. 7

*Sobertec LLC v. UnitedHealth Grp., Inc.*,
  2019 WL 4201081 (C.D. Cal. Sept. 5, 2019) ......................................... 9, 14

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
  770 F.3d 1282 (9th Cir. 2014) ......................................................... 5

**Statutes**

Cal. Com. Code § 9408 ..................................................................... 3

California Code of Civil Procedure § 438 .................................................. 9

iii

**Summary of Argument**

This matter is an action sounding in contract, fraud, and estoppel to hold United Behavioral Health ("United") accountable for 3,339 days of healthcare services it promised to pay for but hasn't. The document relied upon by United as their basis for removal is Bristol's response to United's Motion for Judgment on the Pleadings filed in state court. It is objectively unreasonable to interpret Bristol's response to United's motion as providing a new legal theory for Bristol's claims and a basis for federal removal.

The controlling Ninth Circuit case, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941 (9th Cir.2009), applies. Bristol's claims are state law causes of action that do not rely upon interpretation of any ERISA plan.  All of Plaintiff's claims arise from duties that are wholly independent of ERISA.  Bristol is not a traditional ERISA party and does not have standing to bring an ERISA § 502(a) claim. Bristol's does not bring its claims as an assignee.  Bristol's claims are not derivative of ERISA standing. This alone is sufficient to remand the case as it fails under the first prong of the test set forth in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). Neither is the second *Davila* prong satisfied either, as Bristol's claims rely on duties that arise well outside of ERISA.

This case has a significant history. It has been heavily litigated for more than a year in state court.  United's argument that Bristol's reference to 'health care receivables' in a motion response brief is disingenuous and taken out of context.  United lacks candor to this Court by ignoring a hearing and a ruling that occurred in the bankruptcy court four days *before* United filed its Response to Bristol's Motion to Remand in this court.

United's interpretation of 'health care receivables' is objectively unreasonable as Cal. Com. Code § 9408 does not implicate ERISA and is not preempted ERISA. If healthcare receivables were subject to ERISA preemption, they would not be regarded the same as any other receivable for purposes of perfecting security interests. Cal. Com. Code § 9408 applies to secured transactions, is not preempted by ERISA, and does not affect or otherwise cause Bristol's claims to be subject to complete preemption under ERISA.

As such, this matter should be remanded to the Superior Court of San Francisco and Plaintiff is entitled to an award of attorneys' fees for the costs of its motion to remand.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

United's removal of this action and the insincere, convoluted argument it presents in support of it, are nothing more than a desperate, last ditch attempt to avoid past and future adverse rulings against it by the Superior Court of San Francisco. This is the fifth court, over the span of fourteen months, that United has sought refuge in to avoid its impending liability to Plaintiff.  The judicial resources of this federal court should not be further taxed with this case.  It should be remanded quickly with a justifiable award of fees and costs to Plaintiff.

This is and always has been an action to hold United Behavioral Health ("United") accountable for $7,056,095.29, the amount it owes, before interest, for healthcare services it promised to pay for but still hasn't. United made hundreds of direct promises to pay these claims.  Each of those individual promises are intricately detailed in Plaintiff's 300-page state court complaint. United's Response to Plaintiff's Remand Motion (Dkt. 27) fails to explain or even address the fact that it has been litigating those promises in state court for a year, and then, only after losing its preemption arguments raised in the demurrer, answering the Complaint, engaging in voluminous discovery and facing an imminent hearing on its own motion for judgment on the pleadings, did it remove this case from the state court. By doing so, it avoided a ruling on its motion (which it apparently felt was going to lose) and a fast approaching trial date. It also avoided two pending discovery motions filed by Plaintiff which, if granted, would have required United to finally produce recordings and other records that it has been withholding. United's repeated assertion that Bristol unveiled a 'new theory' on its claims is unsupported by the pleadings or any other paper and is no more than a dilatory litigation tactic. **It is pure gamesmanship**. Bristol *does not* and *has never* asserted during the course of the present litigation that money is due to it <u>under the terms of a contract of insurance</u>. Bristol alleges that it is the promises and conduct that occurred between the parties that formed the basis for Bristol's causes of action *not the patients' insurance contracts.*

United asks the Court to ignore the distinction between a healthcare provider seeking to enforce an explicit promise to pay and the assertion of a right to payment *under an insurance plan.* As stated by the Ninth Circuit, the "preemption mechanism was not designed for, nor available to resolve, contractual disputes between carriers and health care providers… A provider's contractual

1

1
2
3
4
5
6

claim against a carrier does not constitute a request for "payment of a health-related bill" within the meaning of this provision. And even if it did, it would not be a claim "under the plan," because it is predicated not on the plan but on the contract between the carrier and the medical services provider." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 976 (9th Cir. 2007). That is the situation here, Bristol seeks payment for United's broken promises to Providers, not claims under patients' plans.

7
8

## II.   Bristol Does Not and Has Never Advanced the Argument During This Litigation that Its Claims Arise Under the Terms of Any ERISA Plans

9
10
11
12
13
14
15
16

United's assertion that, "Bristol made clear in its October 29 Opposition that it seeks money *under the terms* of the Patients' ERISA health insurance plans" (Resp. Pg. 9, Ln 13-14) (emphasis added) is demonstrably false. United owes Bristol payment based on promises it made directly to Providers, not under patients' plans. United misrepresents Bristol's October 29, 2020 opposition and takes a passing reference, as explained in Bristol's remand motion, out of context. *See, e.g., Green v. Beard*, 2017 WL 4546551, at *4 (E.D. Cal. Oct. 12, 2017) ("The Court does not find that these references to federal law in the exhibits, in the context of the complaint as a whole, show that Plaintiff brings any cause of action for a violation of federal law in his complaint at the time of removal").

17
18
19
20
21
22
23
24
25

The very beginning of the brief  allegedly relied upon by United in support of removal states, "This lawsuit is about United's repeated promises to pay for services and its failure to do so, 3,339 times in a row." (Dkt. 1-13, Pg. 1 Ln 27-8). Bristol seeks to enforce the promises that United made to Providers, not an insurance plan. Bristol repeatedly states that it is the definition of Accounts Receivable ("A/R") in the Asset Purchase Agreement ("APA") that controls. Four different jurists have looked at this same issue and have come to essentially the same conclusion, that the APA controls and Bristol has standing to bring the claims it has asserted in the Complaint. As Judge Smith stated in the December 3, 2020 hearing where United's motion to intervene in the Bankruptcy matter was denied:

26
27

> But, my takeaway, quite frankly, after reading all of that, and coming to my own conclusion, <u>because I understand I am now probably the fourth judge that's looked at this</u>
> …

28

So, after reviewing all of the background information, I came back, circled back around to the clarifying order. And I realized that I guess it was a clarification, but in my view, substantively it really didn't take away from what I viewed as **the essential assets that were being sold with respect to the accounts receivable. And the clarifying order itself really wasn't that -- wasn't limiting.** There was nothing in the clarifying order that said, well, here's what that language and the stipulation, this is how we're clarifying it. What it, basically, in my view, amounted to, was clarifying what assets the trustee was retaining, and in terms of the impact on what Bristol was buying. **What I felt was really left unscathed was the accounts receivable – and I'm now talking about paragraph, I think, F and G, of the APA. And all claims and causes of action arising from or related to the accounts receivable. I didn't believe that that changed at all with the clarifying order.**

(Transcript of December 3, 2020 Hearing attached as Exhibit "A" to Declaration of John W. Tower,  Pg. 6 Ln 23- Pg. 8, Ln. 4) (emphasis added)

At that hearing Judge Smith adopted her Tentative Ruling (Tentative Ruling attached as Exhibit "B" to Declaration of John W. Tower) ("So, my rulings for today -- tentative rulings will stand." Hearing Tr. Pg. 11, Ln 7-8).

United's Response (Dkt. 27) filed December 7, 2020, four days after this hearing, makes no mention of Judge Smith's findings with regard to the A/R despite their being at the heart of United's alleged basis for removal. Further, the short section in Bristol's October 29, 2020 filing that United relies upon is in response to United's argument that the A/R Bristol can recover is limited to patients and is in response to United's misleading and out of context quotes. Bristol states:

United cites *dicta* from off point cases to try to support its argument that the AR is limited to the patients…Moreover, the partial quote from these cases referred to by United at page 5, line 1 of its points and authorities is only one of several definitions of AR referred to by the Emerald Coast court…(Dkt. 1-13, Exhibit "EEE," Pg. 6, Ln 10-15)

In United's motion for judgment on the pleadings, they state:

In its recent Order, however,. the Bankruptcy Court confirmed that Bristol does not possess the causes of action raised in this case. Instead, the Bankruptcy Court confirmed that  Bristol only had the right to pursue claims related to the Provider's "receivables" - a term that Bankruptcy code and California law narrowly defines to mean sums due from a business's customers. (Dkt. 1-13, Exhibit "AAA" Pg. 1 Ln 8-12).

Judge Smith's Order clearly stated that it did not view "receivables" in such a narrow manner and United was incorrect in its interpretation stating, "In the court's view neither the stipulated

modification or the Clarifying Order deprives Bristol of ownership of **all rights, claims and causes of action related to and/or arising out of the A/Rs.**" (Tentative Ruling, Pg. 30 of 63).

United's state court Motion for Judgment on the Pleadings continued to blunder forward and stated:

> That term, "accounts receivable,'" has a specific meaning under both Bankruptcy and California Law-and narrowly refers to sums owed to a company by its customers. For example, bankruptcy courts have consistently defined the term "accounts receivable" as referring to "amounts owed to [an entity] by its customers."… This is also consistent with California's version of the Uniform Commercial Code, which defines "Accounts Receivable" (in relevant part) as "a right to payment of a monetary obligation ... for services rendered." Cal. Com. Code § 9102(a)(2). It expressly does not include "commercial tort claims." (Dkt. 1-13, Exhibit "AAA" Pg. 4 Ln 25 – Pg. 5 Ln 9).

It is this misleading statement that Bristol is responding to when stating the following in opposition:

> Defendant United's selective quote of one of the three AR definitions from the above passage is somewhat misleading, although more importantly off point. **The other alternative definitions support the conclusion that AR includes payments from insurance companies.** In addition, the definition of "Account" in Cal. Com. Code section 9102(a)(2), referred to in fractional part by United at page 5, lines 3-9 of its points and authorities, actually includes health care insurance receivables (Dkt. 1-13, Exhibit "EEE" Pg. 6 Ln 23-27) (bolding added).
> …
> The very California Commercial Code section United cites defines AR as a right to payment of a monetary obligation which includes health care receivables. **Nowhere does it limit the definition to claims by patients only, nor can it be reasonably construed to do so.** (Dkt. 1-13, Exhibit "EEE" Pg. 7 Ln 12-14) (bolding added).

Notably absent from Bristol's opposition is any statement that the California Commercial Code applies or is in any way relied upon by Bristol. Bristol does state, "United's narrow interpretation of AR also ignores the definition in the asset purchase agreement which at section 2.01(f) defines assets transferred to Bristol to include accounts receivable" (Dkt. 1-13, Exhibit "EEE" Pg. 5 Ln 26-27). As in the Bristol's pleadings and other papers, the A/R definition relied upon is provided by the Asset Purchase Agreement. Bristol's reference to health care receivables was only to show that United's argument that receivables were limited to patients was not even supported by their own references.

Further showing United's cherry-picking, <u>Cal. Com. Code § 9408 specifically provides that restrictions on assignments of health care insurance receivables are ineffective</u>. By contrast, it is well established that an insurance plan may enforce an anti-assignment provision when it is unambiguous. *See, e.g., Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282,

4

1296 (9th Cir. 2014) ("Anti-assignment clauses in ERISA plans are valid and enforceable.") Thus, it is clear that Bristol's reference to health care receivables was only to show the weakness of United's argument, not to adopt, obliquely, an entirely new litigation theory.

That healthcare receivables (accounts receivable) are a standard, assignable property interest is well established in federal court. They do not implicate or involve ERISA. Purchasers of accounts receivable are capable of perfecting a security interest in those accounts. *In re Nat'l Century Fin. Enters.*, 2006 U.S. Dist. LEXIS 16612, at *11 (S.D. Ohio Feb. 27, 2006) (a dispute over fraudulent transfers of healthcare accounts receivable treating those receivables the same as any others); *DFS Secured Healthcare Receivables Tr. II v. Willow Care, Inc.*, 1998 U.S. Dist. LEXIS 21974, at *7 (N.D. Cal. July 28, 1998) (judgment in favor of purchaser of healthcare receivables, upholding purchase contract and finding defendants liable for fraudulently diverting the proceeds of the contract from the receivables' purchaser); *Laguna Commer. Capital, Ltd. Liab. Co. v. Se. Tex. EMS Ltd. Liab. Co.*, 2011 U.S. Dist. LEXIS 146852, at *5 (C.D. Cal. Dec. 21, 2011) (upholding validity of purchase agreement of "Commercial Insurance Receivables"). If standard healthcare receivables were subject to ERISA preemption of any sort they would not then be regarded the same as any other receivable. None of the cases referenced *supra* required the evaluation of ERISA or federal law in connection with the Commercial Insurance Receivables. In fact, in each case there was a straightforward analysis upholding a standard property interest in commercial insurance receivables that did not call for the interpretation of federal law and certainly never called for the interpretation of an ERISA plan term, including anti-assignment provisions.

### III.   United's *Davila* Arguments Are Incorrect and Inapposite

   *i.*   *United Fails to Establish the First Davila Prong Is Met*

United first relies on the unreported, out of circuit *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869 (11th Cir. Mar. 18, 2005). The very first sentence of that decision distinguishes that case from Bristol's, stating "At issue in this case is whether the district court properly exercised removal jurisdiction **over claims by an assignee of rights** under health benefit plans covered by the Employee Retirement Income Security Act (ERISA)…" *Id.* at *1. Bristol does not bring its claims as an assignee and United's opposition states,

5

"[assignments] are not themselves the basis for ERISA complete preemption." (Dkt. 27, Pg. 12 Ln 4). The decision continues, "[w]e are unpersuaded by AAOT's argument that the amendment of Article 9 of Florida's Commercial Code, allowing for the creation of "health care insurance receivables," removes the claim of an **assignee of ERISA-plan reimbursement rights** from the scope of ERISA § 502(a)." *Id.* at *2. Thus, even if *Anesthesiology Assocs.* had any authority in this Court, it was still be inapplicable because it addresses claims brought as an assignee.

Absent assignments, *Anesthesiology Assocs.* is inapplicable. *See LifeBrite Hosp. Grp. of Stokes, LLC v. Blue Cross & Blue Shield of N. Carolina*, 2020 WL 1516337, at *12 (M.D.N.C. Mar. 30, 2020) ("while Defendant alleges that Plaintiff entered into an assignment, the court has already found those assignments invalid. *Anesthesiology Associates* is therefore inapplicable as well."). Further, Courts in the Eleventh Circuit have found *Anesthesiology Associates* does not apply and ordered remand where, as here, the state law claims were based on independent agreements between the parties. *See, for example, Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1241 (S.D. Fla. 2016).

Further, the first step of the first prong of *Davila* is not met when the *plaintiff* themselves do not have standing to bring an ERISA 502(a) claim. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017) ("while the patient attempted to assign McCulloch the right to payment for the surgeries that McCulloch performed, this assignment was prohibited under the terms of the patient's health care plan. Aetna—which has not argued on appeal that the anti-assignment provision does not apply—has failed to establish that McCulloch is the "type of party" who may bring claims pursuant to § 502(a)(1)(B)").

United attempts to avoid this result citing to *Blakney v. Prasad*, 817 F. App'x 504 (9th Cir. 2020) and *Bay Area Surgical Mgmt., LLC. v. United Healthcare Ins. Co.*, 2012 WL 3235999 (N.D. Cal. Aug. 6, 2012). *Bay Area* is inapplicable as shown by the sentence that immediately precedes that quoted by United, "the original complaint clearly stated that BASM was **suing pursuant to the patient's assignment of rights** to BASM to recover payments owed for her surgery." *Id.* at *3 (bolding added). *Blakney* is quoting *Fossen* that is quoting *Marin* that is quoting *Davila*. Reading

the actual paragraph from *Davila* makes clear that "individual" refers to *the individual bringing suit for their own claim*:

> It follows that **if an individual brings suit complaining of a denial of coverage** for medical care, **where the individual is entitled to such coverage** only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life*, supra, at 66, 107 S.Ct. 1542. In other words, **if an individual**, at some point in time, **could have brought his claim** under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).
>
> *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)

Thus, United's statement, "that test is met because the Patients or the Providers could have asserted ERISA claims to recover the money sought by Bristol. It makes no difference that Bristol itself could not do so" (Dkt. 27, Pg. 13 Ln 10-11) is refuted by the Supreme Court's plain language in *Davila*.

United raised essentially the same argument *Sobertec LLC v. UnitedHealth Grp., Inc.*, 2019 WL 4201081, at *3 (C.D. Cal. Sept. 5, 2019) that was soundly rejected by the court. There, as here, United stated, "that the claims for benefits that Plaintiffs brought on behalf of their clients relies upon benefits under ERISA" and cited to *Melamed* and *Cleghorn v. Blue Shield of Cal.,* 408 F.3d 1222 (9th Cir. 2005) to support their position. The argument was rejected there with the court stating:

> **Plaintiffs' complaint does not rely on the assignments of ERISA benefits whatsoever** as a basis for their legal claims, which seek recovery based on other obligations stemming from a "direct contractual relationship that arose" between Plaintiffs and United, rather than one dependent on an ERISA plan… Plaintiffs here identify "an independent contract, agreement or obligation apart from obligations under the plan agreement itself" **based on the implied-in-fact agreement from course of conduct and other representations made by United before Plaintiffs provided or continued providing patient services**… *Melamed* **is also distinguishable** because the plaintiff in that case claimed "that he is owed money as a third-party beneficiary under the terms of his patient's ERISA plan," as opposed to separate, oral agreements. 557 F. App'x at 661. Accordingly, the Court finds that the first Davila prong is not met. *Id.* at *4.

The Court here should reject United's recycled arguments just as its sister court did in *Sobertec.* Another sister court in *Roohipour v. ILWU-PMA Welfare Plan*, 2020 WL 472921, at *4 (C.D. Cal. Jan. 28, 2020) also rejected United's failing arguments on similar facts. In *Roohipour* the court stated, "[c]onsistent with the findings of several courts, this Court determines that, absent evidence of an

assignment to establish complete preemption removal over a third-party provider's state-law claims, Defendant cannot satisfy the first prong of the *Davila* test. *Id.* at *4.

United likewise fails to meet the second step of the first *Davila* prong, no actual plan terms or coverage determinations *under the plan* are implicated. Bristol's causes of action are similar to *McCulloch* where "McCulloch's claim rests on whether Aetna promised to reimburse him for seventy percent of the UCR rate, whether he reasonably and foreseeably relied on that promise, and whether he suffered a resulting injury. The claim does not implicate the actual coverage terms of the health care plan or require a determination as to whether those terms were properly applied by Aetna." 857 F.3d at 149. Thus, the second step of the first *Davila* prong is not met.

United's reliance on *Melamed* is misplaced and readily distinguished. Plaintiff has addressed *Melamed* in its Motion (Pg. 11-12) and that it is readily distinguished as in that matter the plaintiff brought suit as a third-party beneficiary. *See Melamed v. Blue Cross of California*, 557 F. App'x 659, 661 (9th Cir. 2014) ("Melamed, by contrast, does claim that he is owed money as a third-party beneficiary under the terms of his patient's ERISA plan.)

In fact, for a non-ERISA party to bring a claim for benefits under ERISA § 502(a), that claim must be brought pursuant to an assignment to satisfy the first *Davila* prong. *See Lodi Mem'l Hosp. Ass'n, Inc. v. Am. Pac. Corp.*, 2014 WL 5473540, at *4 (E.D. Cal. Oct. 20, 2014) ("the Ninth Circuit's opinion in *Marin* makes it clear that the **"assignment"** of Patient J.P.'s rights under ERISA to Plaintiff **is a necessary element of the first prong of *Davila***. Defendant's failure to address the issue of "assignment" is fatal to its argument, as the removing party bears the burden of proving the existence of jurisdictional facts.") (bolding added). Yet, inexplicably, United states, that assignments "are not themselves the basis for ERISA complete preemption." (Dkt. 27 Pg. 12 Ln 4). Without the assignments, the first prong of *Davila* is not met.

As Bristol "is neither a participant, beneficiary, nor other principle entity of an ERISA plan. Therefore, under the plain language of ERISA, plaintiff does not have independent standing to seek recovery under ERISA § 502(a)(1)(B)." *Reiten v. CIGNA Health & Life Ins. Co.*, 2020 WL 1862462, at *3 (C.D. Cal. Apr. 14, 2020). United does not, and cannot dispute this. United argues that "[w]hat triggered ERISA complete preemption and removal was Bristol's revelation that it seeks money under

ERISA health insurance plans, not the mere existence of assignments from the Patients to the Providers. (Resp. Pg. 11 Ln 25 – Pg. 12 Ln. 2).

United's citation to *In re Miles*, 430 F.3d 1083 (9th Cir. 2005) adds nothing of substance to their argument as it is a bankruptcy case where state law claims were completely preempted by the Bankruptcy Code. Further, the Supreme Court has not recognized complete preemption in the Bankruptcy Code. *See Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 421 (3d Cir. 2016) ("It has never recognized complete preemption in the Bankruptcy Code, and it seems the Ninth Circuit stands alone in this regard. *See In re Repository Techs., Inc.*, 601 F.3d 710, 724 (7th Cir. 2010) (declining to follow *Miles*)"). It is an ERISA participant or beneficiary who may be left without a remedy as the result of complete preemption under ERISA 502(a). *See Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998), *as amended* (Aug. 3, 1998). Bristol is not a plan participant or beneficiary and does not bring any of its causes of action pursuant to an assignment.

Further, United's citation to *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*, 2012 WL 2919388 (N.D. Cal. July 17, 2012) is readily distinguishable and was, in fact, distinguished two decisions shortly after it was written where *Bay Area* was also the plaintiff. *See Bay Area Surgical Mgmt., LLC. v. United Healthcare Ins. Co.*, 2012 WL 3235999, at *4 (N.D. Cal. Aug. 6, 2012) ("BASM no longer brings claims on behalf of the patient, rather **its claims stem from an alleged oral contract directly between United and BASM**. Like the plaintiffs of *Marin Gen. Hosp. and Blue Cross of Cal.*, BASM's amended state law claims are based on its alleged oral contract with and promises made by defendant to BASM. **These claims were not brought, and could not have been brought, under ERISA**. As such, BASM's amended state law claims fail the first prong of the *Davila* test") (bolding added); *Bay Area Surgical Mgmt., LLC v. Principal Life Ins. Co.*, 2012 WL 4058373, at *3 (N.D. Cal. Sept. 14, 2012) ("**Bay Area's breach of contract claim arises from a contract between Principal and Bay Area.** Therefore, this cause of action could not have been brought by the patient against Blue Cross under § 1132(a)(1)(B), failing the first prong of the *Davila* test.") (bolding added).

In the *Bay Area* case cited by United, the court found complete preemption because, "Bay Area alleged breach by Blue Cross **of the written medical insurance contract** between the patient

and Blue Cross." *Bay Area Surgical Mgmt., LLC v. Blue Cross Blue Shield of Minnesota Inc.*, 2012 WL 2919388, at *4 (N.D. Cal. July 17, 2012) (bolding added).

The patients *could not* have brought the causes of action in Plaintiff's Complaint. The causes of action against United are: 1) Breach of Express Oral Contract; 2) Breach of Implied Contract; 3) Promissory Estoppel; 4) Intentional Misrepresentation; and 5) Fraudulent Concealment. As set forth clearly in Bristol's Complaint:

> Bristol does not seek to enforce the contractual rights of the Providers' Patients through their insurance contracts, policies, certificates of coverage, or any other written agreements between the Patients and Defendants. **The duties owed to the Providers as described herein are independent duties owed to them by the Defendants, exclusive of Patients' insurance contracts, policies certificates of coverage or any other written insurance agreements.**" (Compl. ¶14) (bolding added).

The Complaint could not be clearer and is clearly in line with well-established precedent that claims such as those asserted by Bristol are not subject to complete preemption under ERISA because they could not have been brought by the patients. In both *Melamed* and the *Bay Area* cited by United, the insurance contract formed the basis of the breach of contract claims, that is not the case here and complete preemption does not apply. As in *Marin,* Bristol does not contend that it is owed payments under any ERISA plan. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009).

United's argument actually becomes comically circular as if the Court were to accept United's position that it can use the definition of "health care insurance receivable" contained within Cal. Com. Code § 9102 as the basis of an argument for *complete* preemption, then, that part of the California state law itself would be completely preempted as well, rendering the entire exercise a nullity, and leads back to the well-established *Marin* analysis showing that Bristol's causes of action are not subject to complete preemption under ERISA.

United's other citations, though numerous, are equally unavailing. United cannot satisfy the first *Davila* prong and that is sufficient to order remand.

     *ii.*     *United Cannot Satisfy the Second Davila Prong.*

United cites to many of the same cases again to argue that the second *Davila* prong is met. It is not. Bristol has laid out in detail the "independent legal duties" that are implicated in its causes of

action. *Davila* 542 U.S. at 210. As in *Marin*, Bristol's "claims do not rely on, and are independent of, any duty under an ERISA plan." *Marin Gen. Hosp.* 581 F.3d at 949.

United's citation to *Innova Hosp. San Antonio, L.P. v. Humana Ins. Co.*, 25 F. Supp. 3d 951, 961 (W.D. Tex. 2014) is unavailing as to both the first *Davila* prong ("**Plaintiff is using its assignee-status** to assert breach-of-contract claims on behalf of the patients to enforce the patients' benefits under their ERISA health plans" (bolding added)) and the second *Davila* prong ("Plaintiff's claim for Patient # 2 implicates ERISA coverage determinations" *Id.* at 964). Just as "a plaintiff cannot use artful pleading to avoid ERISA preemption, neither can a defendant recharacterize a plaintiff's well-pleaded state law claims as arising under ERISA, if resolution of those claims requires no construction of the ERISA plan or its terms." *Rutz v. Barnes-Jewish Hosp.*, 2005 WL 8173649, at *4 (S.D. Ill. May 27, 2005).

The court's in *Sobertec* opinion cited above also rejected substantially the same arguments that United raises here on similar facts. The *Sobertec* court clearly stated that as "Plaintiffs' claims are not based on an obligation under an ERISA plan, but rather on oral representations and implied contracts, and the state-law relied upon does not apply only to ERISA plans" (2019 WL 4201081 at *4) the second prong of *Davila* was not met. The court further stated as to United, "Defendants acknowledge that their arguments have been rejected in cases that "involve express or implied agreements to pay benefits that were independent of the terms of the ERISA plans at issue," and the Court finds that a such a situation applies here." *Id.* This Court should likewise reject United's arguments.

As stated by Bristol in the very beginning of the paper United claims supports removal, "[t]his is an action is to hold United Behavioral Health ("United") accountable for 3,339 days of unreimbursed healthcare services that it promised to pay for but hasn't." (Dkt. 1-13, Exhibit "EEE" Pg. 1 Ln 24-25). United made promises to the Providers that it broke. Those promises give rise to the independent legal duties that prevent United from meeting the second *Davila* prong. As such, this matter should be remanded.

1

2

### IV.    United Has Waived Any Right to Removal It Might Have Had

3        This matter had already been vigorously litigated for a year at the time of United's removal,

4   the present action having commenced in the San Francisco Superior Court on November 5, 2019.

5   From the outset of this litigation, Bristol has asserted solely state law claims. This is so because when

6   suit was filed in the Central District Court of California, seeking payment from United for the same

7   unpaid 3,339 per diem days of treatment, Bristol pled *alternative* claims under state law and ERISA.

8   Judge Carter in the Central District ruled that Bristol did not have standing to assert ERISA claims,

9   dismissed the ERISA claim, and declined to exercise supplemental jurisdiction over the remaining

10  state law claims, dismissing them *without* prejudice.

11        Multiple motions and extensive discovery took place over the year the case was pending in

12  state court. This, all after United lost on the preemption argument it raised in its demurrer. Under the

13  circumstances, United has waived any right to remove that it may have had (something Plaintiff

14  continues to dispute). This type of situation was addressed in *Moore v. Permanente Medical Group,*

15  *Inc.*, 981 F2d. 443 (9th Cir. 1992), where the court discussed acts which constitute a waiver of the

16  right to remove a case, stating as follows at pages 447-448:

17        The district court here did not abuse its discretion in awarding attorney's fees to
        Plaintiffs for resisting the removal. The district court held that the right to remove is
18        waived by acts which indicate an intent to proceed in state court, and that Defendants
        may not "experiment" in state court and remove upon receiving an adverse decision.
19        This is not an erroneous view of the law; it has been applied in various permutations
        by different courts.

20        United chose to demur, not remove. It lost. It also chose to file a motion for judgment on the

21  pleadings which is considered a motion on the merits under California Code of Civil Procedure §

22  438. However, after receiving Plaintiff's opposition to its motion for judgment on the pleadings, and

23  while the motion was pending, United decided to change course and remove. It has availed itself of

24  the state court's time and resources and now wants to belatedly forum shop. This type of conduct is

25  contrary to the goal of judicial economy which is especially important at this time.

26        As already discussed in Bristol's motion for remand and above, United's statement "[t]hat

27  basis for removable was unavailable before October 29" (Dkt. 27 Pg. 19 Ln 4) defies the papers filed

28  and history of this litigation. Although United repeats many times that "Bristol shifted to avoid

12

Reply Points and Authorities in Support of Motion to Remand and Request for Expenses and Fees
Bristol SL Holdings, Inc. v. United Behavioral Health, Inc. Case No.: 20-cv-07804

dismissal and took a fundamentally different position in the Opposition, claiming that it seeks payments arising from ERISA-governed health insurance plans" (Dkt. 27 Pg. 19 Ln 24-27), repetition does not make it so. A plain reading of the October 29, 2020 opposition to United's motion for judgment on the pleadings makes it clear that Bristol at no time seeks payments 'arising from' plans. United owes the money that it promised and then did not pay and United's broken promises do not 'arise from' plans.

### V.   United's Misrepresents Its Own Filings to the Court

United misrepresents its own past filings to the Court when it states, "Contrary to Bristol's suggestion, the issue of complete preemption was not "already answered" in the State Court Action, United choose to raise the preemption issue by demurer [*sic*] rather than seek removal." United's demurrer stated:

> Just as with those claims, the alleged misrepresentations regarding ERIS A plan coverage necessarily depend on an ERISA plan and duplicate the remedies available under ERISA, **and thus are preempted by ERISA Section 502(a).** (Demurrer Pg. 9 Ln 23-25) (bolding added).

Thus, when ruling on United's demurrer the court stated: "The court rejects defendant's ERISA preemption argument." (Order ¶4) it referred to all of the preemption arguments, including complete preemption, that were raised by United.

### VI.   United Misrepresents the Bankruptcy Court Proceedings

On December 3, 2020, the Bankruptcy court heard, and rejected, many of the same arguments that United makes in its response. Despite this hearing occurring four days before United filed its response to Bristol's motion, United makes no mention of it or Judge Smith's rulings that are contrary to the positions United asks this Court to accept. The Court affirmed its tentative ruling at the conclusion of the hearing. (Hearing Tr. Pg. 11 Ln 4). The tentative ruling and transcript of the hearing are attached as Exhibits "A" and "B" to the attached Declaration of John W. Tower, Esq.

The tentative ruling states the following:

> On July 28, 2020, the order granting the Motion to Clarify was entered and stated that Bristol SL Holdings, Inc. ("Bristol") [a company created by Debtors' former shareholders to hold the purchased assets] **acquired ownership of Debtors' account receivables** (the "Clarifying Order").
> (Pg 28 of 63) (bolding added).

13

…

In the court's view neither the stipulated modification or the Clarifying Order deprives Bristol of **ownership of all rights, claims and causes of action related to and/or arising out of the A/Rs.** Further, as the Clarifying Order, which is final, stands on its own I did not consider statements made at the hearing regarding the same. If Judge Bauer did not believe the Clarifying Order lodged by Bristol accurately reflected her ruling, she could have modified herself.

(Pg 30 of 63) (bolding added)

…

The bottom line --- **the court does not find any of United's arguments persuasive.**

(Pg 31 of 63) (bolding added)

…

The court **rejects United's argument that the stipulated judgment constitutes a collateral attack on either the Sale Order or the Clarifying Order.** The court does not read either order as restrictively as United.

This Court should find United's arguments equally lacking in merit.

Judge Smith stated at the December 3 hearing, **"I think that what needs to happen, quite frankly, is that the litigation needs to go forward in state court."** (Hearing Tr. Pg. 9 Ln 4-5).

There is no longer any doubt as to the definition of 'receivables,' Bristol's standing to bring the present litigation, and that Bristol is not asserting *any* claims under insurance plans. This is clear from Judge Smith's ruling and from the December 3 hearing where the Court stated:

I mean, one thing that is clear is, from the stipulation, is that, you know, the trustee, irrespective of what may have been argued at some point, believed that these assets were actually purchased by Bristol. So, what we're really talking about is, you know, I guess from your standpoint, who has standing to bring these, is it the trustee, is it Bristol. **The trustee is saying, no, Bristol does. It doesn't eliminate the claim, it just eliminates who has standing to bring it. And I don't think that it really, quite frankly, is a good use of judicial resources for me to decide that here the substantive portion of the claim**…(Hearing Tr. Pg. 9 Ln 6-17)

The Court is clear that no claims are eliminated or restricted, necessarily encompassing the contract / quasi-contract, and tort / fraud claims. Also, the Court viewed with skepticism United's argument that "accounts receivable" would not include tort claims, stating: "I'll just note that the term "accounts receivable," in the context of a bankruptcy case, may not be the same. Okay. And I'm just going to stop there, because, you know, I would probably be in too deep into the weeds of things. So, we'll just leave it there.: (Hearing Tr. Pg. 10-11, Ln 25-4).

As such, United never had a good faith basis for their removal, has not been candid with this Court, and the matter should be remanded.  Bristol should be awarded attorney's fees and costs in

14

connection with the bringing of this motion and reply.   Bristol has spent considerable resources preparing this motion and it has also experienced unnecessary delay from United's removal.  This case was slated to be tried in state court in March 2021.  The Superior Court had already told United it would not move the trial date again.  United's unjustified removal was also designed to duck that looming trial date and deprive Plaintiff of its timely day in court.  Bristol is not required to file a separate motion for attorneys' fees under 28 U.S.C. § 1447(c). *See Embarcadero Techs., Inc. v. TTI Team Telecom Techs., Inc.*, 2006 WL 1820657, at *1 (N.D. Cal. June 30, 2006).

**VII.    Conclusion**

Bristol's claims do not have standing under ERISA §502(a)(1)(B) and the causes of action alleged are independent from any legal duty owed pursuant to United's insurance plans. The removal was also untimely and undertaken in bad faith. Therefore, the Court lacks jurisdiction to hear this lawsuit pursuant to 28 U.S.C. § 1441 and this matter should be remanded to the Superior Court. Additionally, United's removal was objectively unreasonable and warrants the Court awarding attorney's fees and expenses to Bristol. However, Bristol is asking the Court to determine Bristol's entitlement to fees with the Court reserving jurisdiction to determine the amount of fee award following an appropriate motion by Bristol that will comply with Local Rule 54 and all other requirements to determine the amount of fees awarded.

Respectfully Submitted,

Dated:  December 14, 2020                          NAPOLI SHKOLNIK PLLC


                                           /s/ *Matthew M. Lavin*
                                           Matthew M. Lavin
                                           Aaron R. Modiano
                                           Co-counsel for Plaintiff


                                           LAW OFFICE OF JOHN W. TOWER

                                           /s/ *John W. Tower*
                                           JOHN W. TOWER
                                           Co-counsel for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 14, 2020, to all counsel of record who are deemed to have consented to electronic service via the Courts CM/ECF system per Local Civil Rule 5.4. Any counsel record who have not consented to electronic service through the courts CM/ECF system will be served by electronic mail, first-class mail, facsimile, or overnight delivery.


_/s/ John W. Tower_
JOHN W. TOWER
Co-counsel for Plaintiff
Bristol SL Holdings, Inc.

Reply Points and Authorities in Support of Motion to Remand and Request for Expenses and Fees
Bristol SL Holdings, Inc. v. United Behavioral Health, Inc. Case No.: 20-cv-07804