# Exhibit "A"

```
 1                UNITED STATES BANKRUPTCY COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3                         --oOo--
 4  In Re:                        )  Case No. 8:17-bk-12213-ES
                                  )
 5  SOLID LANDINGS BEHAVIORAL     )  Chapter 11
    HEALTH, INC.,                 )
 6                                )  Santa Ana, California
              Debtor.             )  Thursday, December 3, 2020
 7  _____)  10:30 a.m.
                                  )
 8  BRISTOL SL HOLDINGS, INC.,    )  Adv. No. 8:20-ap-01151-ES
                                  )
 9            Plaintiff,          )
                                  )
10       vs.                      )
                                  )
11  HOWARD B. GROBSTEIN,          )
                                  )
12            Defendant.          )
13  _____)
                                     HEARING RE: STIPULATION BY
14                                   BRISTOL SL HOLDINGS, INC. AND
                                     HOWARD GROBSTEIN, LIQUIDATING
15                                   TRUSTEE FOR JUDGMENT
16              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE ERITHE SMITH
17            UNITED STATES BANKRUPTCY JUDGE
18  APPEARANCES:
19  For Howard Grobstein,          MONICA REIDER, ESQ.
      Liquidating Trustee:         Landau Law, LLP
20                                 1880 Century Park East
                                   Suite 1101
21                                 Los Angeles, California 90067
                                   (310) 557-0050
22
23
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Briggs Reporting Company, Inc.*

```
 1  APPEARANCES:  (cont'd.)
 2  For Bristol SL Holdings:      NATHAN FRANSEN, ESQ.
                                  Fransen & Molinaro, LLP
 3                                4160 Temescal Canyon Road
                                  Suite 306
 4                                Corona, California 92883
                                  (951) 547-2045
 5
 6  For the Debtor:               MATT OLSON, ESQ.
                                  Dorsey & Whitney, LLP
 7                                305 Lytton Avenue
                                  Palo Alto, California 94301
 8                                (650) 843-2744
 9  For the                       ANDREW HOLLY, ESQ.
                                  Dorsey & Whitney, LLP
10                                50 South Sixth Street
                                  Suite 1500
11                                Minneapolis, Minnesota 55402
                                  (612) 340-2600
12
13  Court Recorder:               Rick Reid
                                  United States Bankruptcy Court
14                                411 West Fourth Street
                                  Suite 2030
15                                Santa Ana, California 92701
16  Transcriber:                  Briggs Reporting Company, Inc.
                                  2160 Fletcher Parkway
17                                Suite 209
                                  El Cajon, California 92020
18                                (310) 410-4151
19
20
21
22
23
24
25
```

```
                                                                1
 1   SANTA ANA, CALIFORNIA  THURSDAY, DECEMBER 3, 2020  10:30 AM
 2                             --oOo--
 3      (Call to order of the Court.
 4           THE COURT:  And this is in the matter of the
 5   stipulation.
 6           Go ahead and make your appearance, please?
 7           MS. REIDER:  Monica Reider on behalf of Howard
 8   Grobstein, Liquidating Trustee.
 9           MR. FRANSEN:  Your Honor, this is Nathan Fransen
10   on behalf of Bristol SL Holdings.
11           MR. OLSON:  Good morning, your Honor.  Matt Olson,
12   appearing for Solid Landings Behavioral Health.
13       (Indiscernible).
14           THE COURT:  I'm sorry, what was that you're
15   referring to?
16           MR. OLSON:  Andrew Holly, your Honor.
17           THE COURT:  Okay.  Mr. Holly, go ahead.
18           You're not muted, so it's got to be on your end.
19   You can check your volume or your -- make sure your speaker
20   is communicating.
21           Mr. Olson, are you the primary person appearing on
22   this matter?
23           MR. OLSON:  Mr. Holly was the primary person, your
24   Honor, but I can try and step in, if necessary
25           THE COURT:  Okay.  Maybe you can email him and ask
```

```
                                                                     2
 1  him -- or let him know that we're having difficulty hearing
 2  him.
 3           MR. OLSON:  Yes, your Honor
 4           THE COURT:  Meanwhile, we're going to proceed with
 5  number 17.
 6           Ms. Reider, go ahead.
 7           MS. REIDER:  Thank you, your Honor.  The update is
 8  tentative on number 16, and given your view, we don't get
 9  any benefit from filing a 9019.  We think that was simply
10  more judicial resources and expense to the estate to reach
11  the same place in the end.  And the reason we didn't file a
12  9019 in the first place, is we don't view this resolution as
13  the estate giving away a claim or cause of action that it
14  currently owns.  We don't view this of the estate
15  transferring something of value it currently holds, instead
16  our resolution is agreeing on what happened in the sale that
17  occurred in 2017.  And your Honor's --
18           THE COURT:  Well, here's the thing though, because
19  procedurally that's not where we are.  Procedurally an
20  adversary was filed, right?  And the adversary is being
21  settled.
22           MS. REIDER:  Yes.
23           THE COURT:  So, I'm not understanding why that's
24  not -- why that doesn't present a 9019 moment.
25           MS. REIDER:  If you leave out the appropriate
```

3

procedure here, we're happy to go through with that.  I think our logic was that this was not giving away an asset that creditors would have thought the liquidating trust currently possessed.  So, we're not transferring to Bristol an asset that the liquidating trust currently holds.  What we're giving up, basically, is an argument that could have been made based on the -- there were multiple papers filed in connection with the sale.  That this is something that the liquidating trust could have asserted that it owned.  We're saying we will not assert that

THE COURT:  Well, you know what, I don't compare those two.  You know, once a preference action is filed, let's say, by the trustee, and the responding party then responds with documents that are sufficient to show that there's absolutely no way that a preference action is going to -- can go forward.  And you know, the trustee could take the position well, you know, now that they've presented evidence, I realize that this really is not an asset of the estate, so why should I have to do a 9019 motion.  Well, 9019 motions are always done in that circumstance.

MS. REIDER:  Right.

THE COURT:  So, I'm just having some difficulty, just conceptionally, that what we have here is, basically, a settlement of an asset, and why, you know, the normal motion to compromise.

4

```
 1              I mean, I understand it's in regard to estate
 2  money.  I get that.  Save resources for the estate.  But, I
 3  don't think that you can do that by way of sacrificing
 4  (indiscernible) would be the appropriate procedure.
 5              MS. REIDER:  I understand
 6              THE COURT: Okay.  I mean, I understand.  I
 7  understand why.  But, I just think that procedurally that
 8  would be the appropriate route.
 9              Now, I suspect, and I could be wrong, when your
10  motion to compromise comes up, I guess I won't be surprised
11  if there's an opposition to it.  Then, you know, I'll go
12  right back to my notes.
13              But, I do think I don't want to sacrifice the
14  process.  So, that's why I think it's appropriate to do
15  that.  And that may very well be why United is willing to
16  accept the tentative on number 16, understanding that it may
17  have an opportunity to try to persuade me on the motion to
18  compromise.  I don't know.
19              Can we hear Mr. Holly at this point?
20              MR. HOLLY:  Your Honor, can you hear me.
21              THE COURT:  Yes.  Excellent.
22              MR. HOLLY:  I figured it out, your Honor
23              THE COURT: Okay.  It takes awhile.  Believe me.
24  We're all learning these things.  You know, I'm still
25  learning things I thought I already knew.  Go ahead.
```

5

```
 1          MR. HOLLY:  So, your Honor, first of all, I do
 2 want to make clear here that I did file a motion and paid
 3 the fee.  It has not formally been granted yet, so I just
 4 want to make sure you're aware of that
 5          THE COURT:  When did you file that?
 6          MR. HOLLY:  You know, we filed it, I believe, on
 7 Monday, and then we had some technical issues, I believe,
 8 with the payment.  So, that didn't get done until yesterday.
 9 Matt Olson can chime in if I've got that incorrect.  It's
10 docket number 23 and 25.
11          THE COURT:  Okay.  Hold on.
12          MR. HOLLY:  Your Honor, the application was filed
13 yesterday.  The proof of payment was filed this morning
14          THE COURT:  Okay.  That's probably why -- because
15 normally -- when I saw that, I actually looked for it.  When
16 I thought it was a prima facie issue, I actually looked to
17 see if there was an application order pending, and I didn't
18 see one.
19          MR. HOLLY:  We should have gotten that done
20 earlier, your Honor.  Apologies.
21          THE COURT:  Okay.  So, Mr. Holly, you are in luck,
22 because your application was approved today.
23          MR. HOLLY:  Thank you
24          THE COURT:  You can speak now.  Literally and
25 legally.
```

6

1    MR. HOLLY:  Thank you, your Honor.  You know, I
2 think your Honor had it right, we didn't oppose because we
3 think that the ruling in the other matter makes it moot.
4    Our position is, your Honor, that, you know, the
5 Court's clarifying order said what it said, and we think
6 that what they have tried to do here in the adversarial
7 proceeding is change it and go beyond the scope of it
8    THE COURT:  Here's the thing about that, because I
9 have read that clarifying order, I can't even tell you how
10 many times I've read it.
11    This is like peeling an onion, basically, because,
12 you know, it started with the clarifying order, because I
13 had to go back.  I had to read the motion to clarify the
14 order.  I had to read the opposition to the motions to
15 clarify the order.  Then I went back to the original sale
16 order, as well as the original APA, and the stipulation
17 regarding the modification to the APA.  And also reading the
18 underlying complaint filed in the state court action, as
19 well as the superior court's comments regarding the
20 demurrer.  I mean, like I said, this is layer, after layer,
21 after layer on what I thought was just going to be a simple
22 order, and it just really wasn't that simple.
23    But, my takeaway, quite frankly, after reading all
24 of that, and coming to my own conclusion, because I
25 understand I am now probably the fourth judge that's looked

1  at this, if you consider Judge Bauer, Judge Carter, the
2  state court judge, and now me.  Although maybe I shouldn't
3  include Judge Carter, because he was looking at a completely
4  different issue.
5        And this is something I think is really important,
6  and that is with respect to the clarifying order.  I know
7  there was argument about what was said at the hearing on the
8  motion for clarifying order, and comments that Judge Bauer
9  may have said, or comments that the trustee said.  But, at
10 the end of the day, it's the order.  You know, it's all
11 about the order.
12       So, after reviewing all of the background
13 information, I came back, circled back around to the
14 clarifying order.  And I realized that I guess it was a
15 clarification, but in my view, substantively it really
16 didn't take away from what I viewed as the essential assets
17 that were being sold with respect to the accounts
18 receivable.  And the clarifying order itself really wasn't
19 that -- wasn't limiting.  There was nothing in the
20 clarifying order that said, well, here's what that language
21 and the stipulation, this is how we're clarifying it.
22       What it, basically, in my view, amounted to, was
23 clarifying what assets the trustee was retaining, and in
24 terms of the impact on what Bristol was buying.  What I felt
25 was really left unscathed was the accounts receivable -- and

8

I'm now talking about paragraph, I think, F and G, of the APA.  And all claims and causes of action arising from or related to the accounts receivable.  I didn't believe that that changed at all with the clarifying order.

In terms of -- and I will note that I believe with respect to the state court action, that the state court judge has already actually ruled on some of the -- some or a few of the causes of action with respect to the motion to divert, and actually granted, without leave to amend, on some of those.  My recollection was.  Negligent and intentional interference with respective -- whatever that's called.  You know the words.  So, there was that.

So, the fact that -- if a state court judge could make that decision, I think was instructive.  The fact that the state court judge, basically, ruled on a breach of contract claim, which I totally agreed with, because I think it actually did fall within the parameters of what was purchased.  And I don't think that the clarifying order does any (indiscernible) to that.

So, I think that maybe there's a -- maybe a fundamental difference of interpretation of the clarifying order.  And as far as -- you know, I read the declaration of the trustee regarding the process with respect to how the stipulated judgment came about and, quite frankly, there's no evidence that there's any conclusion going on between the

9

1  trustee and Bristol, or (indiscernible) my tentative ruling,
2  any sort of nefarious -- I mean, if I had to point to
3  evidence, I really didn't think there was any evidence of
4  that.  And I think that what needs to happen, quite frankly,
5  is that the litigation needs to go forward in state court.
6          I mean, one thing that is clear is, from the
7  stipulation, is that, you know, the trustee, irrespective of
8  what may have been argued at some point, believed that these
9  assets were actually purchased by Bristol.
10         So, what we're really talking about is, you know,
11 I guess from your standpoint, who has standing to bring
12 these, is it the trustee, is it Bristol.  The trustee is
13 saying, no, Bristol does.  It doesn't eliminate the claim,
14 it just eliminates who has standing to bring it.  And I
15 don't think that it really, quite frankly, is a good use of
16 judicial resources for me to decide that here the
17 substantive portion of the claim -- and I think that in
18 terms of the intervention, I don't see any -- I don't see
19 any property interest here.  I mean, you want to intervene
20 as a defendant in this, and to me it's not a fit.  It just
21 isn't a fit.  So, that maybe better explains.  My reason
22 with respect to the motion to intervene.
23         Now, with respect to the motion to compromise,
24 again, I understand that we may have to review this again
25 when the motion to compromise comes forward, and it's not

10

sufficiently filed.  But, at least you know what I'm thinking right now, okay, about that.  So it may be helpful to you.

        MR. HOLLY:  May I comment briefly, your Honor?

        THE COURT:  Yes.

        MR. HOLLY:  So, first of all, I appreciate your perspective, and will definitely take that into view as we go forward with this.

        Due to the nature of our intervention, and the speed in which things were happening, we didn't necessarily put the full argument out there.  I think it's moot at this point.  I would just say that we think we have arguments. We'll see whether or not they'll advance again, given your Honor's comments.  But, we do have arguments that the phrase, "accounts receivable," has a defined meaning.  And that under California law it does not include commercial tort claims, which is one of the things that are being raised in the underlying action.

        So, we do think that there's a difference, a disconnect, between what accounts receivable is and the causes of action that are being raised in the underlying action.

        I'll be --

        THE COURT:  I'll accept that.  I'll just note that the term "accounts receivable," in the context of a

1  bankruptcy case, may not be the same.  Okay.  And I'm just
2  going to stop there, because, you know, I would probably be
3  in too deep into the weeds of things.  So, we'll just leave
4  it there.  We all know there's a commercial, because we all
5  see it.  We all see it.  And we'll see where things come
6  out.
7          So, my rulings for today -- tentative rulings will
8  stand.
9          MR. HOLLY:  Thank you, your Honor.
10         MR. OLSON:  Thank you, your Honor.
11         MR. FRANSEN:  Thank you.
12         THE COURT:  Okay.  Thank you.
13      (Proceedings concluded.)
14
15         I certify that the foregoing is a correct
16 transcript from the electronic sound recording of the
17 proceedings in the above-entitled matter.
18
19 /s/ Holly Steinhauer          12-14-20
   Transcriber                   Date
20
21
22
23
24
25